UNITED STATES DISTRICT COURT

DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO: |
| *Plaintiff,* | |
| *v.* | MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO COMPEL PRODUCTION OF RECORDS PURSUANT TO 52 U.S.C. § 20701, *et seq.* |
| SARAH COPELAND HANZAS, in her official capacity as Secretary of State of the State of VERMONT, | |
| *Defendant.* | |

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES' MOTION TO COMPEL PRODUCTION OF RECORDS PURSUANT TO 52 U.S.C. § 20701, *et seq.***

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 4

II.     BACKGROUND ................................................................................. 5

        A.      Title III of the Civil Rights Act of 1960 ................................................ 5

        B.      The Attorney General Is Making a Demand for Federal Election Records
                under the CRA to Assess Vermont's NVRA and HAVA Compliance.............8

III.    ARGUMENT……………………………………………...…..……....8

        A.  Title III of the Civil Rights Act of 1960…………………………………...…8
        B.  Vermont's Claims to Protecting Privacy Interests Are Not a Basis to Withhold
            the Information Requested………………………………………..…….…...10

        C.  The Attorney General Is Entitled to Relief under the CRA's Summary
            Proceedings for Obtaining Federal Election Records………..….…………..12

IV.     CONCLUSION………………………………………………..……..…...13

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)…………………………..10, 11

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963)……………………………………….5, 7, 10

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025) …………………………………………………………………………..……………11

*Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961)………………………………….6

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012)……………………………………….11, 12

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963)………………………………………..7, 13

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962)………………………………………………7

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)……………………………………passim

*League of Women Voters of Ind., Inc. v. Sullivan,* 5 F.4th 714 (7th Cir. 2021)…………………11

*McIntyre v. Morgan*, 624 F. Supp. 658 (S.D. Ind. 1985)……………..……………….……11

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024)……………….……...…10

*Smith v. City of Jackson*, 544 U.S. 228 (2005)…………………………………..…….……12

*State of Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960)…………….....6

**Constitution**

U.S. Const. art. I, § 4, cl. 1………………………………………………...……….……10

**Statutes**

52 U.S.C. § 20501…..………………………………………………..……………….....8

52 U.S.C. § 20507…………………………………………………..…………….....8, 9, 12

52 U.S.C. § 20510…………………………………………………………….…..…...12

52 U.S.C. § 20701……………………………………………………...…….passim

52 U.S.C. § 20703………………………………..…………….…..………passim

52 U.S.C. § 20706………………………………..…………………….….……….9

**Rules**

F. R. Civ. P. 12 (e)……………………………………………………………...……12

F. R. Civ. P. 26(a)……………………………………………………..………..……12

F. R. Civ. P. 30……………………………………………………………..……..12

F. R. Civ. P. 33……………………………………………………..……………...12

F. R. Civ. P. 34……………………………………………………………...…………12

F. R. Civ. P. 36……………………………………………………..……..……12

F. R. Civ. P. 37…………………………………………………….…..…………12

## I.    INTRODUCTION

Section 301 of Title III of the Civil Rights Act of 1960 ("CRA") imposes a "sweeping" obligation on election officials. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962).[1] It provides, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (transferred from 42 U.S.C. § 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. § 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying … by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand need only "contain a statement of the basis and the purpose therefor." *Id.*; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

On September 8, 2025, the Attorney General, through her representative, made a written demand to Secretary Sarah Copeland Hanzas ("Secretary Hanzas") to produce certain Federal election records covered by the CRA. Ex. 1, Dep't Ltr. to Sec'y Hanzas dated September 8, 2025, ("September 8 Letter"). That written demand explained that the purpose was for enforcement of the list maintenance requirements of the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). *Id.* Secretary Hanzas refused to produce the requested Federal election records. Ex. 2, Sec'y Hanzas Ltr. to Dep't dated September 22, 2025 ("September 22 Letter"). This litigation followed.

Pursuant to Section 305 of the CRA, the United States moves for an order to compel Secretary Hanzas to produce the Federal election records identified in the written demand. *See*

---

[1] Caselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue. The United States is unaware of any courts disagreeing with the Fifth Circuit's approach to the CRA.

