**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF VERMONT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     *Plaintiff*,<br><br> *v.*<br><br>SARAH COPELAND HANZAS, in her official capacity as Secretary of State of Vermont,<br><br>     *Defendant*. | Case No. 2:25-cv-00903 |

**MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENOR-
DEFENDANTS' MOTION TO INTERVENE**

# TABLE OF CONTENTS

Table of Authorities ......................................................................................................... ii

Introduction ...................................................................................................................... 1

Background ....................................................................................................................... 2

    I.    Federal law has long made voter list maintenance a state responsibility,
        consistent with the constitutional separation of powers. ...................................2

    II.    The Department of Justice has embarked on an unprecedented nationwide
        campaign to collect personal voter registration data held by the states...........3

    III.    The Department of Justice sues Vermont to obtain its complete registration list. ...........4

    IV.    Proposed Intervenors' sensitive personal information is placed in jeopardy by
        DOJ's demands. ................................................................................................5

Legal Standard ................................................................................................................. 6

Argument .......................................................................................................................... 8

    I.    Proposed Intervenors are entitled to intervene as of right. ...............................8

        A.    The motion to intervene is timely and will not prejudice the parties. ......................8

        B.    Proposed Intervenors have significantly protectable interests in protecting
            their sensitive personal information from improper disclosure to DOJ. ..................8

        C.    Proposed Intervenors' interests are not adequately represented by existing
            parties. .................................................................................................................10

    II.    Proposed Intervenors should alternatively be granted permissive intervention. ............13

Conclusion ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases:**

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
    467 F.3d 238 (2d Cir. 2006).................................................................. 7

*1789 Found. Inc. v. Fontes*,
    2025 No. CV-24-0298, 2025 WL 834919 (2025).......................................... 15

*Alabama ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) ....................................................... 5

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013)....................................................................... 2, 3

*Ass'n of Conn. Lobbyists LLC v. Garfield*,
    241 F.R.D. 100 (D. Conn. 2007).......................................................... 15

*Bellitto v. Snipes*,
    935 F.3d 1192 (11th Cir. 2019) ...................................................... 13, 15

*Bellitto v. Snipes*,
    No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016) ....................... 12

*Berger v. N.C. State Conf. of the NAACP*,
    597 U.S. 179 (2022).................................................................. 2, 12

*Brennan v. N.Y.C. Bd. of Educ.*,
    260 F.3d 123 (2d Cir. 2001)............................................................. 13

*Bridgeport Guardians, Inc. v. Delmonte*,
    602 F.3d 469 (2d Cir. 2010).............................................................. 8

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
    250 F.3d 171 (2d Cir. 2001)............................................................. 10

*Citizens Against Casino Gambling in Erie Cnty. v. Hogen*,
    417 F. App'x 49 (2d Cir. 2011)......................................................... 14

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011) ........................................................... 11

*Conservation L. Found. of New Eng., Inc. v. Mosbacher*,
    966 F.2d 39 (1st Cir. 1992)............................................................. 12

*Does 1 Through 7 v. The Taliban*,
No. 6:22-cv-990, 2023 WL 4532763 (N.D.N.Y. July 12, 2023) .................................... 13

*Foster v. Love*,
522 U.S. 67 (1997) .................................................................................................... 2

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ................................................................................. 11

*Grocery Mfrs. Ass'n v. Sorrell*,
No. 5:14-cv-117, 2014 WL 12644264 (D. Vt. 2014) ................................................. 8

*H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*,
797 F.2d 85 (2d Cir. 1986) ...................................................................................... 14

*Hoblock v. Albany Cnty. Bd. of Elections*,
233 F.R.D. 95 (N.D.N.Y. 2005) ............................................................................... 10

*Hulinsky v. County of Westchester, (PMH)*,
2023 WL 3162428 (S.D.N.Y. Apr. 28, 2023) ............................................................ 8

*Husted v. A. Philip Randolph Inst.*,
584 U.S. 756 (2018) .................................................................................................. 3

*In re N.Y.C. Policing During Summer 2020 Demonstrations*,
27 F.4th 792 (2d Cir. 2022) .............................................................................. 7, 9, 11

*In re Sealed Case*,
237 F.3d 664 ....................................................................................................... 9, 10

