IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>SARAH COPELAND HANZAS, in her official capacity as the Secretary of State of Vermont,<br><br>*Defendant*. | Case No. 2:25-cv-00903-MKL |

**MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANT VERMONT PUBLIC INTEREST RESARCH GROUP'S UNOPPOSED MOTION TO INTERVENE**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    I.     Background and Procedural Posture..........................................................................2

    II.    Vermont Public Interest Research Group..................................................................6

LEGAL STANDARD ...........................................................................................................7

ARGUMENT........................................................................................................................9

    I.     VPIRG is entitled to intervene as of right under Rule 24(a)(2)....................................9

          A.  The motion is timely ........................................................................................9

          B.  VPIRG has significantly protectable interests related to this litigation.................10

          C.  The litigation will impact VPIRG's interests...........................................................11

          D.  VPIRG's interests are not adequately represented by the current parties..............12

    II.    In the alternative, VPIRG should be permitted to intervene under Rule 24(b) ...........14

CONCLUSION..................................................................................................................15

# INTRODUCTION

Plaintiff the United States is engaged in an unprecedented effort to collect voters' sensitive data from almost every state in the country. Vermont is one of 21 states, plus the District of Columbia, that Plaintiff has sued because they did not comply with Plaintiff's demands to produce unredacted voter rolls, including driver's license numbers and social security numbers.[1] In this case, Plaintiff cites three statutes in support of its demand—the National Voter Registration Act (NVRA), the Help America Vote Act (HAVA), and Title III of the Civil Rights Act of 1960 (CRA)—although it brings a claim only under the CRA. None of these statutes authorizes Plaintiff to compel Vermont to produce its unredacted voter file. The U.S. Attorney General did not satisfy the requirement to provide both the basis and the purpose of her request for this data under the CRA, instead relying entirely on a purported desire to ensure Vermont's compliance with the NVRA and HAVA. The Department of Justice (USDOJ) is not investigating specific potential violations of the law. Rather, these lawsuits represent an extraordinary and anomalous effort to collect state voter data without adhering to state and federal protections for voters' privacy or respect for the state's constitutional primacy in election administration.

Proposed Intervenor-Defendant Vermont Public Interest Research Group (VPIRG) is the largest nonpartisan nonprofit consumer and environmental advocacy organization in Vermont. VPIRG works to inform and mobilize people across the state and represents thousands of members across Vermont whose personal information may be unlawfully shared with the federal government depending on the outcome of this litigation. Because VPIRG's interests are directly

---

[1] Kaylie Martinez-Ochoa, Eileen O'Connor, and Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Center (Aug. 28, 2025) (last updated Dec. 19, 2025), https://perma.cc/U9GX-LBCS.

impacted by this litigation, VPIRG has a right to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2). In the alternative, VPIRG seeks permissive intervention under Rule 24(b)(1).

## BACKGROUND

### I. Background and Procedural Posture

This case, like the others playing out across the country, is about the federal government's attempt to amass sensitive data on millions of Americans to build a national voter registration database that can be weaponized to exert political control over elections.

In the summer of 2025, Plaintiff sent letters to election officials in dozens of states, including Vermont, demanding production of their statewide voter registration lists, including sensitive information that is not part of the public voter file.[2] USDOJ wrote to Secretary of State Copeland Hanzas on September 8, 2025, demanding an electronic copy of Vermont's statewide voter registration list containing "all fields, which include the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number." ECF No. 1 ¶¶ 19-20. The letter invoked the CRA, the NVRA, and HAVA. *Id.* ¶ 20. On September 22, 2025, Secretary Copeland Hanzas declined to provide the non-public statewide voter registration list—which includes confidential voter information—without assurances that USDOJ would comply with the Privacy Act of 1974, the e-Government Act of 2004, and Vermont law. *Id.* ¶ 25. USDOJ never responded to Secretary Copeland Hanzas's conditions.

