## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

<table>
<tr><td>

UNITED STATES OF AMERICA,
          Plaintiff,

          v.

SARAH COPELAND HANZAS, in her official
capacity as Secretary of State of the State of Vermont,

          Defendant.

</td><td>

Case No. 2:25-cv-00903

</td></tr>
</table>

### DEFENDANT'S RESPONSE IN OPPOSITION TO
### PLAINTIFF'S MOTION TO COMPEL PRODUCTION

The Court should deny the United States' motion to compel production. The United States' demand for a complete, unredacted copy of Vermont's entire voter registration database is procedurally improper, lacks any support in the statutes on which it purports to rely, and in any event violates Vermont privacy law.

### BACKGROUND

## I.    Legal Background

Congress passed the Civil Rights Act of 1960 ("CRA") to advance the constitutional rights of racial minorities by amending existing civil rights laws and granting the federal government new authorities to enforce civil rights. Relevant here, Title III of the CRA requires "[e]very officer of election," or a designated custodian, to "retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election" for federal office, "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Title III further provides that "[a]ny record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by" DOJ, "be made available for inspection,

reproduction, and copying [by DOJ] at the principal office of such custodian." *Id.* § 20703. The "demand shall contain a statement of the basis and the purpose therefor." *Id.* Finally, Title III grants the district courts "jurisdiction by appropriate process to compel the production of" voter registration materials. *Id.* § 20705.

Separately from the CRA and other statutes that protect the right to vote, Congress has enacted laws to ensure fair and accurate election administration. For instance, both the National Voter Registration Act of 1993 ("NVRA") and the Help America Vote Act of 2002 ("HAVA") require states to "make[] a reasonable effort to remove" ineligible from the voting rolls. 52 U.S.C. §§ 20607(a)(4) (imposing requirement under NVRA), 21083(a)(4)(A) (imposing same requirement under HAVA). Both the NVRA and HAVA also grant DOJ authority to bring enforcement actions against states that fail to comply with each statute's respective requirements. *See id.* §§ 20510(a) (authorizing DOJ to enforce NVRA), 21111 (authorizing DOJ to enforce HAVA). The NVRA further requires states to maintain and "make available for public inspection . . . all records" concerning their programs to ensure the voter rolls' accuracy. *Id.* § 20507(i). But unlike the CRA, neither the NVRA nor HAVA require states to make available or otherwise share with DOJ their full voter files.

## II.    Factual Background

On September 8, 2025, DOJ sent a letter to the Secretary demanding an unredacted electronic copy of Vermont's statewide voter registration list. Mot. to Compel Ex. 1 at 1 [ECF No. 2]. The United States requested each Vermont voter's "full name, date of birth, residential address," and the "state driver's license number or the last four digits of the registrant's social security number." *Id.* DOJ asked that the Secretary send the materials "by encrypted email" or "via the Department's secure file-sharing system," and gave the Secretary 14 days to comply. *Id.*

at 2. The letter purported to rely on DOJ's enforcement authority under the NVRA, HAVA, and the CRA, and stated that "the purpose of this request is to ascertain Vermont's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* at 2.

By letter dated September 22, 2025, the Secretary declined to provide the requested voter file. The Secretary explained that Vermont maintains its voter registration file in a computerized database as required by HAVA and otherwise is compliant with HAVA. Mot. to Compel Ex. 2 at 1–2. The Secretary noted her concern that the requested disclosure could violate Vermont or federal privacy law and sought assurances of compliance from DOJ, *see id.* at 2–4, and further noted that she did not understand the NVRA's inspection or enforcement provisions to authorize DOJ's request, *id.* at 3. Accordingly, the Secretary declined to provide the statewide voter database "without additional information demonstrating that the release of the information is consistent with Federal and State law." *Id.* at 4.

DOJ did not reply to the Secretary's letter. Instead, the United States initiated this lawsuit and, one day later, filed this Motion to Compel.

## DISCUSSION

**I.    The Federal Rules of Civil Procedure govern the United States' attempt to access Vermont's documents.**

As an initial matter, the Court should reject the United States' argument that the CRA effected an end-run around the Federal Rules of Civil Procedure.

