UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>      Plaintiff,<br><br>   v.<br><br>SARAH COPELAND HANZAS, in her official capacity as Secretary of State of the State of Vermont,<br><br>      Defendant. | Case No. 2:25-cv-00903 |

### DEFENDANT'S MOTION TO DISMISS

In its Complaint, the United States demands a complete, unredacted copy of Vermont's entire voter registration database pursuant to its authority under the Civil Rights Act of 1960 ("CRA"). The CRA does not provide a legal basis for this request. Further, Vermont law expressly prohibits Vermont from complying with this request. Defendant Sarah Copeland Hanzas, moves this Court to dismiss the United States' Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### BACKGROUND

I.  **Legal Background**

Congress passed the Civil Rights Act of 1960 ("CRA") to advance the constitutional rights of racial minorities by amending existing civil rights laws and granting the federal government new authorities to enforce civil rights. Relevant here, Title III of the CRA requires "[e]very officer of election," or a designated custodian, to "retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election" for federal office, "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Title III

further provides that "[a]ny record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by" DOJ, "be made available for inspection, reproduction, and copying [by DOJ] at the principal office of such custodian." *Id.* § 20703. The "demand shall contain a statement of the basis and the purpose therefor." *Id.* Finally, Title III grants the district courts "jurisdiction by appropriate process to compel the production of" voter registration materials. *Id.* § 20705.

Separately from the CRA and other statutes that protect the right to vote, Congress has enacted laws to ensure fair and accurate election administration. For instance, both the National Voter Registration Act of 1993 ("NVRA") and the Help America Vote Act of 2002 ("HAVA") require states to "make[] a reasonable effort to remove" ineligible from the voting rolls. 52 U.S.C. §§ 20607(a)(4) (imposing requirement under NVRA), 21083(a)(4)(A) (imposing same requirement under HAVA). Both the NVRA and HAVA also grant DOJ authority to bring enforcement actions against states that fail to comply with each statute's respective requirements. *See id.* §§ 20510(a) (authorizing DOJ to enforce NVRA), 21111 (authorizing DOJ to enforce HAVA). The NVRA further requires states to maintain and "make available for public inspection . . . all records" concerning their programs to ensure the voter rolls' accuracy. *Id.* § 20507(i). But unlike the CRA, neither the NVRA nor HAVA require states to make available or otherwise share with DOJ their full voter files.

**II.     Factual Background**

On September 8, 2025, DOJ sent a letter to the Secretary demanding an unredacted electronic copy of Vermont's statewide voter registration list. Compl. ¶ 18 [ECF No. 1]; Mot. to Compel [ECF No. 2], Ex. 1 at 1. The United States requested each Vermont voter's "full name, date of birth, residential address," and the "state driver's license number or the last four digits of

the registrant's social security number." *Id.* DOJ gave the Secretary 14 days to comply. Mot. to Compel Ex. 1 at 2. The letter purported to rely on DOJ's enforcement authority under the NVRA, HAVA, and the CRA, and stated that "the purpose of this request is to ascertain Vermont's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.*

By letter dated September 22, 2025, the Secretary declined to provide the requested voter file. The Secretary explained that Vermont maintains its voter registration file in a computerized database as required by HAVA and otherwise is compliant with HAVA. Mot. to Compel Ex. 2 at 1–2. The Secretary noted her concern that the requested disclosure could violate Vermont or federal privacy law and sought assurances of compliance from DOJ, *see id.* at 2–4, and further noted that she did not understand the NVRA's inspection or enforcement provisions to authorize DOJ's request, *id.* at 3. Accordingly, the Secretary declined to provide the statewide voter database "without additional information demonstrating that the release of the information is consistent with Federal and State law." *Id.* at 4.

DOJ did not reply to the Secretary's letter. Instead, the United States initiated this lawsuit.

