**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF VERMONT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br> *v.*<br><br>SARAH COPELAND HANZAS, in her official capacity as Secretary of State of Vermont,<br><br>    *Defendant.* | Case No. 2:25-cv-00903 |

**PROPOSED MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY PROPOSED INTERVENOR-DEFENDANTS VERMONT ALLIANCE FOR RETIRED AMERICANS, RICHARD MONTEROSSO, AND MARY ANDREWS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

I.  Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers. ................................................................. 2

II.  The Department of Justice has embarked on an unprecedented campaign to amass personal voter registration data held by the States.............................................................. 3

III.  The Department of Justice sues Secretary Copeland Hanzas to obtain Vermont's voter registration list. ................................................................................................ 6

LEGAL STANDARD........................................................................................................... 7

ARGUMENT ...................................................................................................................... 7

I.  DOJ did not state an adequate, truthful basis and purpose for the demand as Title III requires.................................................................................................................. 8

II.  Title III does not prohibit redacting sensitive voter information..................................... 14

III.  DOJ has failed to comply with the Privacy Act, which independently requires dismissal................................................................................................................. 18

CONCLUSION ................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ag-Innovations, Inc. v. U.S. Dep't of Agric.*,
No. 1:02-CV-332, 2005 WL 8154700 (D. Vt. Mar. 10, 2005) ........................................ 7, 8

*Alabama ex rel. Gallion v. Rogers*,
187 F. Supp. 848 (M.D. Ala. 1960) ............................................................................... 10

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) ................................................................................................ 3, 16, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 7

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
854 F.3d 683 (D.C. Cir. 2017) ........................................................................................ 8

*CFPB v. Source for Pub. Data, L.P.*,
903 F.3d 456 (5th Cir. 2018) ........................................................................................ 12

*Comm. to Stop Airport Expansion v. FAA*,
320 F.3d 285 (2d Cir. 2003) .......................................................................................... 12

*Foster v. Love*,
522 U.S. 67 (1997) .......................................................................................................... 2

*Home Depot U.S.A., Inc. v. Jackson*,
587 U.S. 435 (2019) ........................................................................................................ 9

*Husted v. A. Philip Randolph Inst.*,
584 U.S. 756 (2018) ........................................................................................................ 3

*In re Admin. Subpoena No. 25-1431-019*,
800 F. Supp. 3d 229 (D. Mass. 2025) ........................................................................... 10

*In re Coleman*,
208 F. Supp. 199 (S.D. Miss. 1962) .......................................................................... 8, 11

*In re Subpoena No. 25-1431-014*,
No. MC 25-39, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ........................................ 10

*Kennedy v. Bruce*,
298 F.2d 860 (5th Cir. 1962) ...................................................................................... 8, 9

*Kennedy v. Lynd*,
  306 F.2d 222 (5th Cir. 1962) ..................................................................... *passim*

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
  No. 25-cv-3501, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) ............................ 18, 19, 21

*Project Vote, Inc. v. Kemp*,
  208 F. Supp. 3d 1320 (N.D. Ga. 2016) ................................................................. 15

*Project Vote/Voting for Am., Inc. v. Long*,
  682 F.3d 331 (4th Cir. 2012) .............................................................................. 15

*Project Vote/Voting For Am., Inc. v. Long*,
  752 F. Supp. 2d 697 (E.D. Va. 2010) .................................................................. 15

*Pub. Int. Legal Found. v. N.C. State Bd. of Elections*,
  996 F.3d 257 (4th Cir. 2021) .............................................................................. 15

*Pub. Int. Legal Found., Inc. v. Bellows*,
  92 F.4th 36 (1st Cir. 2024) ................................................................ 1, 14, 15, 17

*Pub. Int. Legal Found., Inc. v. Matthews*,
  589 F. Supp. 3d 932 (C.D. Ill. 2022) .................................................................. 15

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
  120 F.4th 390 (4th Cir. 2024) .............................................................................. 3

*True the Vote v. Hosemann*,
  43 F. Supp. 3d 693 (S.D. Miss. 2014) ................................................................. 15

*United States v. Weber*,
  No. 2:25-cv-09149-DOC-ADS, slip op. (C.D. Cal. Jan. 15, 2026) ........................ *passim*

*Util. Air Regul. Grp. v. EPA*,
  573 U.S. 302 (2014) ............................................................................................. 9

*Voter Reference Found., LLC v. Torrez*,
  160 F.4th 1068 (10th Cir. 2025) ................................................................ 14, 16, 17

*Watson Lab'ys, Inc. v. Forest Lab'ys, Inc.*,
  101 F.4th 223 (2d Cir. 2024) ............................................................................... 7

*Watt v. W. Nuclear, Inc.*,
  462 U.S. 36 (1983) ............................................................................................. 16

*Whiteside v. Hover-Davis, Inc.*,
    995 F.3d 315 (2d Cir. 2021)................................................................. 22

**Constitutional Provisions and Statutes**

U.S. Const. art. I, § 4, cl. 1 ............................................................................. 2, 3