*State of Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855-56 (M.D. Ala. 1960), *aff'd and adopted in full sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) (per curiam). The CRA displaces the Federal Rules of Civil Procedure by creating a "special statutory proceeding." *Lynd*, 306 F.2d at 225. "All that is required is a simple statement by the Attorney General" after making a written demand for Federal election records and papers covered by the statute, explaining that the person against whom an order is sought has failed or refused to make the requested records "'available for inspection, reproduction, and copying.'" *Id.* at 226 (quoting 52 U.S.C. § 20703). The United States has satisfied those requirements. Accordingly, the United States respectfully requests that the Court issue an order compelling Secretary Hanzas to produce the Federal election records described in its written demand.

## II.      BACKGROUND

### A.      Title III of the Civil Rights Act of 1960.

Under Section 301 of the CRA, every "officer of election" must "retain and preserve … all records and papers which come into his possession relating to any … act requisite to voting in [a Federal] election" for a period of twenty-two months from that election, 52 U.S.C. § 20701. Section 303 of the CRA provides:

> Any record or paper required by section 301 to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative….

52 U.S.C. § 20703.

The written demand "shall contain a statement of the basis and the purpose therefor." *Id.*

If an officer of election refuses to comply with the CRA's command, the Act requires "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's investigative powers. *Lynd*, 306 F.2d at 225. The Attorney General or her representative may request a Federal court to issue an order directing the officer of election to

produce the demanded records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.*

The special proceeding is "summary" in "nature" and neither "plenary [n]or adversary." *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963); *see Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not amount to the filing of a suit of any kind"). "All that is required is a simple statement by the Attorney General that after a … written demand" for Federal election records covered by Section 301 of the CRA (52 U.S.C. § 20701), "the person against whom an order for production is sought … has failed or refused to make such papers 'available for inspection, reproduction, and copying ….'" *Lynd*, 306 F.2d at 226 (quoting 52 U.S.C. § 20703). The court does not entertain "any other procedural device or maneuver— either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* (quoting 52 U.S.C. § 20703). Rather, "[t]he Court, with expedition, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.*

Those matters, though, are "severely limited." *Id.* The court may adjudicate only: (1) "whether the written demand has been made"; and (2) "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Id.* Neither "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand," nor "the scope of the order to produce" is open for review. *Id.*; *see Coleman*, 313 F.2d at 868. As the Fifth Circuit has explained, "No showing even of a prima facie case of a violation of Federal law need be made." *Id.* (citation omitted). Instead, "[i]f, after issuance of an order to produce, a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within [52 U.S.C. § 20701's] broad statutory classification," that issue may be decided by the court. *Lynd*, 306 F.2d at 226.

**B.      The Attorney General is making a demand for Federal election records under the CRA to assess Vermont's NVRA and HAVA compliance.**

On September 8, 2025, the Attorney General, acting through her representatives at the Department of Justice ("Department"), sent a letter to Secretary Hanzas, an officer of election, regarding Vermont's compliance with Federal list maintenance requirements. Ex. 1. The NVRA and HAVA have list maintenance requirements "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). Both statutes impose certain recordkeeping duties and require reasonable efforts to maintain lists of eligible voters for Federal elections. HAVA requires verification of voter registrations for federal elections. *See* 52 U.S.C. §§ 20507(a)(4), 20507(i)(1), 21083(a)(1)(A). The Department requested information to ascertain Vermont's compliance with the NVRA and other Federal statutes. *See* Ex. 1, September 8 Letter.

The September 8 Letter requested these documents pursuant to Section 8(i) of the NVRA and HAVA and made a demand pursuant to the CRA, for a current electronic copy of Vermont's computerized statewide voter registration list ("SVRL") including the driver's license number or last four digits of the social security number which is required by HAVA. Ex. 1.

On September 22, 2025, Secretary Hanzas answered the September 8 Letter by refusing to produce the records requested. Ex. 2 at 4.  Vermont contended that due to DOJ's lack of clarity as to the basis of the request, to the intended purposes for the utilization of Personally Identifiable Information (PII), and DOJ's failure to provide assurances to maintain the privacy of Vermonters' sensitive data, Vermont would require additional information demonstrating that the release of the information would be consistent with Federal and state law. *Id*.