*Issa v. Newsom*,
No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June 10,
2020) ....................................................................................................................... 10

*Jud. Watch, Inc. v. Ill. State Bd. of Elections*,
No. 24 C 1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ................................... 10

*Kalbers v. U.S. Dep't of Just.*,
22 F.4th 816 (9th Cir. 2021) .............................................................................. 9, 10

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) .................................................................................... 4

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998) .................................................................................... 11

*Lichtman v. Blom*,
No. 86 Civ. 5643, 1990 WL 186856 (S.D.N.Y. Nov. 19, 1990) ..................................... 15

*New York v. Nat'l Sci. Found.*,
No. 25 CIV. 4452, 2025 WL 1793858 (S.D.N.Y. June 30, 2025)................................... 14

*Paher v. Cegavske*,
No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) ............. 10

*Provencher v. Bimbo Bakeries USA*,
No. 2:22-cv-198, 2023 WL 6050244 (D. Vt. Aug. 7, 2023) .......................................... 11

*Pub. Int. Legal Found., Inc. v. Winfrey*,
463 F. Supp. 3d 795 (E.D. Mich. 2020).......................................................................... 15

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
550 B.R. 241 (Bankr. S.D.N.Y. 2016)............................................................................... 7

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972).................................................................................... 2, 10, 12

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*,
489 U.S. 749 (1989)....................................................................................................... 14

*United States v. Hooker Chems. & Plastics Corp.*,
749 F.2d 968 (2d Cir. 1984)......................................................................................... 7, 9

*Vermonters for a Clean Env't, Inc. v. Madrid*,
No. 1:12-cv-73, 2012 WL 3238237 (2012) ..................................................................... 14

*Vt. All. for Ethical Healthcare, Inc. v. Hoser*,
No. 5:16-cv-205, 2016 WL 7015717 (D. Vt. Dec. 1, 2016)............................................. 8

*WildEarth Guardians v. U.S. Forest Serv.*,
573 F.3d 992 (10th Cir. 2009) ....................................................................................... 12

**Constitution:**

Article I § 4 .......................................................................................................................... 2

**Statutes:**

52 U.S.C. § 20507.................................................................................................................. 3

52 U.S.C. § 20703.................................................................................................................. 4

52 U.S.C. § 21083 ................................................................................................................... 3

V.S.A. 17.2154 ................................................................................................................. 1, 9

**Federal Rules:**

Fed. R. Civ. P. 24 ......................................................................................................... 1, 7, 13

**Other Authorities:**

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 5, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information ................................................................... 3

Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD ............................................. 3

**INTRODUCTION**

The U.S. Department of Justice ("DOJ") recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized federal database. As part of this effort, DOJ sued Vermont's Secretary of State last week, seeking to compel her to turn over the State's complete and unredacted voter registration list, which contains sensitive and private information about every voter in Vermont. This legal assault intrudes not only upon Vermont's constitutional prerogative to maintain and protect its own voter registration list—it directly intrudes upon the privacy rights of individual Vermonters who have good reason to fear their personal information being handed over to the federal government.

Accordingly, the Vermont Alliance for Retired Americans ("Alliance"), Mary Andrews, and Richard Monterosso (together, "Proposed Intervenors") move to intervene in this suit to prevent the improper disclosure of their—and in the case of the Alliance, its members'—sensitive and personal information to DOJ. Vermont law guarantees voters that their sensitive voter information contained within the statewide voter registration list—including driver's license numbers, partial Social Security numbers, and dates of birth—"shall be kept confidential," and specifically restricts the circumstances in which a State agency may share the list with a federal agency. 17 V.S.A. § 2154(b)(1)-(2). DOJ's requested relief runs roughshod over these privacy protections, which Proposed Intervenors seek to preserve.