Plaintiff filed this suit on December 1, 2025, alleging only one claim: that Defendant has violated the CRA. Complaint, ECF No. 1. It also moved to compel Vermont to provide its full

---

[2] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

2

statewide voter registration list pursuant to the same statute. USDOJ Motion to Compel, ECF No. 2-2. But the CRA does not authorize baseless sweeping demands for entire non-public voter registration lists without sufficient basis and purpose, and an articulation thereof, nor does it authorize this Court to compel such production without a proper showing of why it is entitled to the data. The CRA also does not permit Plaintiff to use a tactic for resolving discovery disputes as a tool to win its merits claims that it is entitled to confidential data. Rather, the CRA permits the Attorney General to demand access to voter records in writing with "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. But USDOJ's letter to Vermont, like its demands to other states, does not satisfy the "basis" or "purpose" requirements for the demand for highly sensitive voter data. USDOJ claims no basis for its request and argues that it requires access to this data "to ascertain Vermont's compliance with the list maintenance requirements of the NVRA and HAVA." ECF No. 1 ¶ 20. But the NVRA and HAVA charge states—not the federal government— with maintaining voter registration lists and removing ineligible voters from the rolls. *See* 52 U.S.C. § 20507(a); 52 U.S.C. § 21083(a)(1)-(2); H.R. Rep. No. 107-329, pt. 1, at 31-32 (2001) (emphasizing the importance of administering elections at the state and local level); *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018). Neither the NVRA nor HAVA make the federal government responsible for compiling a national voter registration list or performing list maintenance. *Id.* As such, USDOJ's purported reasons for seeking sensitive data about hundreds of thousands of Vermont voters fall short of the CRA's statutory requirements. Moreover, a snapshot of a state's statewide voter registration list does not offer enough information for USDOJ to assess the state's general program of list maintenance. A snapshot likewise does not provide enough information for Plaintiff to determine whether the state requested certain identifying information at the time of registration.

Plaintiff's plans for this sensitive data appear nowhere in the Complaint, but have emerged from other sources, including a proposed Memorandum of Understanding (MOU) the USDOJ asked Colorado, and reportedly other states, to sign. *See* Proposed "Confidential Memorandum of Understanding" sent to Colorado at 5, https://www.documentcloud.org/documents/26330926-vrldata-sharing-agreement-doj-co/; *see also* Jonathan Shorman, *Trumps's DOJ Offers States Confidential Deal to Remove Voters Flagged by Feds*, Stateline (Dec. 18, 2025), https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/. The MOU describes USDOJ's attempted takeover of states' exclusive authority to maintain their voter rolls and determine who should be removed from the rolls due to ineligibility. It provides that USDOJ will conduct an "analysis and assessment" of the state's voter rolls and instruct the state to remove voters USDOJ identifies.[3] In announcing additional lawsuits against four more states earlier this month, USDOJ confirmed its goal was not to review list maintenance procedures, but to expand federal control over elections and target voters for removal, stating: "At this Department of Justice, we will not permit states to jeopardize the integrity and effectiveness of elections by refusing to abide by our federal elections laws. If states will not fulfill their duty to protect the integrity of the ballot, we will."[4] This federal takeover of list maintenance would run contrary to the Constitutional and statutory frameworks for elections, which provide that Congress and the states make the law, and state and local governments run elections, including registering voters and maintaining voter rolls.[5]

---

[3] The MOU provides that removals must take place within 45 days of notification from USDOJ, which—for any voters flagged for removal based on having moved—would violate Section 8(d) of the NVRA, 52 U.S.C. § 20507(d)).

[4] *Press Release: Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws*, (Dec. 12, 2025), https://perma.cc/2R3L-YZ5X.

[5] Further, the proposed MOU does not limit USDOJ's ability to use states' data and expressly permits USDOJ to provide the data to contractors. *Id.* at 6-7.