Take the statute's plain text. *See Kapoor v. DeMarco*, 132 F.4th 595, 607 (2d Cir. 2025). Congress granted district courts "jurisdiction *by appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). In other words, Congress intended to incorporate by reference the proper procedures for production of records—the Federal Rules of Civil Procedure, which lays out the "appropriate process" for seeking production or a motion

to compel production in a civil case. *See* F.R.C.P. 37 (process for an order to compel disclosure), *see also* F.R.C.P. 81(a)(5) (stating that the federal civil rules apply to proceedings to compel the production of documents through a subpoena). Indeed, the Supreme Court has construed identical language in other statutes to mean that "the Federal Rules of Civil Procedure apply." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). And "when Congress uses the same language in two statutes. . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005). *See also* Mot. to Compel 12 n.3 (noting same).

Undeterred by the text, the United States argues that the CRA creates a "special statutory proceeding" that authorizes summary ex parte relief against the Secretary. Mot. to Compel 12 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). That cannot be. For one, as the United States acknowledges, this atextual argument is based entirely on caselaw "confined to courts within the Fifth Circuit in the early years following the CRA's enactment" more than 70 years ago. Mot. to Compel 5 n.1. Those out-of-circuit cases were never binding on this Court and are inconsistent with the Supreme Court's intervening decision construing identical statutory language. *See Powell,* 379 U.S. at 58 n.18 (construing identical language to mean that "the Federal Rules of Civil Procedure apply"). In any event, at no point does Title III mention a special statutory proceeding that would displace the Federal Rules of Civil Procedure. By contrast, contemporaneous civil rights statutes that *do* create "special statutory proceeding[s]" do so by outlining "procedures . . . specifically tailored" to enforcement actions under the statute. *Katzenbach v. McClung*, 379 U.S. 294, 296 (1964) (construing 42 U.S.C. § 2000a-5). And it is "particularly inappropriate" for courts to read in atextual provisions when "Congress has shown that it knows how to adopt the omitted language." *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019).

4

This Court therefore should reject the United States' attempt to create a special summary procedure out of whole cloth, and instead should adjudicate the United States' request according to the Federal Rules of Civil Procedure. As set forth in the Secretary's motion to dismiss, applying the Federal Rules, the Court should dismiss the Complaint for failure to state a claim. Or, if not, the Court should allow the matter to proceed with necessary discovery and summary judgment practice.[1]

## II.    The Civil Rights Act of the 1960 does not mandate the United States' requested disclosures.

Regardless of what procedures apply, and as discussed in more detail in the Secretary's Motion to Dismiss, the United States lacks a legal justification for its demand. Title III of the CRA requires any custodian of voter registration materials to make those materials "available for [DOJ's] inspection, reproduction, and copying at the principal office of such custodian." 52 U.S.C. § 20703. To trigger that requirement, DOJ must provide the custodian with "written demand" that "contain[s] a statement of the basis and the purpose therefor." *Id.* Section 20703 simply does not apply to the demand at issue here. The United States' demand fails each of these requirements: DOJ asked the Secretary for additional materials beyond voter registration materials, asked the Secretary to "provide" those documents electronically rather than for in-person inspection, and failed to state the basis and purpose for its demand.

### A.  The United States' demand exceeds Section 20703's limited scope.

The United States' demand fails on its face because it requests disclosures that exceed Title III's specific retention and disclosure obligations. The United States asked the Secretary to

---

[1] The "supplemental authority" provided by the United States from the District of Connecticut— an order setting a hearing—does not supports a contrary interpretation. *See* Notice (ECF No. 20). That court has not entered any decision regarding the appropriate process for judicial review of DOJ's demand. *See id.*

"provide a copy" of Vermont's entire statewide voter database. Mot. to Compel Ex. 1. For two reasons, the CRA does not authorize that request.

First, Title III requires election officials or custodians to retain and preserve for twenty-two months after an election only those materials that "relat[e] to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Instead of requesting materials related to voting in any particular election, the United States asked the Secretary to disclose "all fields" of Vermont's entire statewide voter database. Mot. to Compel Ex. 1 at 1. Because the United States' request was overly broad, the Secretary declined to provide the requested materials until the United States clarified the request and provided certain assurances. *See* Mot. to Compel Ex. 2 at 1, 4.