## ARGUMENT

To survive a motion to dismiss for failure to state a claim, "a complaint must allege sufficient facts to state a plausible claim." *Salazar v. Century Arms, Inc.*, 794 F. Supp. 3d 241, 252 (D. Vt. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009)). That is, the facts alleged must be sufficient to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Whether a complaint meets this standard is evaluated using a "two-pronged approach." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (citation modified). The court first discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.*

Because the facts alleged fail to establish the United States' entitlement to the requested voter data, the Court should dismiss the Complaint.

I.  **The Civil Rights Act of the 1960 does not mandate the United States' requested disclosures.**

The sole Count in the Complaint is brought pursuant to the Civil Rights Act of 1960. Compl. ¶¶ 27–29. Title III of the CRA requires any custodian of voter registration materials to make those materials "available for [DOJ's] inspection, reproduction, and copying at the principal office of such custodian." 52 U.S.C. § 20703. To trigger that requirement, DOJ must provide the custodian with a "written demand" that "contain[s] a statement of the basis and the purpose therefor." *Id.* The United States' demand fails each of Section 20703's requirements: DOJ asked the Secretary for additional materials beyond voter registration materials, asked the Secretary to "provide" those documents electronically rather than for in-person inspection, and failed to state the basis and purpose for its demand.

A.  **The United States' demand exceeds Section 20703's limited scope.**

The United States' demand fails on its face because it requests disclosures that exceed Title III's specific retention and disclosure obligations. The United States asked the Secretary to

"provide a copy" of Vermont's entire statewide voter database. Mot. to Compel Ex. 1. For two reasons, the CRA does not authorize that request.

First, Title III requires election officials or custodians to retain and preserve for twenty-two months after an election only those materials that "relat[e] to any application, registration, payment of poll tax, or other act requisite to voting *in such election*." 52 U.S.C. § 20701 (emphasis added). Instead of requesting materials related to voting in any particular election, the United States asked the Secretary to disclose "all fields" of Vermont's entire statewide voter database. Compl. ¶ 20; Mot. to Compel Ex. 1 at 1. Because the United States' request was overly broad, the Secretary declined to provide the requested materials until the United States clarified the request and provided certain assurances. *See* Mot. to Compel Ex. 2 at 1, 4; *see also* Compl. ¶¶ 25–26.

Second, Title III requires election officials or custodians only to make voter registration materials "available for [DOJ's] inspection, reproduction, and copying at the principal office of such custodian." 52 U.S.C. § 20703. Instead, DOJ asked the Secretary to "provide" an "electronic" copy of the Vermont's statewide voter database "by encrypted email" or "via the Department's secure file-sharing system." Compl. ¶ 19; Mot. to Compel Ex. 1 at 2. Indeed, even now, the United States asks this Court to order that Vermont's voter database "be provided electronically." Compl. 8; Mot. to Compel 13. That request is flatly inconsistent with Title III's text. For this reason alone, the Court should dismiss the Complaint.

**B.   The United States failed to state the basis and purpose for demanding Vermont's voter registration files.**

The United States also failed to provide "a statement of the basis and the purpose" for its demand. 52 U.S.C. § 20703. Title III requires a statement of "*the* basis and *the* purpose" for the demand, not merely *a* basis and *a* purpose. 52 U.S.C. § 20703 (emphasis added). By twice

5

using the definite article, Title III requires the Attorney General to offer "a discrete thing": the complete basis and purpose of the request and not merely one basis and purpose among many. *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between definite and indefinite article). This requirement is essential to striking the balance between a federal officials' legitimate need for information with state election administrators who are required to safeguard voters' sensitive personal information. *See* 52 U.S.C. § 20703; *see also CFPB v. Accrediting Council for Independent Colleges & Secondary Schs.* (*ACICS*), 854 F.3d 683, 690 (D.C. Cir. 2017) (emphasizing that the validity of a civil investigative demand "is measured by the stated purpose," making notification of purpose "an important statutory requirement"). Without a complete statement of the basis and the purpose of the demand, state officials and reviewing courts "cannot accurately determine whether the inquiry is within the authority of [DOJ] and whether the information sought is reasonably relevant." *ACICS*, 854 F.3d at 691; *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) (indicating that Title III requests cannot be "used without restraint").