5 U.S.C. § 552a ........................................................................... 16, 18, 19, 21

18 U.S.C. § 2721 ............................................................................................... 16

52 U.S.C. § 20507 ............................................................................. 3, 12, 13, 16

52 U.S.C. § 20703 ................................................................................... 1, 8, 12

52 U.S.C. § 21083 ....................................................................................... 3, 16, 17

52 U.S.C. § 21085 ............................................................................................. 12

1 V.S.A. § 317 .................................................................................................. 14

17 V.S.A. § 2154 ....................................................................................... *passim*

**Regulations and Rules**

68 Fed. Reg. 47610-01 (Aug. 11, 2003) ....................................................... 20

70 Fed. Reg. 43904-01 (July 29, 2005) ......................................................... 21

82 Fed. Reg. 24147-01 (May 25, 2017) ......................................................... 21

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 7

**Other Authorities**

AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET),
    https://x.com/AAGDhillon/status/2001659823335616795 ................................. 4

Br. of Amici Curiae Maryland et al. in Supp. of Mot. to Dismiss, *United States v. Bd.*
    *of Elections of N.Y.*, No. 1:25-CV-01338-MAD (N.D.N.Y. Jan. 6, 2026), ECF
    No. 79-1 .............................................................................................. 4

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build*
    *National Voter Roll*, N.Y. Times (Sep. 9, 2025),
    https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-
    data.html.............................................................................................. 4

H.R. Rep. No. 86-956 (1959) ................................................................................ 7, 9, 10

H.R. Rep. No. 107-329 (2001) .................................................................................... 2

Jaime Adame, *In 'tentative' ruling, judge denies federal access to Oregon voter data*,
LookOut Eugene-Springfield (Jan. 14, 2026), https://perma.cc/P2T7-4DC8 ................... 2

*Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls*,
U.S. Dep't of Just. (Jan. 6, 2026), https://perma.cc/PCE6-DHYA ..................................... 6

*Justice Department Sues Four Additional States and One Locality for Failure to
Comply with Federal Elections Laws*, U.S. Dep't of Just. (Dec. 12, 2025),
https://perma.cc/Y8VL-QBDP ......................................................................................... 6

*Justice Department Sues Four States for Failure to Produce Voter Rolls*, U.S. Dep't
of Just. (Dec. 18, 2025), https://perma.cc/7WMZ-FSQR .................................................. 6

*Justice Department Sues Oregon and Maine for Failure to Provide Voter
Registration Rolls*, U.S. Dep't of Just. (Sept. 16, 2025),
https://perma.cc/9HZQ-CFCG ......................................................................................... 6

*Justice Department Sues Six Additional States for Failure to Provide Voter
Registration Rolls*, U.S. Dep't of Just. (Dec. 2, 2025), https://perma.cc/SCJ6-
7GW4 ............................................................................................................................... 6

*Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*,
U.S. Dep't of Just. (Sept. 25, 2025), https://perma.cc/J2Z3-C4NY .................................. 6

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice
Department Requests for Voter Information*, Brennan Ctr. for Just. (Jan. 9,
2025), https://perma.cc/MV9B-QKHJ ............................................................................. 4

*The National Voter Registration Act of 1993 (NVRA)*, U.S. Dep't of Justice,
https://perma.cc/4Q33-DH8X (updated Nov. 1, 2024) (last accessed Jan. 15,
2026) ............................................................................................................................... 12

# INTRODUCTION

The United States Department of Justice ("DOJ") seeks to build a nationwide voter registration list, a scheme not authorized by Congress and contrary to federal laws assigning States the responsibility for overseeing voter registration. To build this unauthorized and unprecedented federal list, DOJ has demanded that Vermont—along with at least forty other States—turn over its full, unredacted voter list, even though it has no actual authority to make such a demand and despite the fact that Vermont law protects sensitive voter information like driver's license numbers, partial social security numbers, and dates of birth from disclosure. *See* 17 V.S.A. § 2154(b). Vermont law explicitly prohibits sharing the statewide voter registration list with "a federal agency . . . for the purpose of . . . comparing a voter's information maintained in the checklist to personally identifying information contained in other federal or state databases." *Id.* § 2154(b)(2)(C).

Nothing in federal law authorizes the relief that DOJ seeks. DOJ relies solely on Title III of the Civil Rights Act of 1960 ("CRA"), but demands under that statute must state "the basis and the purpose" for which they are issued, and that basis and purpose must be legally valid. 52 U.S.C § 20703. DOJ's demand fails that test. DOJ claims to be investigating compliance with the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"), but the CRA is concerned with protecting the constitutional right to vote—not with enforcing election administration rules—and DOJ's demands and actions in other States make clear that DOJ's true purpose is not assessing NVRA or HAVA enforcement in any event. Moreover, even if there were a valid demand, neither the CRA nor any other provision of federal law preempts Vermont's privacy protections or precludes Vermont from withholding sensitive voter data. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows* ("*PILF*"), 92 F.4th 36, 56 (1st Cir. 2024) (concluding that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" voter files). And DOJ has not complied with the requirements that the

federal Privacy Act imposes before the collection of the private data it seeks.

Ultimately, DOJ's demands run directly contrary to the decentralized structure of the federal electoral system. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1 (giving the States principal authority over congressional elections). When enacting HAVA after the contested 2000 elections, Congress stressed that the "dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome." H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001). DOJ's suit asserts an unprecedented federal authority over the management of federal elections, yet it cites no federal law that supplies such sweeping authority.

Earlier today, a federal court dismissed DOJ's equivalent suit in California, holding that its CRA claim was legally defective for each of the reasons stated here. *See United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, slip op. (C.D. Cal. Jan. 15, 2026) (attached as Ex. 1).[1] Specifically, the court held that DOJ's proffered basis and purpose do not suffice under Title III of the CRA, *id.* at 14, that federal law does not preempt state privacy laws protecting sensitive voter data, *id.* at 22, 27, and that the DOJ's data request violates the Privacy Act, *id.* at 27–30. Just as the federal court in California did, this Court should dismiss the Complaint.