### III.      ARGUMENT

**A.      The United States is entitled to an order compelling production under the CRA.**

An order to show cause for production of documents under the CRA is appropriate when the United States files a "simple statement" describing its written demand for inspection, reproduction, and copying, and explaining that the officer of election to whom it was directed has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'"

*Lynd*, 306 F.2d at 226 (citation omitted). The written demand must include "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The Department's September 8 Letter satisfies these requirements by: (1) making a written demand for inspection, reproduction, and copying of Federal election records, including the SVRL and records of voter registration application within twenty-two months of a Federal election; (2) directing that demand to Secretary Hanzas, officer of election as defined by Section 306 of the CRA;[2] (3) stating that the purpose of the demand is to assist in our determination of whether Vermont's list maintenance program complies with the NVRA and HAVA. Ex. 1 at 1-2.

Secretary Hanzas' refusal to produce *anything* is plainly insufficient to meet the CRA's requirements. Ex. 2. Officers of election have no discretion to limit the Federal election records or papers or the content of those records made available to the Attorney General. *See* 52 U.S.C. § 20703; *see also* 52 U.S.C. § 20701 (referring to "all records and papers"). Vermont's election officers certainly have no authority to deny the Attorney General's request altogether.

Similarly, HAVA requires list maintenance to "be conducted in a manner that ensures" the elimination of duplicate names from the statewide list. 52 U.S.C. § 21083(a)(2)(B)(iii).

The same unredacted Federal election records, including the SVRL, are needed to assess Vermont's compliance with the NVRA. Section 8(a)(4) of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters…". 52 U.S.C. § 20507(a)(4). For example, use of

---

[2] Section 306 provides:

> As used in this chapter, the term "officer of election" means any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

52 U.S.C. § 20706.

unredacted voter data ensures that matches to identify deceased voters are more accurate and complete.

Similarly, HAVA requires list maintenance to "be conducted in a manner that ensures" the elimination of duplicate names from the statewide list. 52 U.S.C. § 21083(a)(2)(B)(iii). Unredacted voter files, including the three identification numbers described above, are needed to determine if the state has a reasonable program of identifying and removing duplicate voter registrations. That is why twenty-five states—including Vermont—and the District of Columbia participate in the Electronic Registration Information Center ("ERIC") and routinely share the same information sought by the Attorney General with ERIC. *See* Hanzas Sept. 22 Letter. Ex. 2. Yet, the Secretary refuses to provide this information to the Attorney General.

Secretary Hanzas has rejected the Attorney General's written demand pursuant to the CRA to produce Vermont's statewide VRL and other Federal election records. Consequently, the United States respectfully requests that this Court issue an Order compelling Secretary Hanzas and the State of Vermont to immediately produce those records through a secure method. *See* *Lynd*, 306 F.2d at 226; *Coleman*, 313 F.2d at 868.

**B.    Vermont's claims to protect privacy interests are not a basis to withhold the information requested.**

Secretary Hanzas has refused to produce the Federal election records demanded by the Attorney General under the CRA because, in part, she contends that Vermont's privacy laws are controlling. Ex. 2 at 3-4. The Supremacy Clause of the Constitution says otherwise. It is a basic tenet of our Federal system that when Federal and State law conflict, federal law governs. *See* U.S. Const. art. VI. "The assumption that Congress is reluctant to pre-empt does not hold when Congress acts under th[e Elections Clause], which empowers Congress to 'make or alter' state election regulations." *Arizona v. InterTribal Council of Ariz., Inc.,* 570 U.S. 1, 14 (2013) (quoting U.S. Const. art. I, § 4, cl. 1). "Because the power the Elections Clause confers is none other than the power to [preempt], the reasonable assumption is that the statutory text accurately communicates the scope of Congress's [preemptive] intent." *Id*. Thus, "because Congress's

authority for the NVRA is rooted in the [Elections Clause]," the presumption against preemption does not apply here." *League of Women Voters of Ind., Inc. v. Sullivan,* 5 F.4th 714, 723 (7th Cir. 2021)" *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 52 (1st Cir. 2024). If a Federal election law like the NVRA and state law "do not operate harmoniously in a single procedural scheme for federal voter registration, then Congress has exercised its power to 'alter' the state's regulation, and that regulation is superseded." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).