Proposed Intervenors are entitled to intervention as of right because they have significant interests that are at severe risk of impairment by this action, and the existing parties do not adequately represent those interests. *See* Fed. R. Civ. P. 24(a). Most significantly, they have an interest in ensuring that their personal information is not improperly disclosed to DOJ. While Vermont's election officials have thus far resisted disclosure, they do not adequately represent Proposed Intervenors; as a governmental defendant, the Secretary of State must consider the

"broader public-policy implications" of the issues presented in this suit, unlike Proposed Intervenors, who are solely concerned with protecting their members and constituents' privacy, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538-39 (1972)). Unsurprisingly, in parallel cases involving DOJ's nationwide crusade, other federal courts have recently granted intervention to similarly situated intervenors—including to the Michigan Alliance for Retired Americans. *See* Ex. E (Dkt. 45, *United States v. Benson*, No. 25-cv-1148 (W.D. Mich. Dec. 9, 2025)); Ex. F (Dkt. 52, *United States v. Oregon*, No. 25-cv-01666 (D. Or. Dec. 5, 2025)).

Alternatively, Proposed Intervenors should be granted permissive intervention under Rule 24(b), the requirements of which are readily satisfied. Doing so will ensure that Vermont voters have a voice in this litigation concerning the disclosure of *their* sensitive and personal information. At a minimum, Proposed Intervenors' presence will help to develop the issues in this case and ensure vigorous presentation of arguments that the existing Defendant may be limited in presenting. Those considerations weigh strongly in favor of permissive intervention. *See* Ex. G (Dkt. 70, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 24, 2025)) (granting permissive intervention by oral order).

## BACKGROUND

I.   **Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of federal elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns to the states the responsibility of determining eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. In 1993, Congress enacted the National Voter Registration Act ("NVRA"), which charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)-(g). It similarly makes *states* the custodians of voter lists. *See Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018).

The Help America Vote Act ("HAVA") regulates how *states* maintain voter registration lists, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the *State* level." *Id.* § 21083(a)(1)(A) (emphasis added).

II.     **The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states.**

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter. To date, DOJ has reportedly sent demands to at least forty states, with plans to make similar demands on all fifty,[1] and it has filed lawsuits against fourteen of those states that it has deemed insufficiently cooperative. It seeks to use the data to create a national voter database that will, in turn, be used to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 5, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.

elections. *See* Barrett & Corasaniti, *supra* note 1. The vast majority of states have refused to comply, declining to turn over sensitive personal information that is typically protected by state law. *See* Martizen-Ochoa, O'Connor, & Berry, *supra* note 1 (reporting that only two states—Indiana and Wyoming—have given DOJ everything it sought).

DOJ sent Vermont a letter on September 8, 2025, demanding Vermont's "complete and current [voter registration list]." Dkt. 1 ¶¶ 19-20. The letter requested that Vermont produce the voter registration list with "all fields, . . . includ[ing] the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of their social security number," Dkt. 2-3 at 2. The letter asserted that DOJ was empowered by HAVA and by the NVRA to demand such data from Vermont. Dkt. 2-3 at 2.

Vermont responded on September 22, 2025, refusing to disclose Vermont's voter registration list without assurances that the Department of Justice would comply with the Privacy Act of 1974 and the e-Government Act of 2004, and that the voter registration list would not be used for any purpose prohibited by Vermont law. Dkt. 1 ¶ 25.

### III. The Department of Justice sues Vermont to obtain its complete registration list.

DOJ filed this suit on December 1, seeking to compel Vermont to provide its full statewide voter registration list. Dkt. 1. It names Sarah Copeland Hanzas, in her official capacity as Secretary of State, as Defendant. *See id.* ¶ 8. DOJ brings only one claim: an allegation that the Secretary is in violation of the Civil Rights Act of 1960, 52 U.S.C. § 20703. This statute does not support the Department's sweeping demands.

DOJ invokes Section 303 of the Civil Rights Act of 1960 ( "CRA"), a long dormant Civil Rights-era law that permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted the law to preserve "the right of all qualified citizens

to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956, at 1944 (1959). This history "leaves no doubt but that [Section 303] is designed to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). But DOJ admits that is not its purpose here; rather it claims to be evaluating Vermont's compliance with list maintenance efforts required by the NVRA and HAVA—statutes with their own separate disclosure rules (under the NVRA specifically) and enforcement mechanisms. Dkt No. 1 ¶ 20. Thus, the Civil Rights Act is inapplicable.[2]

## IV. Proposed Intervenors' sensitive personal information is placed in jeopardy by DOJ's demands.

Proposed Intervenors include a statewide organization, the Alliance, whose members include retired union members, as well as civically engaged, registered voters in Vermont, whose sensitive and personal information will be disclosed to DOJ if it prevails in its lawsuit.