Other purposes for the vast data-collection exercise Plaintiff is undertaking apparently have nothing to do with the statutes relied upon in the Complaint. According to one USDOJ lawyer, Civil Rights Division leadership demanded that USDOJ obtain "states' voter rolls, by suing them if necessary" to "go through all the data and compare it to the Department of Homeland Security data and Social Security data" and search for "immigrants that have registered to vote" even though "[t]here was no pre-existing evidence" that unlawful immigrant voting is a problem.[6] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025), https://perma.cc/L6W3-THMY. Moreover, Plaintiff's demands for private voter data persist despite reports that efforts to use the data for voter verification have resulted in erroneous removals of eligible U.S. citizens from state voter rolls. Jude Joffe-Block, *Trump's SAVE tool is looking for noncitizen voters. But it's flagging U.S. citizens too*, (Dec. 10, 2025), https://perma.cc/7DDE-T9ZV. The Department of Homeland Security confirmed that it is receiving information from USDOJ, and the information exchange is being done "to scrub aliens from voter rolls."[7] Plaintiff's efforts in this case, and the 21 similar cases against other states and Washington, D.C., are part of a larger program by the federal government to gather and use vast swaths of data, notwithstanding laws to the contrary. *See Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, No. 1:25-cv-00457-CKK, 2025 WL 3251044, *2 (staying IRS policy of data-sharing with Immigration and Customs Enforcement); *see also* Hamed Aleaziz,

---

[6] To the extent that USDOJ is not engaging in an investigation, as it purports to be doing to ensure compliance with the NVRA and HAVA, and is instead engaging in data collection for any other purpose, USDOJ must comply with the Paperwork Reduction Act, *see* 44 U.S.C. §§ 3506(c), 3507(a), and the Privacy Act, *see* 5 U.S.C. § 552a.

[7] Jonathan Shorman, *DOJ is sharing state voter roll lists with Homeland Security*, Colorado Newsline (Sep. 15, 2025), https://coloradonewsline.com/2025/09/15/repub/doj-voter-roll-homeland-security/.

*Immigration Agents Are Using Air Passenger Data for Deportation Effort*, N.Y. Times (Dec. 12, 2025), https://www.nytimes.com/2025/12/12/us/politics/immigration-tsa-passenger-data.html.

II. **Vermont Public Interest Research Group**

VPIRG is a nonpartisan, nonprofit organization that mobilizes Vermonters to protect and strengthen democracy in the state. Ex. C, Declaration of Paul Burns (Burns Dec.), ¶ 3. VPIRG has more than 12,000 members, each of whom has donated at least $30 to the organization in the last 18 months, and maintains an email subscription list of over 47,000 supporters. Burns Dec. ¶ 4. VPIRG and its members pursue a shared goal of making democracy accessible to all eligible Vermont voters by advocating for legislation protecting the right to vote, co-hosting voter registration drives, and educating Vermonters about how to register to vote and push back against threats to democracy. Burns Dec. ¶¶ 5-7. For example, in 2025, VPIRG conducted a "Democracy Summer" campaign to mobilize Vermonters in defense of democracy. As part of that campaign, VPIRG members, volunteers, and staff went door to door in each of Vermont's approximately 250 towns, knocking on over 80,000 doors. Burns Dec. ¶ 7.

VPIRG has worked to protect, preserve, and expand the voting rights of its members and all Vermonters. It has helped pass and defend state legislation to automatically register eligible citizens when they renew a driver's license; establish online voter registration and same-day voter registration; provide universal and pre-paid mail ballots for general elections; and enable 17-year-olds who will turn 18 before the general election to vote in primary elections. Burns Dec. ¶ 5. VPIRG has also advocated for legislation to protect the security and integrity of Vermonters' personal information and data, including by working to pass a comprehensive data privacy bill in 2024. Burns Dec. ¶ 10.

The vast majority of VPIRG's members and volunteers are registered voters whose personal information is at stake in this case. Burns Dec. ¶ 8. VPIRG's membership includes those who are concerned about, and object to, their full dates of birth, state driver's license numbers, non-driver photo ID numbers, or last four digits of their social security numbers being disclosed contrary to law. Burns Dec. ¶ 8. For example, VPIRG member Patricia Komline objects to Plaintiffs' collection of her information and fears it will disproportionately discourage certain eligible Vermonters from participating in the electoral process, including naturalized American citizens, those impacted by domestic violence, victims of identity theft, individuals who hold strong privacy concerns regarding government intrusion, and individuals who seek to live independently and with minimal interaction with government institutions. Ex. D, Declaration of Patricia Komline (Komline Dec.) ¶¶ 12-13.