Second, Title III requires election officials or custodians only to make voter registration materials "available for [DOJ's] inspection, reproduction, and copying at the principal office of such custodian." 52 U.S.C. § 20703. Instead, DOJ asked the Secretary to "provide" an "electronic" copy of the Vermont's statewide voter database "by encrypted email" or "via the Department's secure file-sharing system." Mot. to Compel Ex. 1 at 2. Indeed, even now, the United States asks this Court to order that Vermont's voter database "be provided electronically." Mot. to Compel 13. That request is flatly inconsistent with Title III's text. For this reason alone, the Court should deny the United States' motion.

## B. The United States failed to state the basis and purpose for demanding Vermont's voter registration files.

The United States also failed to provide "a statement of the basis and the purpose" for its demand. 52 U.S.C. § 20703 (emphasis added). To be sure, DOJ's demand letter cites a list of authorities, including 52 U.S.C. § 20703, that provide a *legal* basis for requesting certain state

voter registration records. *See* Mot. to Compel Ex. 1 at 2. But DOJ did not provide a *factual* basis for the demand, nor did it state a valid purpose for a demand under the CRA.

Nothing in the United States' demand letter contains any indication that the United States suspects Vermont of violating the CRA or any other federal law, nor does the demand letter contain any explanation for why the requested documents might be relevant to the United States' inquiry. *See generally* Mot. to Compel Ex. 1. Because the United States has not provided any "reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights," it is not "entitled" to Vermont's voter registration materials. *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962).

The United States likewise failed to state a legally relevant purpose for its request. As the United States' own leading case makes clear, Section 20703 entitles DOJ to "inspect and copy" state voter registration records "in fulfillment of the duties imposed upon [DOJ] by the Civil Rights Act of 1957 and 1960." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). *See also Kennedy v. Bruce*, 298 F.2d 860, 863 n.2 (5th Cir. 1962) (noting that state's alleged failure to remove ineligible voters from rolls did "not bear any particular importance" to proceeding under Section 20703). So, a sufficient purpose under Section 20703 must be a purpose connected to the enforcement of the Civil Rights Acts of 1957 and 1960.

Instead, the United States' stated "purpose" is "to ascertain Vermont's compliance with the list maintenance requirements of the NVRA and HAVA." Mot. to Compel Ex. 1 at 2. But the NVRA and HAVA are separate statutes serving distinct aims from the CRA. The NVRA's purposes focus on increasing voter participation and ensuring election integrity and accuracy. 52 U.S.C.A. § 20501(b). HAVA's purpose similarly is to improve election administration. Help America Vote Act, Pub. L. No. 107-252, 116 Stat. 1666, 1666 (2002) (charactering HAVA as an

act to "establish a program to provide funds to States to replace punch card voting systems, to establish the Election Assistance Commission to assist in the administration of Federal elections and to otherwise provide assistance with the administration of certain Federal election laws and programs, to establish minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections, and for other purposes").

The CRA's purpose, meanwhile, is to "enforce constitutional rights." Civil Rights Act of 1960, Pub. L. No. 86-449, 74 Stat. 86, 86 (1960). President Eisenhower's signing statement further clarified that the CRA aimed to address "civil rights problems," in particular "that key constitutional right of every American, the right to vote without discrimination on account of race or color." Statement by the President Upon Signing the Civil Rights Act of 1960 (May 6, 1960). President Eisenhower specifically noted that Title III's provisions regarding the retention of voting records would be "of invaluable aid in the successful enforcement of existing voting rights statutes." *Id.*

The United States would have this Court hold that, in enacting Section 20703, Congress granted DOJ broad authority to demand state voter registration materials so long as DOJ has some purpose—any purpose—in mind. But Congress cannot have intended such an absurd result that would undermine the normal rules of civil discovery, state privacy laws, and fundamental principles of federalism. *See In re Nw. Airlines Corp.*, 483 F.3d 160, 169 (2d Cir. 2007). Nor could Congress have intended to grant such unbridled investigatory authority via a two-sentence provision aimed narrowly at preventing racial discrimination in voting. *See Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001) (noting that Congress does not "hide elephants

in mouseholes"). Because DOJ provided neither a sufficient basis nor a sufficient purpose for its demand, the Court should deny the United States' motion.