DOJ's September 8 letter cites a list of authorities, including 52 U.S.C. § 20703, that provide a possible *legal* basis for requesting *certain* state voter registration records. *See* Mot. to Compel Ex. 1 at 2. But DOJ did not provide the *factual* basis for the demand, nor did it state a valid purpose for a demand under the CRA.

Nothing in the United States' demand letter contains any indication that the United States suspects Vermont of violating the CRA or any other federal law, nor does the demand letter contain any explanation for why the requested documents might be relevant to the United States' inquiry. *See generally* Mot. to Compel Ex. 1. Because the United States has not provided any

"reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights," it is not "entitled" to Vermont's voter registration materials pursuant to the CRA. *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962).[1]

The United States likewise failed to state a legally relevant purpose for its request. As the United States' own leading case makes clear, Section 20703 entitles DOJ to "inspect and copy" state voter registration records "in fulfillment of the duties imposed upon [DOJ] by the Civil Rights Act of 1957 and 1960." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962); *see also Kennedy v. Bruce*, 298 F.2d 860, 863 n.2 (5th Cir. 1962) (noting that state's alleged failure to remove ineligible voters from rolls did "not bear any particular importance" to proceeding under Section 20703). So, a sufficient purpose under Section 20703 must be a purpose connected to the enforcement of the Civil Rights Acts of 1957 and 1960.

Instead, the United States' stated "purpose" is "to ascertain Vermont's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 20; Mot. to Compel Ex. 1

---

[1] The lack of any Vermont-specific factual predicate under the CRA is also demonstrated by the United States suing 23 other states requesting the same information. *See* U.S. Dep't of Justice, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://www.justice.gov/opa/pr/justice-department-sues-oregon-and-maine-failure-provide-voter-registration-rolls; U.S. Dep't of Justice, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://www.justice.gov/opa/pr/justice-department-sues-six-states-failure-provide-voter-registration-rolls; U.S. Dep't of Justice, *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 3, 2025), https://www.justice.gov/opa/pr/justice-department-sues-six-additional-states-failure-provide-voter-registration-rolls; U.S. Dep't of Justice, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://www.justice.gov/opa/pr/justice-department-sues-four-additional-states-and-one-locality-failure-comply-federal; U.S. Dep't of Justice, *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://www.justice.gov/opa/pr/justice-department-sues-four-states-failure-produce-voter-rolls; U.S. Dep't of Justice, *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026), https://www.justice.gov/opa/pr/justice-department-sues-arizona-and-connecticut-failure-produce-voter-rolls.

at 2. But the NVRA and HAVA are separate statutes serving distinct aims from the CRA. The NVRA's purposes focus on increasing voter participation and ensuring election integrity and accuracy. 52 U.S.C.A. § 20501(b). HAVA's purpose similarly is to improve election administration. Help America Vote Act, Pub. L. No. 107-252, 116 Stat. 1666, 1666 (2002) (charactering HAVA as an act to "establish a program to provide funds to States to replace punch card voting systems, to establish the Election Assistance Commission to assist in the administration of Federal elections and to otherwise provide assistance with the administration of certain Federal election laws and programs, to establish minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections, and for other purposes"). Further, the NVRA and HAVA each have their own enforcement provisions which can provide DOJ access to some voter information but do not justify the broad request at issue here. *See* 52 U.S.C.A. §§ 20510(a) (authorizing DOJ to enforce NVRA), 21111 (authorizing DOJ to enforce HAVA). The NVRA further requires states to maintain and "make available for public inspection . . . all records" concerning their programs to ensure the voter rolls' accuracy. *Id.* § 20507(i). But, neither the NVRA nor HAVA require states to make available or otherwise share with DOJ their full unredacted voter files. *See Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (making clear that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" otherwise-disclosable voter rolls).

HAVA contains no provisions under which a person may request voter records. The decision not to include such a provision in HAVA was intentional given that the NVRA existed when Congress passed HAVA and HAVA incorporates other provisions of the NVRA but none related to disclosure. *See Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019) (recognizing

that HAVA's invocation of the NVRA demonstrates that "Congress knew how to reference the NVRA"); *see also* 52 U.S.C. § 21083(a)(2). Despite DOJ's referencing the NVRA and HAVA in the demand letter, neither act provides for the disclosure sought here.