## BACKGROUND

I.  **Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v.*

---

[1] Likewise, a federal judge hearing DOJ's parallel lawsuit in Oregon advised the parties from the bench that he tentatively plans to grant the motions to dismiss filed in that case, in which the DOJ advanced a CRA claim under the same theory as it presents here. *See* Jaime Adame, *In 'tentative' ruling, judge denies federal access to Oregon voter data*, LookOut Eugene-Springfield (Jan. 14, 2026), https://perma.cc/P2T7-4DC8.

*Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. It is therefore *States*, not the federal government, that are primarily responsible for determining voter eligibility and maintaining lists of eligible voters. Congress may preempt state law, but that power extends only "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013). Where Congress has not spoken on an issue, state law controls. *See id.*

Existing federal law sits "atop *state* voter-registration systems"; it does not displace them. *Id.* at 5 (emphasis added). The NVRA charges *States*—not the federal government—with the "administration of voter registration for elections for Federal office." 52 U.S.C. § 20507(a). It makes *States* responsible for maintaining voter lists (subject to strict procedural safeguards). *Id.* § 20507(c)-(g). And it makes *States* the custodians of voter registration data. *See Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018).

HAVA, enacted "to improve voting systems and voter access" after the 2000 election, similarly involves voter registration systems, and puts the responsibility for such systems on the States. *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Thus, it requires *States* to create a "computerized statewide voter registration list" and "perform list maintenance," 52 U.S.C. § 21083(a)(1)(A), (a)(2)(A), and it is abundantly clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A).

Neither the NVRA nor HAVA tasks the federal government with compiling a federal voter registration list. Instead, Congress has "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the specific requirements of the NVRA and HAVA, which purposefully operate through the States themselves.

II.    **The Department of Justice has embarked on an unprecedented campaign to amass personal voter registration data held by the States.**

In the spring of 2025, DOJ launched an unprecedented campaign to demand broad access

to state voter files, which include sensitive and personal information about each registered voter such as date of birth, driver's license number, and social security number. DOJ has reportedly sent demands to at least 43 states, with plans to make similar demands on all 50.[2] It seeks to use the data to create a national voter database that will be used to attempt to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections.[3] In recent public statements, moreover, Assistant Attorney General Harmeet Dhillon has made clear that DOJ also intends to use the data it is demanding from the States to attempt to compel the removal of *hundreds of thousands* of voters from the rolls.[4]

According to many of the States subject to these demands, DOJ has sought not simply read-only access, but "materials that define or explain how" the voter information is coded into the registration database, "potentially because additional information about database coding would assist in transferring data . . . into other federal databases." Br. of Amici Curiae Maryland et al. in Supp. of Mot. to Dismiss at 6, *United States v. Bd. of Elections of N.Y.*, No. 1:25-CV-01338-MAD (N.D.N.Y. Jan. 6, 2026), ECF No. 79-1. The vast majority of States have appropriately rejected DOJ's demand, declining to turn over sensitive personal information that is typically protected by privacy laws.[5] Vermont law, for example, includes confidentiality protections for sensitive personal information that is contained in its statewide voter registration list, and it specifically

---

[2] Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Jan. 9, 2025), https://perma.cc/MV9B-QKHJ; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[3] Barrett & Corasaniti, *supra* note 2.

[4] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET), https://x.com/AAGDhillon/status/2001659823335616795 (stating in video discussing these lawsuits: "You're going to see hundreds of thousands of people in some States being removed from the voter rolls.").

[5] *See* Martinez-Ochoa, O'Connor & Berry, *supra* note 2.

prohibits sharing its list with the federal government for certain purposes. *See* 17 V.S.A. § 2154(b).

As part of this broader pressure campaign, on September 8, 2025, DOJ sent a letter to Secretary of State Copeland Hanzas asking that the Secretary provide DOJ with "a copy of Vermont's statewide voter registration list" within 14 days. Mem. in Support of Mot. to Compel, Ex. 1 at 1, ECF No. 2-3. DOJ insisted that the statewide voter registration list "should contain *all fields*" and "must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number[.]" *Id.* at 1. According to DOJ, the purpose of this request was to "ascertain Vermont's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* at 2. Secretary Copeland Hanzas responded by letter two weeks later, on September 22. Mem. in Support of Mot. to Compel, Ex. 2 at 1, ECF No. 2-4. In that response, the Secretary stated that DOJ's request for "all fields" of Vermont's statewide voter registration list would include "each voter's full name, date of birth, residential address, state driver's license number or last four digits of their social security number," and that "[t]his data is highly sensitive data that [the Secretary] ha[s] an independent obligation to protect under state and federal law." *Id.* at 1. The Secretary informed DOJ that, absent certain assurances from DOJ about how it would use "the unredacted VRL [voter registration list]," the Secretary is "not able to provide the requested information due to Vermont state law." *Id.* at 4.