A South Carolina court recently confronted the same argument from an individual voter seeking to enjoin state officials from cooperating with the Department. Addressing Federal preemption over state statutes governing privacy, the court explained, "Federal law likely requires the Election Commission to provide the requested information to DOJ, and while DOJ has also pointed to the National Voter Registration Act and the Help America Vote Act, Title III [of the Civil Rights Act] alone is sufficient to reach that conclusion." *Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025); Ex. 3. The court noted, "Title III requires that, for 22 months after a federal election, a state election official 'retain and preserve' 'all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.' 52 U.S.C. § 20701." *Id.* at 10-11. The court reasoned,

> Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id.* § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id.*

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539, at *11 (Richland Cty. Comm. Pleas Oct. 1, 2025).

As a result, the court found, "DOJ's request for South Carolina's voter registration list fits comfortably within this legal framework" and denied the voter's request to enjoin the state's

production of its list to the Department. *Id.* at 11-12.  For those reasons, *id.*, any state-law privacy right to the contrary is preempted by the CRA's broad grant of access to the Attorney General. *See* 52 U.S.C. § 20703; *Gonzalez*, 677 F.3d at 394. Consequently, the Attorney General is entitled to the Federal election records she has demanded from Vermont under the CRA, notwithstanding any conflicting state privacy laws.

### C.    The Attorney General is entitled to relief under the CRA's summary proceedings for obtaining Federal election records.

The CRA displaces the Federal Rules of Civil Procedure and creates a "special statutory proceeding" under which Secretary Hanzas, as an officer of election for Vermont, must produce the voter-registration lists and other Federal election records demanded by the Attorney General.[3] *Lynd*, 306 F.2d at 225. The court in *Lynd* reasoned that a special proceeding was necessary to obtain Federal election records, because no other procedural device or maneuver was available:

> There is no place for a motion for a bill of particulars or for a more definite statement under F.R.Civ.P. 12(e), 28 U.S.C.A. There is no place for any other procedural device or maneuver— either before or during any hearing of the application— to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand. [52 U.S.C. § 20703]. Thus with respect to the reasons why the Attorney General considers the records essential, there is no place, either as a part of pleadings, discovery, or trial, for interrogatories under F.R.Civ.P. 33, oral depositions of a party under F.R.Civ.P. 26(a), 30, production of documents under F.R.Civ.P. 34, or request for admissions as to facts or genuineness of documents or other things under F.R.Civ.P. 36, 37.

*Id.* at 226.

The "special statutory proceeding" of these statutes is "a summary proceeding." *Id.* at 225–26. To institute this proceeding, the United States need only file a "simple statement," describing its written demand for the Federal election records and explaining that Secretary

---

[3] Although this Motion to Compel Production is made under the CRA, the United States notes that the NVRA includes a similar requirement for production of Federal election records. *See* 52 U.S.C. §§ 20507, 20510(a). "[W]hen Congress uses the same language in two statutes having similar purposes … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."  *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion).

Hanzas, acting as an officer of election for Vermont, "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (citation omitted). Accordingly, the Court "should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.* The Attorney General's right to reproduction and copying of Federal election records is not dependent upon any other showing. *Id.* Therefore, the United States respectfully requests that this Court issue an order directing Secretary Hanzas and the State of Vermont to produce the Federal election records described in the Attorney General's written demand.

## IV.     CONCLUSION

For the foregoing reasons, the United States requests that this Court enter an Order compelling Secretary Hanzas to comply with the Attorney General's request for all Federal election records described in the Department's September 8 Letter. Those records should be provided electronically to the United States within five days, or within such time as this Court deems reasonable. *See Gordon*, 218 F. Supp. at 827 (deeming "fifteen days [a]s a reasonable time"). For the Court's convenience, a proposed form of order is provided as Exhibit 4.

Dated: December 1, 2025                    Respectfully submitted,

                                              HARMEET K. DHILLON
                                              Assistant Attorney General
                                              Civil Rights Division

                                             _____
                                              MAUREEN S. RIORDAN
                                              Acting Chief, Voting Section
                                              Civil Rights Division
                                              TIMOTHY F. MELLETT
                                              DAVID D. VANDENBERG
                                              Trial Attorneys, Voting Section
                                              Civil Rights Division
                                              4 Constitution Square
                                              150 M Street, NE, Room 8.143
                                              Washington, D.C. 20002
                                              Maureen.Riordan2@usdoj.gov
                                              Timothy.Mellett@usdoj.gov
                                              David.Vandenberg@usdoj.gov
                                              Tel. (202) 307-2767
                                              *Attorneys for the United States*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on December 1, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.


                                      */s/ David D. Vandenberg*
                                      David Vandenberg