***The Alliance.*** The Alliance is a nonprofit, nonpartisan organization, which has more than 7,700 members, principally consisting of retired union workers who live across the State. Ex. B ("Macaig Decl.") ¶¶ 4-5. Its mission is to ensure social and economic justice and full civil rights for retirees after a lifetime of work. *Id.* ¶ 7. To that end, the Alliance encourages its members to be politically active, including by encouraging them to register to vote and to vote. *Id.* ¶¶ 8-9. Because retirees are the frequent targets of financial scams and are often hesitant to turn over personally

---

[2] Even if Section 303 did apply, it does not prohibit states from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, just as they may under the NVRA. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 35, 56 (1st Cir. 2024).

identifying information, the Alliance's mission of encouraging its members to be politically engaged would be frustrated if it were known that DOJ would have access to sensitive, personally identifying information that Vermont maintains in its statewide voter file, including by discouraging retirees from registering to vote. *Id.* ¶¶ 9, 11, 13. Members of the Alliance who are naturalized citizens likely will be particularly concerned about providing this information to DOJ in light of recent instances in which ICE has detained naturalized citizens in Vermont. *Id.* ¶ 10. In addition, disclosure of this sensitive information to DOJ is itself a privacy harm to the Alliance's members, and it increases the risk that the information will find its way to others who could perpetuate financial scams targeting older Americans. *Id.* ¶ 12.

**Rich Monterosso**. Mr. Monterosso is a registered voter in Vermont who is civically engaged, including as a member of his local Democratic Party Committee and who serves in (nonpartisan) elected office as the chair of the South Hero School Board. Ex. C ("Monterosso Decl.") ¶¶ 3-5. Mr. Monterosso fears that DOJ will not appropriately protect his information, risking its disclosure in a way that will make him the subject of identity fraud; that DOJ will use this data for revenge against perceived political opponents, and that he too could face retaliation from the government based on his civic engagement; and that disclosure of this information will have a chilling effect on voter participation and free speech in his community. *Id.* ¶¶ 8-11.

**Mary Andrews**. Ms. Andrews is also a civically engaged, registered voter in Vermont. Ex. D ("Andrews Decl.") ¶¶ 2-3. She too worries that DOJ will not adequately safeguard her sensitive personal data, risking her being the subject of identity fraud, and that DOJ may use the information to retaliate against her because of her civic engagement. *Id.* ¶¶ 5-7.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require courts to grant intervention to any movant who "claims an interest relating to the property or transaction that is the subject of the action, and

is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Consequently, "[t]o prevail on a motion for intervention as of right, a movant must '(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). "The inquiry under Rule 24(a)(2) is a flexible one and the factors should 'be read not discretely, but together.'" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 550 B.R. 241, 248 (Bankr. S.D.N.Y. 2016) (citation omitted) (quoting *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984)). "A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation. Similarly, where representation is clearly inadequate, a lesser interest may suffice as a basis for granting intervention." *Id.* (quoting *Hooker Chems.*, 749 F.2d at 983); *see also Hooker Chems.*, 749 F.2d at 983 (discussing flexibility of Rule 24(a) inquiry and recognizing that most recent substantive changes to Rule 24 "focused on abandoning formalistic restrictions in favor of 'practical considerations' to allow courts to reach pragmatic solutions to intervention problems" (citing 1966 Advisory Committee Note)).

Additionally, courts retain discretion to grant "[p]ermissive intervention . . . when a proposed intervenor 'has a claim or defense that shares with the main action a common question of law or fact.'" *In re N.Y.C. Policing*, 27 F.4th at 804 (quoting Fed. R. Civ. P. 24(b)(1)(B)). This

is a "relaxed" standard. *Vt. All. for Ethical Healthcare, Inc. v. Hoser*, No. 5:16-cv-205, 2016 WL 7015717, at *2 (D. Vt. Dec. 1, 2016).[3]