## LEGAL STANDARD

A nonparty is entitled to intervene in an action as a matter of right when: (1) the motion to intervene is timely filed; (2) the proposed intervenors have "an interest relating to" the subject matter of the action; (3) the proposed intervenors are "so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [that] interest"; and (4) the proposed intervenors' interests are inadequately represented by the existing parties to the suit. Fed. R. Civ. P. 24(a)(2); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 190 (2022).

"Rule 24(a) is construed broadly, in favor of the applicants for intervention." *Scotts Valley Band of Pomo Indians of the Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 926 (9th Cir. 1990). "[A] court must allow any party to intervene" who meets the four criteria set forth by the Federal Rules. *Corren v. Sorrell*, 151 F. Supp. 3d 479, 494 (D. Vt. 2015); *see also United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 991 (2d Cir. 1984) (emphasizing "the great

variety of factual circumstances in which intervention motions must be decided, the necessity of having the 'feel of the case' in deciding these motions, and other considerations essential under a flexible reading of Rule 24(a)").

Even if a nonparty is not entitled to intervene as a matter of right, this Court may still grant permissive intervention when the movant has "a claim or defense that shares with the main action a common question of law or fact," and the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). The Court's discretion under Rule 24(b) is "very broad," *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986), and, like Rule 24(a), 24(b) is "'to be liberally construed' in favor of intervention." *Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 509 (S.D.N.Y. 2015). To that end, permissive intervention is available to "anyone who 'has a claim or defense that shares with the main action a common question of law or fact.'" *Comcast of Conn. v. Vt. Pub. Util. Comm'n*, No. 5:17-CV-161, 2018 WL 11469513, at *2 (D. Vt. Feb. 8, 2018) (quoting Fed. R. Civ. P. 24(b)(1)(B)).

In considering a motion to intervene, "[g]enerally, the court accepts as true the applicant's well-pleaded, non-conclusory allegations and supporting material." *Floyd v. City of New York*, 302 F.R.D. 69, 83 (S.D.N.Y. 2014). As the Second Circuit has emphasized, "except for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention." *In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 800 (2d Cir. 2022) (quoting *Oneida Indian Nation of Wis. v. State of N.Y.*, 732 F.2d 261, 265 (2d Cir. 1984)).

# ARGUMENT

**I. VPIRG is entitled to intervene as of right under Rule 24(a)(2).**

VPIRG is entitled to intervene in this litigation because its unopposed motion is timely; the organization and its members have significant interests in the case; those interests will be impacted by the outcome; and no existing party adequately represents those interests. The Court should grant VPIRG's motion to intervene, just as federal courts in Oregon, California, and Maine have granted similar motions to intervene in parallel cases. *See United States v. Oregon*, No. 6:25-cv-01666-MTK, 2025 WL 3496571 (D. Or. Dec. 5, 2025); Minute Order, *United States v. Weber*, No. 2:25-cv-09149-MFW-MAR (C.D. Cal. Nov. 19, 2025), ECF No. 70; Minute Order, *United States v. Bellows*, No. 1:25-cv-00468-LEW (D. Me. Dec. 12, 2025).

**A. The motion is timely.**

VPIRG has timely filed its motion to intervene, while the litigation is in its earliest stages. "Whether a motion to intervene is timely is determined within the sound discretion of the trial court from all the circumstances." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). Factors courts consider include "how long the applicant had notice of the interest" before moving to intervene; "prejudice to existing parties resulting from any delay"; and "prejudice to the applicant if the motion is denied." *Id.* VPIRG moves to intervene within one month of the Complaint, before any responsive pleadings have been filed. *See Chamber of Com. v. Moore*, No. 2:24-CV-01513, 2025 WL 1795803, at *2 (D. Vt. June 30, 2025) (intervention was timely where a motion to intervene was filed thirty-three days after the Complaint was filed); *Grocery Mfrs. Ass'n v. Sorrell*, No. 5:14-CV-117, 2014 WL 12644264, at *4 (D. Vt. Oct. 7, 2014) (intervention deemed timely when filed "within two months of the filing of the Complaint"). Defendant's first

responsive pleading is not due until January 15, 2026. As such, no prejudice in the form of delay will result to the existing parties if VPIRG's motion is granted.