III.    **The Secretary correctly declined to provide the requested materials because Title III of the CRA does not preempt Vermont privacy law.**

The United States is not entitled to inspect an unredacted version of Vermont's voter database, which contains sensitive personal information protected under Vermont privacy law. The United States requested each Vermont voter's "full name, date of birth, residential address," and the "state driver's license number or the last four digits of the registrant's social security number." Mot. to Compel Ex. 1 at 1.

Vermont, like most states, prohibits disclosure of sensitive information contained in voter registration records, including SSNs, DLNs, and contact information of confidential voters. *See* 1 V.S.A. § 317(c)(31) (exempting this information from disclosure under Vermont's public records laws); 17 V.S.A. § 2154(b). Indeed, Vermont specifically forbids government officials from disclosing "a copy of all of the statewide voter checklist, a municipality's portion of the statewide voter checklist, or any other municipal voter checklist to any . . . federal agency or commission or to a person acting on behalf of . . . such a federal entity for the purpose of . . . comparing a voter's information maintained in the checklist to personally identifying information contained in other federal or state databases." *Id.* § 2154(b)(2).

No federal statute preempts Vermont's voter privacy protections. Congress' authority to regulate the time, place, and manner of federal elections preempts "inconsistent" state regulations "so far as [that authority] is exercised, and no farther." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) (citation modified). The "straightforward textual question" is whether Vermont's privacy laws "conflict[] with" any requirement of federal law.

*Id.*[2] And no such conflict exists. For instance, Vermont's prohibition on sharing voter registration materials for purpose of comparing that information with another federal or state database, 17 V.S.A. § 2154(b)(2)(C), can easily be squared with Title III's requirement that state election officials share voter registration information "in fulfillment of the duties imposed upon [DOJ] by the Civil Rights Act of 1957 and 1960," *Kennedy*, 306 F.2d at 228. Similarly, nothing in Title III's requirement that election officials "retain and preserve" voter registration materials, 52 U.S.C. § 20701, prohibits states from taking precautions to protect their citizens such as redacting certain personally identifying information. Nor, for that matter, do Vermont's protections for information in the state's own voter database, *see* 17 V.S.A. § 2154(b)(2), even implicate Title III's regulations concerning *voter-generated* application and registration materials that "come into [the state's] possession," 52 U.S.C. § 20701.

Because Vermont's privacy laws are not preempted and instead apply to the United States' requested disclosures, the Secretary correctly declined to share Vermont's voter database with the United States absent adequate assurances for voter privacy.

---

[2] As DOJ notes, the standard presumption against preemption "does not hold" when Congress legislates under the Elections Clause. *Arizona*, 570 U.S. at 14. But the only federal statute properly at issue here—the Civil Rights Act of 1960—was enacted pursuant to Congress' remedial authority under the Fifteenth Amendment, not its authority under the Elections Clause. *See State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853–54 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U. S.*, 285 F.2d 430 (5th Cir. 1961) (citing *Hannah v. Larche*, 363 U.S. 420 (1960)). Regardless, even the Elections Clause preemption inquiry ultimately turns on whether "the statutory text" indicates that Congress intended to preempt the state law at issue. *Arizona*, 570 U.S. at 14. Here, the text offers no indication that Congress intended to vitiate states' voter privacy protections.

**CONCLUSION**

The Court should deny the United States' motion.


DATED January 15, 2026                    Respectfully submitted,

                                          STATE OF VERMONT

                                          CHARITY R. CLARK
                                          ATTORNEY GENERAL

                           By:     */s/ Ryan P. Kane*
                                   RYAN P. KANE
                                   *Deputy Solicitor General*
                                   SAMUEL B. STRATTON
                                   *Assistant Attorney General*
                                   Office of the Attorney General
                                   109 State Street
                                   Montpelier, VT 05609-1001
                                   (802) 828-3186
                                   ryan.kane@vermont.gov
                                   sam.stratton@vermont.gov