Thus, the sole count in the Complaint rests on the CRA. The CRA's purpose, meanwhile, is to "enforce constitutional rights." Civil Rights Act of 1960, Pub. L. No. 86-449, 74 Stat. 86, 86 (1960). President Eisenhower's signing statement further clarified that the CRA aimed to address "civil rights problems," in particular "that key constitutional right of every American, the right to vote without discrimination on account of race or color." Statement by the President Upon Signing the Civil Rights Act of 1960 (May 6, 1960). President Eisenhower specifically noted that Title III's provisions regarding the retention of voting records would be "of invaluable aid in the successful enforcement of existing voting rights statutes." *Id.*

The United States would have this Court hold that, in enacting Section 20703, Congress granted DOJ broad authority to demand state voter registration materials so long as DOJ has some purpose—any purpose—in mind. But Congress cannot have intended such an absurd result that would undermine the normal rules of civil discovery, state privacy laws, and fundamental principles of federalism. *See In re Nw. Airlines Corp.*, 483 F.3d 160, 169 (2d Cir. 2007). Nor could Congress have intended to grant such unbridled investigatory authority via a two-sentence provision aimed narrowly at preventing racial discrimination in voting. *See Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001) (noting that Congress does not "hide elephants in mouseholes"). Because DOJ provided neither a sufficient basis nor a sufficient purpose for its demand, the Court should deny the United States' motion.

II. **The Secretary correctly declined to provide the requested materials because Title III of the CRA does not preempt Vermont privacy law.**

The United States is not entitled to inspect an unredacted version of Vermont's voter database, which contains sensitive personal information protected under Vermont privacy law. The United States requested each Vermont voter's "full name, date of birth, residential address," and the "state driver's license number or the last four digits of the registrant's social security number." Compl. ¶ 20; Mot. to Compel Ex. 1 at 1.

Vermont, like most states, prohibits disclosure of sensitive information contained in voter registration records, including SSNs, DLNs, and contact information of confidential voters. *See* 1 V.S.A. § 317(c)(31) (exempting this information from disclosure under Vermont's public records law); 17 V.S.A. § 2154(b). Indeed, Vermont specifically forbids government officials from disclosing "a copy of all of the statewide voter checklist, a municipality's portion of the statewide voter checklist, or any other municipal voter checklist to any . . . federal agency or commission or to a person acting on behalf of . . . such a federal entity for the purpose of . . . comparing a voter's information maintained in the checklist to personally identifying information contained in other federal or state databases." *Id.* § 2154(b)(2).

No federal statute preempts Vermont's voter privacy protections. Congress' authority to regulate the time, place, and manner of federal elections preempts "inconsistent" state regulations "so far as [that authority] is exercised, and no farther." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) (citation modified). The "straightforward textual question" is whether Vermont's privacy laws "conflict[] with" any requirement of federal law. *Id.*[2] And no such conflict exists. For instance, Vermont's prohibition on sharing voter registration

---

[2] As DOJ notes, the standard presumption against preemption "does not hold" when Congress legislates under the Elections Clause. *Arizona*, 570 U.S. at 14. But the only federal statute properly at issue here—the Civil Rights Act of 1960—was enacted pursuant to Congress'

10

materials for purpose of comparing that information with another federal or state database, 17 V.S.A. § 2154(b)(2)(C), can easily be squared with Title III's requirement that state election officials share voter registration information "in fulfillment of the duties imposed upon [DOJ] by the Civil Rights Act of 1957 and 1960," *Kennedy*, 306 F.2d at 228. Similarly, nothing in Title III's requirement that election officials "retain and preserve" voter registration materials, 52 U.S.C. § 20701, prohibits states from taking precautions to protect their citizens such as redacting certain personally identifying information. Nor, for that matter, do Vermont's protections for information in the state's own voter database, *see* 17 V.S.A. § 2154(b)(2), even implicate Title III's regulations concerning *voter-generated* application and registration materials that "come into [the state's] possession," 52 U.S.C. § 20701.