Around the same time as DOJ was making these demands of Vermont, it made similar demands to scores of other States, the vast majority of which have similarly refused to turn over highly sensitive personal voter information. Beginning in September 2025, DOJ began filing lawsuits against some of these States; as of the time of this filing, it has filed 24 such suits. On September 16, DOJ brought actions against Oregon and Maine, alleging in both cases that DOJ was entitled to the voter information it sought under three statutes: the NVRA, HAVA, and the

CRA.[6] On September 25, DOJ filed lawsuits against California, Michigan, Minnesota, New York, New Hampshire, and Pennsylvania.[7] Again, DOJ brought its claims under all of these same three statutes, excepting only the NVRA claim in States that are exempt from the NVRA. In early December, DOJ sued a third group of States—Delaware, Maryland, New Mexico, Rhode Island, Vermont, and Washington.[8] Notably, beginning with this lawsuit, filed on December 1, DOJ asserted only a single claim under the CRA, in an implicit acknowledgment of the weakness of its NVRA and HAVA claims filed in the earlier actions. The lawsuits are otherwise essentially identical to the first few waves. Similarly, in mid-December, DOJ filed fourth and fifth waves of suits against Colorado, Hawaii, Massachusetts, Nevada, the District of Columbia, Georgia, Illinois, and Wisconsin, alleging claims under the CRA only.[9] Most recently, on January 6, 2026, DOJ brought suit against Arizona and Connecticut, again alleging only one claim under the CRA.[10]

## III.    The Department of Justice sues Secretary Copeland Hanzas to obtain Vermont's voter registration list.

DOJ filed this suit on December 1, 2025, seeking to compel Secretary Copeland Hanzas to provide Vermont's full, unredacted statewide voter registration list. *See generally* Compl., ECF No. 1. DOJ brings only a single count: namely, that in refusing to comply with DOJ's requests, Secretary Copeland Hanzas violated Title III of the CRA. Title III is a Civil Rights-era law that

---

[6] *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 16, 2025), https://perma.cc/9HZQ-CFCG.

[7] *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 25, 2025), https://perma.cc/J2Z3-C4NY.

[8] *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Dec. 2, 2025), https://perma.cc/SCJ6-7GW4.

[9] *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws*, U.S. Dep't of Just. (Dec. 12, 2025), https://perma.cc/Y8VL-QBDP; *Justice Department Sues Four States for Failure to Produce Voter Rolls*, U.S. Dep't of Just. (Dec. 18, 2025), https://perma.cc/7WMZ-FSQR.

[10] *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls*, U.S. Dep't of Just. (Jan. 6, 2026), https://perma.cc/PCE6-DHYA.

permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted the law to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957. H.R. Rep. No. 86-956, at 7 (1959).

DOJ, however, admits that it is not seeking to enforce these laws or investigate the unconstitutional denial of the right to vote. Rather, DOJ's stated purpose in making the request as conveyed to the Secretary was "to ascertain Vermont's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 20 (citation omitted). These are laws with their *own* procedures and enforcement mechanisms, which DOJ has not invoked in its Complaint here.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court "must accept as true all of the allegations contained in a complaint" but need not accept the complaint's "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Mere 'labels and conclusions' are insufficient." *Watson Lab'ys, Inc. v. Forest Lab'ys, Inc.*, 101 F.4th 223, 235 (2d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss," the complaint must contain sufficient factual allegations that are "necessary to sustain recovery under a viable legal theory." *Ag-Innovations, Inc. v. U.S. Dep't of Agric.*, No. 1:02-CV-332, 2005 WL 8154700, at *3 (D. Vt. Mar. 10, 2005).

## ARGUMENT

The Complaint should be dismissed because DOJ's demand did not include a valid

statement of "the basis and the purpose" for the demand, as Title III of the CRA requires; because federal law does not preempt Vermont's state-law privacy protections for the sensitive data Vermont has withheld; and because DOJ has not complied with the federal restrictions on compiling the sensitive data it seeks. There is therefore no "viable legal theory" for DOJ's requested relief. *Ag-Innovations, Inc.*, 2005 WL 8154700, at *3.

## I.     DOJ did not state an adequate, truthful basis and purpose for the demand as Title III requires.

A demand for records under Title III must state "the basis and the purpose therefor." 52 U.S.C. § 20703. DOJ has previously understood this dual requirement, and, in *Lynd*, provided an explicit statement of *both* the "basis" *and* the "purpose" of its demand, as required by Title III:

> This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

306 F.2d at 229 n.6 (internal quotation marks omitted). Other Title III cases from that period likewise discuss—consistent with Title III's express requirements—an explicit statement of both the "basis" and "purpose" for DOJ's demand. *See Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). Here, however, DOJ's demand fails to adequately allege *either* the basis or the purpose of its request, for at least four reasons.

*First*, DOJ's stated purpose for issuing the demand to Secretary Copeland Hanzas—to "ascertain Vermont's compliance with the list maintenance requirements of the NVRA and HAVA," Mem. in Support of Mot. to Compel, Ex. 1, ECF No. 2-3 at 2—is not sufficient under Title III. *See CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand,

reasoning agencies "are . . . not afforded unfettered authority to cast about for potential wrongdoing" (internal quotation marks and citation omitted)); *see also Weber*, slip op. at 16 (finding that "DOJ has not complied with Title III of the CRA and has provided an inadequate statement of basis and purpose" and holding that "[t]he requirement that the Attorney General state their purpose and basis is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute."). Title III permits DOJ to review voting records for "question[s] concerning infringement or denial of . . . constitutional voting rights." *Lynd*, 306 F.2d at 228. Its "purpose is to enable the Attorney General to determine whether" a suit to enforce the CRA is appropriate, *id.* at 228, not to ascertain compliance with distinct laws serving separate purposes with their own enforcement mechanisms and—in the NVRA's case—disclosure provisions. The NVRA and HAVA are concerned with things like a "failure to purge voters who have moved or away or died," which, as one early court applying Title III noted, "do[] not bear any particular importance" to the Title III inquiry. *Bruce*, 298 F.2d at 863 n.2.