## ARGUMENT

### I.  Proposed Intervenors are entitled to intervene as of right.

#### A.  The motion to intervene is timely and will not prejudice the parties.

Proposed Intervenors' motion—filed a mere ten days after the complaint—is plainly timely. *See, e.g.*, *Grocery Mfrs. Ass'n v. Sorrell*, No. 5:14-cv-117, 2014 WL 12644264, at *4 (D. Vt. Oct. 7, 2014) (motion to intervene "filed within two months of the filing of the complaint" was "timely filed"). No case schedule has been set, and no deadlines would need to be altered if intervention is granted. Further, Proposed Intervenors agree to abide by any schedule set by the Court or agreed to by the existing parties. Accordingly, there is no conceivable prejudice to the existing parties. *Hulinsky v. County of Westchester*, No. 22-CV-06950 (PMH), 2023 WL 3162428, at *3 (S.D.N.Y. Apr. 28, 2023) (concluding there was no prejudice where intervenors did not seek to interfere with any existing schedules in the case).

#### B.  Proposed Intervenors have significantly protectable interests in protecting their sensitive personal information from improper disclosure to DOJ.

Proposed Intervenors have a significant protectable interest in protecting their sensitive and personal information. "For an interest to be cognizable by Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (citation omitted). But, consistent with the liberal standards of Rule 24, the Second Circuit has "cautioned against requiring that a proposed intervenor identify a narrow interest

---

[3] In compliance with Rule 24(c)'s requirement that a motion to intervene be accompanied by a "pleading," Proposed Intervenors attach a proposed answer to this motion. *See* Ex. A. Proposed Answer. Intervenors reserve the right to file a motion to dismiss under Rule 12 ahead of any deadline set by the Court or the Federal Rules.

amounting to a legal entitlement." *In re N.Y.C. Policing*, 27 F.4th at 801; *see also Hooker Chems.*, 749 F.2d at 983 (recognizing "components of the Rule are not bright lines, but ranges").

Proposed Intervenors satisfy the standard of Rule 24(a)(2). Mr. Monterosso, Ms. Andrews, and the members of the Alliance all oppose the disclosure of their sensitive personal information to DOJ. *See supra* Background Part IV. Courts regularly find that precisely these types of concerns support intervention. *See, e.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" significantly protectable interest in confidentiality of non-public documents); *In re Sealed Case*, 237 F.3d 657, 663-64 (D.C. Cir. 2001) (holding intervenors had "legally cognizable interest in maintaining the confidentiality" of records).

Importantly, the voter registration data of Proposed Intervenors is protected from disclosure under Vermont law. 17 V.S.A. § 2154(b)(1)-(2). And Proposed Intervenors are credibly concerned about the consequences of the disclosure of their sensitive information to DOJ, including because of the potential risk of data breaches that would expose them to identity-theft scams, and because of the potential for retaliation by the federal government against individuals who engage in civic advocacy efforts disfavored by the current administration. *See* Macaig Decl. ¶¶ 11-12; Monterosso Decl. ¶¶ 7-9; Andrews Decl. ¶ 5.

The Alliance's mission-critical voter engagement and turnout work will also be harmed by the disclosure of its voters' information to DOJ. Its members are predominantly senior citizens, and senior citizens frequently are targets of identity-theft scams, and the Alliance has found that retirees are frequently hesitant to turn over personally identifying information. Macaig Decl. ¶¶ 9, 11. If members know that their sensitive identifying information will be disclosed to a DOJ that they do not trust to handle it with care, they may be discouraged from engaging in the political process (such as by registering to vote), thereby undermining the Alliance's core mission. *Id.* ¶¶ 8-

14. Courts have long recognized that organizations have a significant protectable interest in preserving and pursuing their own mission-critical organizational activities, particularly when it comes to ensuring their constituents' ability to vote. *See, e.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020)

Ultimately, however, Proposed Intervenors (and the Alliance's constituents) "have an interest in keeping their information private from the DOJ, whether or not disclosure to the DOJ produces any additional harm." Ex. E (*Benson*, No. 25-cv-01148, at *6). Because once that information is disclosed, "the cat is out of the bag." *In re Sealed Case*, 237 F.3d at 664 (citation omitted) (finding impairment when intervenor's confidential information was at risk of disclosure); *see also Kalbers*, 22 F.4th at 828 (holding intervenor's "interest in keeping its documents confidential would obviously be impaired by an order to disclose" those documents). Consequently, Proposed Intervenors easily satisfy Rule 24(a)(2)'s requirement of having a significantly protectable interest in the litigation. *See* Ex. E (*Benson*, No. 25-cv-01148, at *4); Ex. F (*Oregon*, No. 25-cv-01666, at *2-3).