### B. VPIRG has significantly protectable interests related to this litigation.

This litigation is closely tied to VPIRG's organizational interests and the interests of its thousands of members. Under Rule 24(a)(2), courts examine whether a proposed intervenor's interests are "direct, substantial, and legally protectable." *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (quotations omitted). And the Second Circuit has cautioned "against requiring that a proposed intervenor identify a narrow interest amounting to a legal entitlement." *In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th at 801.

VPIRG's members have interests that are directly related to the litigation, substantial, and legally protectable. VPIRG members include registered Vermont voters who risk having their sensitive personal data disclosed to Plaintiff without clarity about how the data will be used. Komline Dec. ¶ 13. Members were required to submit this sensitive personal data to Vermont to exercise their right to vote. Burns Dec. ¶ 8. VPIRG's members have a significant privacy interest in preventing the disclosure or unauthorized aggregation of their sensitive personal data, an interest protected by Vermont law. *See* 17 V.S.A. § 2154. Further, VPIRG's members are deeply committed to civic engagement, and, like VPIRG, they fear Vermonters will be less likely to register to vote if their data are shared. *See* Komline Dec. ¶ 14. As such, VPIRG's members' interests are directly related to this litigation because it implicates the proper use of their data, Vermonters' willingness and ability to register to vote, and the federal government's justification for seeking this data.

VPIRG also has organizational interests that are directly related to this litigation, substantial, and legally protectable. VPIRG has a long-standing interest in civic participation, as

demonstrated by its engagement in communities across Vermont to register and educate voters. Burns Dec. ¶ 7. VPIRG has a vested interest in the appropriate and lawful handling of voter information. As part of its pro-democracy work, VPIRG encourages eligible Vermont residents to register to vote and participate in elections. Burns Dec. ¶ 6. VPIRG is concerned that its efforts to encourage civic participation will be frustrated if Vermonters' sensitive private information is disclosed to Plaintiff, particularly to be used for improper purposes. Burns Dec. ¶ 9. In particular, VPIRG is concerned that Vermont residents will be more hesitant to engage in the political process for fear that their data will be misused for retaliation or harassment from the federal government. Burns Dec. ¶ 9. Plaintiff's aggressive demands for voters' data and lack of legitimate explanations for its proposed use amplify these fears for VPIRG members and make it difficult for VPIRG to fulfill its core mission. *See* Burns Dec. ¶ 9; Komline Dec. ¶¶ 13-14.

### C. The litigation will impact VPIRG's interests.

This litigation directly impacts VPIRG's organizational interests and the interests of its members. In evaluating this factor, courts consider whether an applicant for intervention has shown that "the disposition . . . may as a practical matter impair or impede their ability to protect their interests." *N.Y. Pub. Int. Rsch. Grp., Inc. v. Regents of the Univ. of the State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975); *see also Vermont All. for Ethical Healthcare, Inc. v. Hoser*, No. 5:16-CV-205, 2016 WL 7015717, at *2 (D. Vt. Dec. 1, 2016); *Corren*, 151 F. Supp. 3d at 495.

The disposition of this litigation will impact VPIRG's ability to protect its interests and those of its members. Plaintiff seeks virtually unlimited access to Vermont's voter data. If Plaintiff can use this Court to compel Vermont to deliver this level of access, VPIRG's interest in civic participation will be impaired, because Vermont citizens will be less likely to register to vote for

fear that their data will be released or used inappropriately beyond applicable federal- and state-law protections. Burns Decl. ¶¶ 8-9; Komline Dec. ¶ 14; *see also* 17 V.S.A. § 2154.