Because Vermont's privacy laws are not preempted and apply to the United States' requested disclosures, the Secretary lawfully declined to share Vermont's voter database with the United States.

### III. The United States' Demand Violates the Privacy Act of 1974.

Even if the CRA were a legitimate basis for the DOJ's demand, the Complaint should also be dismissed because the allegations in the Complaint establish that DOJ has failed to comply with the Privacy Act. The Court can consider this affirmative defense because the Complaint itself definitively establishes the defense. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to

---

remedial authority under the Fifteenth Amendment, not its authority under the Elections Clause. *See State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853–54 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U. S.*, 285 F.2d 430 (5th Cir. 1961) (citing *Hannah v. Larche*, 363 U.S. 420 (1960)). Regardless, even the Elections Clause preemption inquiry ultimately turns on whether "the statutory text" indicates that Congress intended to preempt the state law at issue. *Arizona*, 570 U.S. at 14. Here, the text offers no indication that Congress intended to vitiate states' voter privacy protections.

dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." (citation omitted)).

The Privacy Act forbids federal agencies from maintaining any "record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). This prohibition reflects "Congress' own special concern for the protection of First Amendment rights." *Albright v. United States*, 631 F.2d 915, 919 (D.C. Cir. 1980).

The Act defines a "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual . . . ." 5 U.S.C.A. § 552a(a)(4). Vermont's statewide voter database contains each voter's name as well as other "identifying particular[s]" about that voter, including their address, date of birth, and driver's license or partial social security numbers. 17 V.S.A. § 2154. Vermont's voter registration database includes information protected by the First Amendment. It indicates which citizens have chosen to register to vote, a choice that "implicates political thought and expression." *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999). And it shows which Vermonters chose to vote in which elections, an act in which voters "express their political preferences*." Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979); *see also Turner v. D.C. Bd. of Elections & Ethics*, 77 F. Supp. 2d 25, 31 (D.D.C. 1999) ("When a citizen steps into the voting booth to cast a vote on a matter properly on the ballot, he or she intends to send a message in support of or in opposition to the candidate or ballot measure at issue"). Because Vermont's voter

database implicates First Amendment rights, the Privacy Act bars the United States' demand absent express statutory authorization.

No express statutory authorization exists. As discussed above, the CRA, the NVRA, and HAVA provide no authorization for DOJ to demand Vermont's unredacted statewide voter database information and certainly not the express authorization required by the Privacy Act.

For records federal agencies are not prohibited from maintaining, the Privacy Act requires federal agencies to publish public notices, called Systems of Records Notices (SORNs), with nine categories of information describing each "system of records" held by the agency that contains records about individual Americans. 5 U.S.C.A. § 552a(e)(4). The SORN must include categories of records maintained, categories of individuals contained in the records, expected "routine uses" of the records, categories of users, and policies governing access, storage, disposal. *Id*. The agency must provide notice in the Federal Register 30 days before "any new use or intended use of the information in the system" and allow the public to submit comments on the proposed use. *Id*. § 552a(e)(11). Notice must also be provided to the Office of Management and Budget and Congress. *Id*. § 552a(r). In its Complaint, the United States acknowledges that it is bound by the Privacy Act and points to existing SORNs, principally the "Central Civil Rights Division Index File and Associated Records" SORN, as amended, which it claims satisfy its Privacy Act obligations. Compl. ¶¶ 22–23 (citing 68 Fed. Reg. 47610–01 (Aug. 11, 2003).

The SORN found at 68 Fed. Reg. 47610-01 states that it applies to "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." 68 Fed. Reg. at 47611.Since the United States does not say in the Complaint what it intends to do with Vermont's statewide voter database, a

13

there is no factual allegations to plausibly establish that the demand falls within any "routine uses" covered by this SORN related to the duties of the Civil Rights Division.