In interpreting the "purpose" requirement, the Court should "account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see also Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989))). And Congress enacted Title III to buttress protections of the constitutional right to vote in the Civil Rights Act of 1957. *See* H.R. Rep. No. 86-956, at 3 (finding that while "some progress" had been made since the 1957 Act, there was a "need for additional legislation to implement the enforcement of civil rights");

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961) (per curiam).

In the Civil Rights Act of 1957, Congress had tasked DOJ with protecting the "right of all qualified citizens to vote without discrimination on account of race." H.R. Rep. No. 86-956, at 7. Despite this charge, DOJ's efforts were stymied by "the refusal of some state and local authority to permit" inspection of certain voter records. *Id.* DOJ had "no existing power in civil proceedings to require the production of [voter registration] records during any investigation" concerning "complaints of a denial to vote because of race." *Id.* Congress found that, without granting DOJ a "suitable provision for access to voting records during the course of an investigation," its ability to protect the right to vote was "rendered relatively ineffective." *Id.* Congress thus enacted Title III of the Civil Rights Act of 1960 to assist DOJ in those investigations. Title III had nothing to do with investigating the administrative voter registration list requirements enacted in the NVRA and HAVA decades later.

The Court should reject DOJ's efforts to justify its demands with a purpose disconnected from the statutory scheme. *See Weber*, slip op. at 15 (holding that assessing NVRA compliance was an improper purpose for DOJ's Title III request); *In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *17 (E.D. Pa. Nov. 21, 2025) (rejecting subpoena seeking private health information when DOJ "invoke[d] sweeping needs" for the information "far removed from those claimed purposes granted by Congress"); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 236–39 (D. Mass. 2025) (similar). Prior enforcement of Title III confirms that it is meant to be used only for investigating the denial of voting rights. Shortly after the law's

enactment, courts upheld DOJ demand letters that stated they were "based upon information in the possession of the Attorney General tending to show that discriminations on the basis of race and color have been made with respect to registration and voting within your jurisdiction." *In re Coleman*, 208 F. Supp. at 199–200; *see also Lynd*, 306 F.2d at 229 n.6 (same). DOJ has yet to cite a single instance in which a court has upheld a demand for records made under Title III to assess state compliance with the NVRA or HAVA.[11] And, as previously stated, a federal court earlier today rejected DOJ's demand for records made under Title III to assess compliance with the NVRA and HAVA. *Weber*, slip op. at 14–16.

In fact, DOJ's stated purpose is not just divorced from Title III's scope—it is antithetical to Title III's purpose. DOJ says that it wants to use the records it is demanding to attempt to compel States to remove hundreds of thousands of voters from the rolls. *Supra* note 4. Far from protecting constitutional voting rights, DOJ seeks to undermine them.

*Second*, DOJ's request to Vermont entirely failed to articulate "the basis" for the request. Not only does it fail to even assert that Vermont has denied the right to vote or otherwise infringed on anyone's voting rights, it even fails to assert the basis for what it claims its purpose to be: investigating Vermont's list maintenance practices for compliance with the NVRA and HAVA. DOJ's September 8 letter demanding Vermont's voter registration list with all fields did not articulate any specific concerns with Vermont's list maintenance efforts, much less provide a

---

[11] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records, *see Lynd*, 306 F.2d at 226 (quoting 42 U.S.C. § 1974b, recodified at 52 U.S.C. § 20703), those cases involved circumstances where Title III was unquestionably being used for its intended purpose: investigations into the potential denial of voting rights on account of race. Those prior cases are thus fundamentally different from the circumstances here, where DOJ has not even tried to assert that it seeks to investigate any possible denial of the constitutional right to vote. Nor has it even offered any justifiable basis to support the need for records to evaluate compliance with the two *other* statutes it has invoked.

factual basis to conclude that its efforts might not be "reasonable," which is all that the NVRA requires. 52 U.S.C. § 20507(a)(4); *see also id.* § 21085 (committing "specific choices on the methods of complying with" HAVA "to the discretion of the State"); Mem. in Support of Mot. to Compel, Ex. 2, ECF No. 2-4.[12]

The lack of a stated basis is fatal—Congress expressly required DOJ to state "the basis *and the purpose*" of its request, 52 U.S.C. § 20703 (emphasis added), and the Court must give meaning to both requirements. *See Comm. to Stop Airport Expansion v. FAA*, 320 F.3d 285, 288 (2d Cir. 2003) ("We disfavor an interpretation of a statute that renders statutory language superfluous."). "Simply put, [DOJ's demand] does not identify what conduct, it believes, constitute[d] an alleged violation." *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–59 (5th Cir. 2018) (quashing civil investigative demand that failed to provide basis for investigation). That omission is critical: even if Title III could be used to investigate matters unrelated to denial of the right to vote, it requires that both the purpose *and the basis* of DOJ's request shall be contained in the *demand itself*, not as a post-hoc rationale advanced in litigation. *See* 52 U.S.C. § 20703 ("*This demand* shall contain a statement of the basis and the purpose therefor." (emphasis added)); *see also Weber*, slip op. at 16 (finding that DOJ failed to "establish[] the basis for its request" because DOJ failed to explain why it believed that California had violated the NVRA or why the voter registration list was necessary for DOJ's investigation). DOJ's failure to include a "basis" in its demand to Vermont therefore independently warrants dismissal.