### C. Proposed Intervenors' interests are not adequately represented by existing parties.

Proposed Intervenors cannot be assured adequate representation in this matter if they are denied intervention. The "burden to show inadequacy of representation . . . is a minimal one, and not onerous." *Hoblock v. Albany Cnty. Bd. of Elections*, 233 F.R.D. 95, 99 (N.D.N.Y. 2005); *accord Trbovich*, 404 U.S. at 538 n.10 (explaining this requirement "should be treated as minimal"). While the Second Circuit demands a greater "showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective," *Butler, Fitzgerald &*

*Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001), ultimately, a proposed intervenor need only show that they "might not be adequately represented" by existing parties. *In re N.Y.C. Policing*, 27 F.4th at 803. This is the case even where the proposed intervenor and the party's interests are "related" but "not 'identical.'" *Provencher v. Bimbo Bakeries USA*, No. 2:22-cv-198, 2023 WL 6050244, at *4 (D. Vt. Aug. 7, 2023). Courts are thus "liberal in finding" this requirement satisfied because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909 (3d ed. 2024). Here, Proposed Intervenors have distinct interests from the existing parties, all of which are governmental actors bound by federal and state laws governing their voter list maintenance activities. No existing party adequately represents those distinct interests.

To start, DOJ naturally does not represent Proposed Intervenors' interests, as it seeks to forcibly compel production of Vermont's unredacted state voter registration checklist. While the existing Defendant has, to date, resisted that demand, she too does not adequately represent Proposed Intervenors' specific interests. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government-official defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining that the burden in these circumstances is "comparatively light"). Simply put, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use v. Mont. Wilderness Ass'n*,

647 F.3d 893, 899 (9th Cir. 2011) (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)); *see also Conservation L. Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (explaining that "a governmental entity charged by law with representing the public interest of its citizens" will not necessarily "advance the narrower interest of a private entity").

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like Proposed Intervenors—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195-96 (citing *Trbovich*, 404 U.S. at 538-39). Thus, the Supreme Court cautioned that courts should not conduct the adequacy of representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation omitted). In other words, even if Vermont continues to also oppose the relief that DOJ seeks at a high level of abstraction, it does not follow that they share "identical" interests to civic membership organizations committed to voter engagement and turnout. *See id.*

Here, the Defendant and Proposed Intervenors do not share "identical" interests. For one, the Secretary is obliged to enforce the requirements of the NVRA and HAVA, in addition to various state laws governing maintenance of the voter registration list. Thus, by definition, she has an obligation to weigh and carry out public duties that Proposed Intervenors do not share. *See, e.g.*, *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (concluding adequate representation was not guaranteed where existing defendant was "an elected official" whose interpretation of the NVRA might not be aligned with intervenors' interests). Indeed, the NVRA specifically requires state election officials to "balance competing objectives"—

12

maintaining accurate and current voter rolls while promoting access to the ballot box—that do not pertain to the Proposed Intervenors or their interests. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019). In view of those circumstances, adequate representation of Proposed Intervenors' interests is hardly "assured." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 132-33 (2d Cir. 2001) (explaining this factor is met where parties' interests are not "so similar" as to assure adequacy of representation). Simply put, Proposed Intervenors are not burdened with the existing Defendant's public duties and obligations to enforce the NVRA and HAVA—they are focused entirely on maintaining the privacy of their sensitive personal information. As a result, they are well-positioned to press legal arguments that cannot be "equally asserted" by the existing parties given their public duties. *Does 1 Through 7 v. The Taliban*, No. 6:22-cv-990, 2023 WL 4532763, at *5 (N.D.N.Y. July 12, 2023).

At bottom, the government entities and public officials on either side of the case do not stand in the same shoes as Proposed Intervenors and thus do not sufficiently represent their interests, which are directly impacted by the disposition of this matter. Other courts have recognized this and granted intervention as of right to organizations and individual voters similar to Proposed Intervenors in analogous cases brought by the Department of Justice against other states. *See* Ex. E (*Benson*, No. 25-cv-01148, at *10-12); Ex. F (*Oregon*, No. 25-cv-01666, at *4-5).