The disposition of this litigation will also impact VPIRG's members' ability to protect their interests. Plaintiff is seeking access to these members' unredacted personal information, which they provided to the State with the expectation that their privacy would be protected. Komline Dec. ¶¶ 4, 13. Plaintiff's mere access to the data will violate that expectation of privacy. Furthermore, VPIRG members unsurprisingly fear the use of their information for unknown or pretextual purposes. Komline Dec. ¶ 13. Finally, VPIRG members are deeply committed to civic engagement, and, like VPIRG, they fear eligible residents will be less likely to register to vote because of the possible disclosure of their data. Komline Dec. ¶ 14; Burns Dec. ¶ 9.

### D. VPIRG's interests are not adequately represented by the current parties.

VPIRG's interests are not adequately represented by any existing party in this litigation. The burden of showing that an intervenor's interests are not adequately represented is generally "treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). If an intervenor has the same ultimate goal as an existing party, a question arises as to whether an existing party has interests that are "*so similar* to those of [the proposed intervenor] that adequacy of representation [is] *assured*." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 132-33 (2d Cir. 2001) (emphases added). But adequate representation is not assured when the existing parties do not have the same incentive to raise factual and legal arguments necessary for the intervenor's adequate representation. *See, e.g.*, *Vermont All. for Ethical Healthcare*, 2016 WL 7015717, at *2 ("[T]he court cannot rule out the possibility . . . that the intervenors and the state defendants may not agree on all aspects" of the law at issue).

The existing Defendant does not adequately represent VPIRG's interests. Defendant has not filed a responsive pleading, so it is not yet known whether Defendant and VPIRG share the same ultimate objective of preventing USDOJ from accessing the voter data in the manner that USDOJ seeks, or what arguments Defendant may raise. Even assuming that Defendant and VPIRG share the same ultimate objective of protecting voters' confidential information from disclosure, VPIRG overcomes the presumption of adequate representation because Defendant does not have the same incentive to raise factual and legal arguments necessary for VPIRG's adequate representation. Defendant's and VPIRG's incentives differ in two ways. *First*, VPIRG is comprised of individual members whose sensitive data could be turned over to Plaintiff without their consent as a result of this litigation. Therefore, VPIRG and its members have a personal stake in the litigation that the Secretary of State does not. That is sufficient to justify intervention alongside Defendant because the State's interest, while important, is qualitatively different.

*Second*, Defendant has statutorily imposed objectives and obligations that diverge from those of VPIRG and its members. *See Berger*, 597 U.S. at 195. In this case, Defendant has an obligation to enforce HAVA and state laws governing list maintenance. And the NVRA instructs that Defendant must "balance competing objectives," including maintaining accurate voter rolls by removing ineligible voters, subject to procedural safeguards. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019). VPIRG does not have to balance these objectives. In this way, Defendant faces "legal or practical constraints preventing [it] from asserting the arguments" that VPIRG can put forth. *SEC v. Ripple Labs, Inc.*, No. 20-CV-10832, 2021 WL 4555352, at *4 (S.D.N.Y. Oct. 4, 2021). VPIRG, on the other hand, seeks to participate in this litigation to protect Vermont voters' personal data. *See supra* Argument I(B). Because VPIRG's interests are not adequately

represented by the existing parties, VPIRG should be permitted to intervene as of right so that it can protect the interests of itself and its members.[8]

## II. In the alternative, VPIRG should be permitted to intervene under Rule 24(b).

Even if the Court finds that VPIRG does not have a right to intervene under Rule 24(a), it should nonetheless permit intervention under Rule 24(b) because VPIRG has "a claim or defense that shares with the main action a common question of law or fact," and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). In deciding whether to grant permissive intervention, the Court "considers substantially the same factors for intervention as of right or permissive intervention." *Corren*, 151 F. Supp. 3d at 495 (quotations omitted). The Court may also weigh additional factors, all of which weigh in favor of VPIRG's intervention, including "whether [the] parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Id.* (quotations omitted).