The 2003 SORN is also insufficient in other respects. First, the Privacy Act requires the SORN to identify "the categories of individuals on whom records are maintained in the system." 5 U.S.C.A. § 552a(e)(4)(B).  Yet the 2003 SORN lists only narrow categories of individuals, such as "subjects of investigations," "victims," and "potential witnesses." 68 Fed. Reg. 47610–01 at 47611.  None of the categories cited in the SORN can plausibly be read to include all of Vermont's registered voters. Second, the SORN must include "the categories of records maintained in the system." See 5 U.S.C.A. § 552a(e)(4)(C). Yet, again, the SORN lists the sort of unremarkable records one would expect in DOJ's files, such as "case files," "memoranda," and "reports." Fed. Reg. 47610–01 at 47611.  No reasonable reader of the 2003 SORN would come away with the impression that DOJ's files will contain complete and unredacted state voter registration databases including millions of registered voters sensitive information.

Finally, the Privacy Act requires that the SORN identify "the categories of sources of records in the system." 5 U.S.C.A. § 552a(e)(4)(I).  The 2003 SORN refers only to "an agency or person who has or offers information related to the law enforcement responsibilities and/or other statutorily-mandated duties of CRT." Fed. Reg. 47610–01 at 47611. This description does not alert a reasonable reader that the involuntary collection of entire state voter registration databases is a source of DOJ records.

The other two SORNs cited by the United States fare no better. The 2005 SORN at 70 Fed. Reg. 43904-01 simply adds a new routine use of records maintained under the 2003 SORN for disclosing information related to closed investigations of public concern. The 2018 SORN at 82 Fed. Reg. 24147-01 modified all US DOJ SORNs related to responses to a breach of

personally identifying information. 82 Fed. Reg. 24147. Neither of these amendments remedy the fact that the 2003 SORN is facially insufficient to meet the requirements of the Privacy Act for DOJ's request of Vermont's unredacted statewide voter database.

DOJ is required to publish a new SORN whenever there is a "revision" to its system of records.  5 U.S.C.A. § 552a(e)(4).  The Office of Management and Budget interprets this provision to require a revised SORN if there is "[a] substantial increase in the number, type, or category of individuals about whom records are maintained in the system" or "[a] change that expands the types or categories of records maintained in the system." OMB Circular A-108, Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act, at 5, www.whitehouse.gov/wp-content/uploads/legacy_drupal_files/omb/circulars/A108/omb_circular_a-108.pd. The United States' attempt to collect sensitive information on *every* registered Vermont voter, as well as information on voters First Amendment–protected activities, easily satisfies these standards. The Court should therefore conclude that DOJ's demand is invalid under the Privacy Act.

## IV. The United States' Demand also violated the E-Government Act.

The Court should also dismiss the Complaint for failure to comply with the E-Government Act, Pub. L. No. 107–347, § 208, 116 Stat. 2899 (2002). The E-Government Act requires federal agencies to conduct a "privacy impact assessment" before "initiating a new collection of information" that "includes any information in an identifiable form permitting the physical or online contacting of a specific individual" if the information encompasses "10 or more persons." *Id*. § 208(b). The privacy impact assessment and its procedural requirements must be completed "before the agency initiates a new collection of information." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C.

2017) (emphasis in original). The information contained in Vermont's statewide voter database includes personal information protected by the E-Government Act, triggering the requirement for a privacy impact assessment. The Complaint does not address this requirement and certainly does not allege that the United States completed privacy impact assessment applicable to Vermont voters. Thus, because the Complaint itself establishes the requirement for a privacy impact assessment and fails to allege that any assessment has been completed, this Court should dismiss the Complaint for failure to comply with the E-Government Act.

## CONCLUSION

The Court should dismiss the Complaint for failure to state a claim.

DATED January 15, 2026

Respectfully submitted,

STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

By:   /s/ Ryan P. Kane
RYAN P. KANE
*Deputy Solicitor General*
SAMUEL B. STRATTON
*Assistant Attorney General*
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-3186
ryan.kane@vermont.gov
sam.stratton@vermont.gov

16