*Third*, context shows that "the basis and the purpose" that DOJ included in its demands to

---

[12] DOJ's own website acknowledges that States "have discretion under the NVRA and HAVA" to design voter registration list-maintenance programs, and that "States currently undertake a variety of approaches" to this process. *The National Voter Registration Act of 1993 (NVRA)*, U.S. Dep't of Justice, https://perma.cc/4Q33-DH8X (updated Nov. 1, 2024) (last accessed Jan. 15, 2026).

Vermont were not the true basis and purpose for its request. *See Weber*, slip op. at 16–19 (holding that the court is "not obliged to accept a contrived statement and purpose"). Neither DOJ's letter on September 8 demanding Vermont's voter registration list nor its subsequent Complaint identified any deficiencies with Vermont's list maintenance procedures. *See generally* Mem. in Support of Mot. to Compel, Ex. 1, ECF No. 2-3; Compl. Nor did they identify any evidence of anomalies, provide any reason to suspect—*or even express any concern*—that Vermont's list maintenance efforts were not "reasonable." The lack of any stated basis for DOJ's investigation of *Vermont* is further highlighted by the fact that DOJ has made carbon copy demands to at least 40 States and has sued more than 20 based on nearly identical boilerplate claims and allegations. *See supra* Background § II. This nationwide effort to collect state voter registration lists undermines any notion that DOJ has a "basis" for investigating Vermont specifically.

In addition, Vermont's full and unredacted statewide voter file is simply not helpful or necessary to determine whether Vermont "conduct[ed] a general program that makes a reasonable effort to remove the names of ineligible voters" by virtue of "death" or "a change in the residence of the registrant," 52 U.S.C. § 20507(a)(4); Compl. ¶ 12. The unredacted voter file cannot tell DOJ anything about the list maintenance procedures that Vermont undertook within its discretion under the NVRA and HAVA. If DOJ were to obtain the unredacted voter file, the data would be outdated almost immediately, and even if DOJ were able to use the data to identify voters who have moved or died since that single snapshot in time, it would not mean that Vermont did not make a "reasonable" list maintenance effort under the NVRA or HAVA.[13]

*Finally*, DOJ's claim is further undermined by the ample evidence of what its true aims

---

[13] As noted above, the DOJ's own website acknowledges that States need only make a "reasonable" effort to identify and remove ineligible persons from the voter rolls. *The National Voter Registration Act of 1993 (NVRA)*, *supra* note 12.

are. Namely, DOJ seeks to use the information it is demanding from States across the country to create an unauthorized, unprecedented national voter database, and—as its own senior official has stated publicly—to compel the removal of countless individuals from the voting rolls. *See* Background § II; *Weber*, slip op. at 17–18. This, too, only reinforces that DOJ's stated basis and purpose of its demand were not in fact the true basis and purpose, compelling dismissal of its claim.

## II.     Title III does not prohibit redacting sensitive voter information.

Even if DOJ met Title III's requirements, nothing in that provision or any other federal law preempts Vermont's state-law privacy protections of sensitive voter data and requires the production of the *unredacted* voter file. Vermont law protects the information at issue in this case under multiple statutory provisions, none of which is preempted by federal law.

*First*, Vermont law expressly makes "confidential" certain sensitive information contained in voter files, such as a voter's month and day of birth, driver's license or other identification number, and the last four digits of a social security number. 17 V.S.A. § 2154(b)(1); 1 V.S.A. § 317(c)(31). Thus, even if DOJ were entitled to some of the information contained in Vermont's statewide registration list, Section 2154(b)(1) and Section 317(c)(31) prohibit DOJ from obtaining (as DOJ demands) the complete, *unredacted* voter file. Nothing in Title III or any other federal law preempts this state-law protection of uniquely sensitive information.

Recently, two courts of appeals have squarely held that the NVRA does not prohibit the redaction of sensitive personal data contained in state voter registration lists. *See PILF*, 92 F.4th at 56 ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."); *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025) ("To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that

limitation."). These are no outliers—many other courts have reached the same conclusion. *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming district court order to redact social security numbers before disclosure under NVRA); *Pub. Int. Legal Found. v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021) (recognizing that the NVRA permits redactions to "protect sensitive information"); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding the NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social security numbers, partial email addresses, and birth dates); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) (holding the NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates"); *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding the NVRA permits redacting social security numbers). And the California district court considering a parallel lawsuit requesting California's unredacted voter registration list likewise concluded that "states are entitled to redact sensitive voter information, like social security numbers and birthdates, under the NVRA"—and pointed out that the DOJ itself had conceded this in amicus briefs as recently as 2023. *Weber*, slip op. at 20 (citing *Br. for the United States as Amicus Curiae in Support of Plaintiff-Appellee* at 27–30, *PILF*, 92 F.4th 36 (No. 23-1361), 2023 WL 4882397, at *27).