## II. Proposed Intervenors should alternatively be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) is readily satisfied: Proposed Intervenors assert a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). Proposed Intervenors have moved promptly, and agree to abide by any schedule set by the Court or agreed to by the original parties,

meaning there will be no delay or prejudice. And Proposed Intervenors' defense requires resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. A (Proposed Answer).

The Second Circuit has identified additional factors the Court can consider in weighing permissive intervention requests. *See Citizens Against Casino Gambling in Erie Cnty. v. Hogen*, 417 F. App'x 49, 50 (2d Cir. 2011) (citing *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)). Those considerations include the nature of the proposed intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether the proposed intervenors are likely to contribute to the full development of the factual and legal issues in the case. *See id.* Each of those factors buttress the case for intervention here.[4]

First, Proposed Intervenors seek to defend important personal privacy interests, as well as interests unique to civic organizations. *See supra* Section I.B; *cf. U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 769 (1989) (recognizing the strong personal interest in maintaining privacy of personal information). Second, these parochial interests are not identical to the interests of the existing governmental defendants and may not be fully advanced absent their intervention. *See supra* Section I.C. Finally, the harms vulnerable voters face and the arguments that they advance will certainly contribute to the "full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *H.L. Hayden*, 797 F.2d at 89 (citation omitted). Whereas the existing Defendants will have to present arguments

---

[4] While these additional factors overlap with certain considerations under Rule 24(a)(2), it does not follow that permissive intervention must be denied if Rule 24(a)(2) is not satisfied. To the contrary, "[d]istrict courts routinely grant permissive intervention to applicants even in cases where the court has found that the existing party adequately represents the proposed intervenor's interest." *New York v. Nat'l Sci. Found.*, No. 25 CIV. 4452 (JPC), 2025 WL 1793858, at *5 (S.D.N.Y. June 30, 2025); *see also Vermonters for a Clean Env't, Inc. v. Madrid*, No. 1:12-cv-73, 2012 WL 3238237, at *2 (D. Vt. Aug. 7, 2012) (choosing not to analyze whether the existing party adequately represents the proposed intervenor's interest and instead granting permissive intervention).

in a manner consistent with their duties under the NVRA and HAVA, *see Bellitto*, 935 F.3d at 1201, Proposed Intervenors can present arguments guided solely by the interests of Vermonters and civic organizations that will be harmed by DOJ's requested relief. *See supra* Section I.C. Proposed Intervenors therefore stand ready to "offer a unique, personal and highly relevant factual perspective to the law, its development, and its impact." *Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007).

Courts routinely grant permissive intervention to civic organizations to ensure their voices and the voices of their members are heard when litigation implicates the rights and privacy of all voters, notwithstanding the presence of governmental defendants ostensibly charged with upholding broader conceptions of the public interest. *See, e.g.*, *1789 Found. Inc. v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants).

Thus, in keeping with the "liberal standard[]" in favor of permissive intervention, *Lichtman v. Blom*, No. 86 Civ. 5643, 1990 WL 186856, at *1 (S.D.N.Y. Nov. 19, 1990), and because Proposed Intervenors' participation will assist rather than prejudice the efficient development and resolution of this matter, the Court should grant permissive intervention if it does not find that Proposed Intervenors may intervene as of right. *See* Ex. G (Dkt. 70, *Weber*, No. 25-cv-09149) (granting permissive intervention by oral order to state affiliates of the NAACP and League of Women Voters in DOJ's parallel lawsuit in California).

## CONCLUSION

The Court should grant Proposed Intervenors' motion to intervene.

Dated: December 11, 2025

*Respectfully submitted,*

/s/ Joshua C. Abbuhl.
Marc E. Elias*
David R. Fox*
Joshua C. Abbuhl
Julianna D. Astarita*
Kevin Kowalewski*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 968-4498
melias@elias.law
dfox@elias.law
jabbuhl@elias.law
jastarita@elias.law
kkowalewski@elias.law

* *Pro Hac Vice* Applications Forthcoming

*Counsel for Proposed Intervenors*