VPIRG clearly has defenses that share common questions of law and facts with existing claims. At issue in this litigation is USDOJ's effort to gain sensitive data regarding hundreds of thousands of Vermont voters, despite a lack of authorization in federal law, and state law safeguarding that precise information. That state law defense will unquestionably be shared with

---

[8] VPIRG is aware that the Vermont Alliance for Retired Americans (the Alliance), Richard Monterosso, and Mary Andrews have sought to intervene as defendants. ECF No. 6. Since these proposed intervenors are not yet parties, the Court should not alter its adequacy analysis under Rule 24(a). Fed. R. Civ. P. 24(a) ("unless *existing parties* adequately represent that interest") (emphasis added). Further, VPIRG's interests are distinct from those the Alliance. The Alliance's mission is to "ensure social and economic justice . . . for retirees after a full lifetime of work." Terrence Macaig Declaration, ECF No. 6-3 (Macaig Dec.) ¶ 7. Most of its members are above the age of sixty. Macaig Dec. ¶ 5. VPIRG, by contrast, is not specifically devoted to advancing the interests of retirees but to protecting the health of all Vermont's people, environment, and economy. Burns Dec. ¶ 3.

the main action—Defendant cited that law in her response to USDOJ's demands for voter data. ECF No. 2-4 at 4-5.

Nor will VPIRG's participation delay or prejudice the adjudication of the existing parties' rights, as demonstrated by the fact that no party has opposed intervention. And because the case has barely begun, the instant motion (and VPIRG's entrance into the case) will not be disruptive. *See supra* Argument 1(A). VPIRG's participation will not cause undue delay and VPIRG will abide by any schedule or deadlines the Court establishes.

The additional factors that the Court may consider also weigh in favor of intervention. As explained, "the nature and extent of the intervenors['] interests" are significant. *Sw. Payroll Serv., Inc. v. Pioneer Bancorp, Inc.*, No. 1:19-CV-01349, 2020 WL 12675945, at *7 (N.D.N.Y. Aug. 4, 2020); *see supra* Argument I(B). And other parties fail to adequately represent those interests. *See supra* Argument I(D). Moreover, VPIRG "will significantly contribute to full development of the underlying factual issues in the suit[.]" *Corren*, 151 F. Supp. 3d at 495. Through its decades of experience working to safeguard Vermont's democracy, previous work concerning elections and data privacy, and connection to hundreds of individual members impacted by this litigation, VPIRG will help develop the factual record in a way unlike any existing party or proposed intervenor.

## CONCLUSION

For the reasons stated, this Court should grant VPIRG's motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, should grant permissive intervention under Rule 24(b).[9]

---

[9] Should this Court determine intervention is not warranted, VPIRG respectfully requests permission to participate as a nonparty *amicus curiae*, including the opportunity to argue before the Court in any hearings. ECF No. 2.

December 30, 2025

Respectfully submitted,

*/s/ Anthony Iarrapino*
Anthony Iarrapino
Wilschek Iarrapino Law Office, PLLC
35 Elm St., Suite 200
Montpelier, VT 05602
Tel: (802)522-2802
anthony@ilovt.net

Brent Ferguson*
Daniel S. Lenz*
Sejal Jhaveri*
Renata O'Donnell*
Kate Hamilton*
Alexis Grady*
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
khamilton@campaignlegalcenter.org
agrady@campaignlegalcenter.org

Maura Eileen O'Connor *
Brennan Center for Justice
at NYU School of Law
777 6th St. NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew Garber*
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
Tel: (646) 292-8310
Fax: (212) 463-7308
garbera@brennan.law.nyu.edu

*Pro Hac Vice Applications Forthcoming*

Counsel for Proposed Intervenor-Defendant Vermont Public Interest Research Group

## CERTIFICATE OF SERVICE

I, Anthony Iarrapino, do hereby certify that on this 30th day of December, 2025, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities.

Date: December 30, 2025                                     Signature : /s/ *Anthony Iarrapino*