Similarly, nothing in the text of Title III prohibits the redaction of private information that courts have repeatedly held may be redacted under the NVRA. Title III says nothing about the issue, but as *Lynd*—the central case DOJ relies on—recognizes, Congress seems to have contemplated the production of *public* records, *not* private data. Thus, that court concluded that

Title III is intended to reach *only* "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. In contrast, the information DOJ demands here is safeguarded from prying eyes under both federal and state privacy laws. *See, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; 17 V.S.A. § 2154(b). Driver's license numbers and partial social security numbers were not required to be provided on registration forms until 2002, *see* 52 U.S.C. § 21083(a)(5)(A)(i), so the Congress that enacted Title III could not have possibly intended it to require disclosure of such information (or concluded that doing so was necessary to conduct the investigations that Title III was enacted to support). *See Watt v. W. Nuclear, Inc.*, 462 U.S. 36, 47 (1983) (interpreting statute to avoid result that "Congress could not have expected"). Congress's authority to preempt state laws governing elections extends only "so far as it is exercised and no farther." *Inter Tribal Council*, 570 U.S. at 9 (citation omitted). Nothing in the text of Title III purports to preempt state-law privacy protections.

The conclusion that Title III does not entitle DOJ to the sensitive data it seeks is reinforced by analyzing the choices Congress made when it enacted the NVRA and HAVA. If Congress had thought that it was necessary or desirable for DOJ to have access to a database containing highly sensitive information about every voter in a State to ensure that the State was complying with its list maintenance obligations under those statutes, it would have done so in *the NVRA and HAVA themselves*. But Congress did not do so. In fact, Congress created a *different* mechanism meant to ascertain States' compliance with list maintenance obligations: the NVRA inspection provision, located at 52 U.S.C. § 20507(i). Congress "envisioned" this inspection to allow for "critical scrutiny and public audits of voter data"—but nonetheless permitted the redaction of sensitive voter data. *Voter Reference Found.*, 160 F.4th at 1082 & 1083 n.14. Congress specified that records subject to inspection under that provision must include the "names and addresses" of certain voters,

52 U.S.C. § 20507(i)(2), but stopped short of requiring States to go beyond that and disclose sensitive voter information. As for HAVA, it contains no disclosure provision at all, and instead explicitly confirms that voter registration lists must be "maintained" and "administered at the State level"—not by the federal government. 52 U.S.C. § 21083(a)(1)(A). In short, it simply makes no sense to say that Congress intended Title III to preempt state privacy laws protecting highly sensitive information so that the federal government could assess compliance with voter list maintenance under the NVRA and HAVA—statutes passed decades later that reflect a congressional judgment *not* to preempt such laws. Thus, just as with the NVRA, nothing in Title III prohibits the "redaction of uniquely or highly sensitive personal information in the Voter File." *PILF*, 92 F.4th at 56; *accord Voter Reference Found.*, 160 F.4th at 1083 n.14.

*Second*, Vermont law also prohibits the State from providing the statewide voter registration list to the federal government if it would be used for certain enumerated purposes. Most relevant here, the State may not provide the list to the federal government if it will be used "for the purpose of . . . comparing a voter's information maintained in the checklist to personally identifying information contained in other federal or state databases." 17 V.S.A. § 2154(b)(2)(C). In response to DOJ's demand for voter data, Secretary Copeland Hanzas cited Section 2154(b)(2)(C) and informed DOJ that she could not provide the requested data "[w]ithout a commitment from DOJ that the unredacted [voter registration list] will not be used for any of [Section 2154(b)(2)'s] prohibited purposes." Mem. in Support of Mot. to Compel, Ex. 2 at 3-4, ECF No. 2-4. DOJ apparently declined to provide that assurance.

In light of that failure, Section 2154(b)(2) provides an independent ground to dismiss DOJ's claim. DOJ can point to no statute that authorizes it to create an unprecedented, national voter registration database, let alone one that could be compared with other federal databases in

aid of a nationwide, federal voter purge. Certainly, the CRA cannot be read to do so, given that the CRA's purpose is to assist investigation of the "*infringement or denial* of . . . constitutional voting rights." *Lynd*, 306 F.2d at 228 (emphasis added). And because Congress's preemption power extends "only so far as it is exercised, and no farther," *Inter Tribal Council*, 570 U.S. at 9, nothing in the CRA or any other federal law can be read to preempt state laws that prohibit sharing Vermont's statewide voter registration list when it would be used for this prohibited purpose that Congress has never authorized the federal government to engage in. Consequently, Secretary Copeland Hanzas properly concluded that she could not share an unredacted copy of Vermont's statewide voter registration list with DOJ in light of its pointed refusal to assure the State that it would not compare the list to other federal databases in aid of a federal voter purge.

### III. DOJ has failed to comply with the Privacy Act, which independently requires dismissal.

The Privacy Act, codified at 5 U.S.C. § 552a, *et seq.*, "offers substantial protections regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). It does so in part by "adopt[ing] procedural safeguards when the records maintained by a federal agency, *i.e.*, a 'system of records,' are changed or used in a new way." *Id.* at *2 (quoting 5 U.S.C. § 552a(a)(5), (e)). In its rushed effort to sweep up the sensitive information of every registered voter in Vermont, DOJ overlooked the Privacy Act's basic procedural requirements. As a result, the Privacy Act independently prohibits DOJ from obtaining Vermont's statewide voter registration list.

The Privacy Act imposes certain obligations on any agency that "maintains" a "system of records." *See* 5 U.S.C. § 552a(e). Both of those terms are given specific definitions by the statute. A "system of records" is defined as "a group of any records under the control of any agency from

which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his *name, or the identifying number . . . or other identifying particular assigned to the individual*") (emphasis added). Vermont's statewide voter registration list, which contains the names and other unique identifying information of all registered voters in Vermont, plainly qualifies as a "system of records" under the Privacy Act. *Cf.* Compl. at 8 (demanding statewide voter registration list including "each registrant's name, date of birth, address, and . . . the last four digits of the registrant's social security number, driver's license/state identification number, or the unique HAVA identifier"). The term "maintain" is defined to include "maintain, collect, use, or disseminate." 5 U.S.C. § 552a(a)(3). Accordingly, if DOJ were to "collect," "use," or "maintain" Vermont's statewide voter registration list, the obligations imposed by subsection (e) of the Privacy Act are triggered. *See id.* § 552a(e)(4); *see also Weber*, slip op. at 28 (holding that "[t]he Privacy Act applies to the voter records request by the DOJ"). And that is precisely the relief DOJ seeks here: an order from this Court to collect Vermont's statewide voter list. Compl. at 8.

As DOJ attempts to amass state voter registration data onto its own servers, the Privacy Act imposes specific obligations. Most relevant here, "when an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' *i.e.*, a System of Records Notice (SORN)." *League of Women Voters*, 2025 WL 3198970, at *2 (alterations in original) (quoting 5 U.S.C. § 552a(e)(4)). A SORN must include, among other things, the name and location of the system, the categories of individuals on whom records are maintained in the system, the categories of records maintained in

the system, and all "routine use[s]" to which the system can be put as well as the "categories of users and the purpose of such use." *Id.*

DOJ does not appear to dispute that the Privacy Act is applicable here, nor that DOJ must publish a SORN that would apply to Vermont's statewide voter registration list. In fact, DOJ's complaint provides the specific SORN that DOJ apparently believes provides authority for it to collect Vermont's voter registration list, identifying it as "JUSTICE/CRT – 001," the "Central Civil Rights Division Index File and Associated Records." Compl. ¶ 23; *see also id.* ¶ 22 (stating that DOJ's September 8 Letter communicated "that the requested records will be maintained consistent with Privacy Act protections").

That SORN, however, does not extend to a record such as a statewide voter registration list. *See Weber*, slip op. at 29. It notifies the public that the categories of individuals covered by the system may include "[s]ubjects of investigations, victims, [and] potential witnesses," in addition to other categories not relevant here. 68 Fed. Reg. 47610-01, 47611 (Aug. 11, 2003). Applied here, this would implausibly mean *every* registered voter in Vermont (or, given DOJ's near-nationwide demands, every registered voter in the country) is a subject under investigation, victim, or witness in some unnamed case. Similarly, the SORN describes the categories of records in this system to "consist of case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." *Id.* While this language would seemingly cover run-of-the-mill files maintained for specific Civil Rights Division investigations and litigation matters, it would be a startling construction of these terms to find that they extend to a statewide (or nationwide) voter registration list that has never

before been compiled by the federal government, as DOJ presses here.[14]

To hold that this SORN is sufficient under the Privacy Act to allow DOJ to collate sensitive information about every registered voter in Vermont (and the country) would nullify the statute's "procedural safeguards," which "Congress enacted to . . . permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by federal agencies" and to "ensure adequate safeguards are provided to prevent misuse of such information." *League of Women Voters*, 2025 WL 3198970, at *2 (citation modified). If DOJ wishes to take such a radical step and compile a federal database of the registered voters in the United States, the Privacy Act requires (at a minimum) that DOJ adhere to strict notice-and-comment requirements, by first providing "adequate advance notice" to two congressional committees and the Office of Management and Budget to evaluate the effects on privacy and other rights and then publishing a SORN in the Federal Register that accurately discloses the system of records it intends to create and the uses to which it will put that information with the opportunity for written data, views, and arguments from interested persons. 5 U.S.C. § 552a(e)(4); *see also id.* § 552a(r); *id.* § 552a(e)(11) (requiring a 30-day notice period "of any new use or intended use of the information in the system," to "provide an opportunity for interested persons to submit written data, views, or arguments to the agency").

In short, because the SORN that DOJ identifies does not cover the system of records it intends to maintain, the Privacy Act prohibits DOJ from collecting Vermont's statewide voter

---

[14] DOJ cites two other notices in the Federal Register, Compl. ¶ 23, but they are also irrelevant. The first adds an additional "routine use" to the SORN that is not applicable here. *See* 70 Fed. Reg. 43904-01, 43904 (July 29, 2005). The second adds a blanket routine use to all DOJ SORNs that is relevant only in the event of a data breach of DOJ systems. *See* 82 Fed. Reg. 24147-01, 24147 (May 25, 2017).

registration list.[15]

## CONCLUSION

For the reasons stated above, Proposed Intervenor-Defendants respectfully request that the

Court dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can

be granted.

Dated: January 15, 2026

Respectfully submitted,

*/s/ Joshua C. Abbuhl*
Marc E. Elias*
David R. Fox *
Joshua C. Abbuhl
Julianna D. Astarita**
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 987-5288
F: (202) 968-4498
eliasm@elias.law
dfox@elias.law
jabbuhl@elias.law
jastarita@elias.law

* Admitted *pro hac vice*
** *Pro hac vice* motion filed
*Counsel for Proposed Intervenor-Defendants*

---

[15] There is no impediment to the Court dismissing the complaint based on DOJ's failure to comply with the Privacy Act. Even if the Court construes failure to comply with the Privacy Act as an affirmative defense, defendants appropriately "may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). Here, the complaint explicitly pleads compliance with a specific SORN, Compl. ¶ 23, and for the reasons stated above, that SORN cannot justify DOJ's collection and maintenance of Vermont's voter registration list.