# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         *Plaintiff*,<br><br> v.<br><br>SARAH COPELAND HANZAS, in her official capacity as Secretary of State of Vermont,<br><br>         *Defendant*. | Case No. 2:25-cv-00903 |

**PROPOSED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION BY PROPOSED INTERVENOR-DEFENDANTS VERMONT ALLIANCE FOR RETIRED AMERICANS, RICHARD MONTEROSSO, AND MARY ANDREWS[1]**

---

[1] Proposed Intervenors request that the Court accept this Proposed Response in Opposition to Plaintiffs' Motion to Compel Production in the event that the Court grants their Motion to Intervene, ECF No. 6. *See Donald Trump for President, Inc. v. Benson*, No. 1:20-cv-01083-JTN-PJG, 2020 WL 8573863, at *3 (W.D. Mich. Nov. 17, 2020) (granting proposed intervenors' motions to intervene and simultaneously accepting for consideration proposed intervenors' proposed motions to dismiss); *Am. Tradition Inst. v. Colorado*, No. 11-cv-00859-WJM-BNB, 2012 WL 555513, at *3 (D. Colo. Feb. 21, 2012) (similar).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

ARGUMENT ................................................................................................................................. 3

    I.       The Federal Rules govern DOJ's claim. ............................................................................ 3

    II.      The Court must conduct meaningful review of DOJ's demand. ........................................ 5

    III.     The proper procedural course is for the Court to resolve the pending motions to dismiss and then, if needed, to proceed to discovery. .......................................................... 11

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**                                                                                         Page(s)

*Ass'n of Car Wash Owners Inc. v. City of New York*,
    911 F.3d 74 (2d Cir. 2018) ............................................................................................. 12

*BKV Barnett, LLC v. Elec. Drilling Techs., LLC*,
    No. 23-cv-00139, 2024 WL 4833776 (D. Colo. Nov. 20, 2024) ........................................ 8

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
    854 F.3d 683 (D.C. Cir. 2017) ........................................................................................... 6

*CFPB v. Source for Pub. Data, L.P.*,
    903 F.3d 456 (5th Cir. 2018) ............................................................................................. 6

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ......................................................................................................... 11

*Gahagan v. USCIS*,
    911 F.3d 298 (5th Cir. 2018) ............................................................................................. 5

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009) ............................................................................................... 11

*In re Admin. Subpoena No. 25-1431-019*,
    800 F. Supp. 3d 229 (D. Mass. 2025) ............................................................................... 6

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) .................................................................................... 5, 6, 7

*Lugo v. City of Troy*,
    114 F.4th 80 (2d Cir. 2024) ............................................................................................. 11

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019) ............................................................................................. 12

*SM Kids, LLC v. Google LLC*,
    963 F.3d 206 (2d Cir. 2020) ............................................................................................. 12

*Smith v. New Haven Superior Ct.*,
    No. 3:20-cv-00744-KAD, 2020 WL 4284565 (D. Conn. July 27, 2020) .......................... 8

*State of Ala. ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) .................................................................................. 6

*Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*,
　　584 F.3d 340 (1st Cir. 2009) ................................................................................................ 5

*United States v. Lynd*,
　　301 F.2d 818 (5th Cir. 1962) ................................................................................................ 7

*United States v. Millman*,
　　822 F.2d 305 (2d Cir. 1987) ................................................................................................. 5

*United States v. Powell*,
　　379 U.S. 48 (1964) ...................................................................................................... 1, 4, 5

*United States v. Weber*,
　　No. 2:25-cv-09149-DOC-ADS, slip op. (Jan. 15, 2026) ...................................................... 1

## Statutes And Rules

26 U.S.C. § 7604 ............................................................................................................................ 4

29 U.S.C. § 161 .............................................................................................................................. 4

52 U.S.C. § 20703 .......................................................................................................................... 6

52 U.S.C. § 20705 ...................................................................................................................... 1, 4

Fed. R. Civ. P. 1 ......................................................................................................................... 1, 3

Fed. R. Civ. P. 81(a) ...................................................................................................................... 4

## Other Authorities

AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET),
　　https://x.com/AAGDhillon/status/2001659823335616795 ............................................... 12

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build
　　National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/
　　2025/09/09/us/politics/trump-voter-registration-data.html................................................ 12

Jaime Adame, *In 'tentative' ruling, judge denies federal access to Oregon voter data*,
　　LookOut Eugene-Springfield (Jan. 14, 2026), https://perma.cc/P2T7-4DC8 .................... 9

Order, *United States v. Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 13, 2026),
　　ECF No. 23 ........................................................................................................................... 8

Order, *United States v. Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 14, 2026),
　　ECF No. 30 .................................................................................................................... 9, 10

# INTRODUCTION

The Federal Rules of Civil Procedure lay out the typical lifecycle of a civil action. After the filing of a civil complaint, a defendant may file a motion to dismiss under Rule 12(b). Then, if a plaintiff states a claim, the case proceeds to discovery, summary judgment, and trial if necessary. Over the course of that process, a defendant has multiple opportunities to test the legal and factual bases of the plaintiff's claims and to build any necessary record. The Federal Rules also provide familiar governing standards for courts to apply at each step, all with an eye toward the ordered and efficient resolution of disputes.

The U.S. Department of Justice ("DOJ") asks this Court to bypass that entire process by adjudicating a "motion to compel production of records" at the very start of the case. ECF No. 2. This may sound like an innocuous discovery motion, but it is no such thing—it would compel the final relief that DOJ seeks in this action. Nothing in the Federal Rules or the statute underlying DOJ's claim authorizes this departure from the regular course of proceeding or permits DOJ to evade the Rules for its own convenience. The Civil Rights Act merely states that district courts "shall have jurisdiction by appropriate process" to grant relief under that law. 52 U.S.C. § 20705. The Federal Rules set forth that process. *See* Fed. R. Civ. P. 1. The 1962 Fifth Circuit decision that DOJ relies on is irreconcilable with later Supreme Court precedent clarifying that in circumstances involving *identical* statutory language, "the Federal Rules of Civil Procedures apply." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964).

Just today, a federal court recognized that DOJ's Civil Rights Act claim is governed by the Federal Rules rather than some special procedure absent from the statute's text. *See United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, slip op. (Jan. 15, 2026). This Court should similarly reject DOJ's effort to short-circuit the ordinary litigation process, deny DOJ's motion to compel,

and allow this action to unfold as prescribed by the Federal Rules. And, procedural issues aside, DOJ is not entitled to the relief it seeks for the reasons given in Proposed Intervenors' contemporaneously filed motion to dismiss.

## BACKGROUND[2]

DOJ filed this suit on December 1, 2025, seeking to compel Defendant Sarah Copeland Hanzas, Vermont's Secretary of State, to turn over Vermont's full, unredacted statewide voter registration list. *See generally* Compl., ECF No. 1. DOJ brings only a single claim, alleging a violation of Title III of the Civil Rights Act of 1960 ("CRA"). *See id.* ¶¶ 27–29. DOJ contends that it is entitled to access the list under the CRA, for the stated purpose of assessing Vermont's compliance with the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). *See id.* ¶ 20.

As Proposed Intervenors explain in their motion to dismiss, filed contemporaneously with this opposition, the Civil Rights Act of 1960 ("CRA") cannot support DOJ's sweeping and novel demand. *See generally* Mem. in Support of Mot. to Dismiss, ECF No. 39-2. DOJ states no lawful, truthful basis and purpose for its demand. It says it is investigating compliance with the NVRA and HAVA, but it articulates no "basis" for believing Vermont—much less all 40-plus States of which DOJ is making this same demand—is violating those statutes, and investigating compliance with those statutes is not a lawful purpose for an investigation under the CRA in any event, because it falls outside the CRA's focus on constitutional voting rights. *See id.* Argument § I. It is also not the true purpose for DOJ's demand, which is instead to build an unprecedented and unauthorized nationwide voter list and—as its own senior official has admitted—to use the information obtained

---

[2] Proposed Intervenors' Motion to Dismiss, filed contemporaneously with this filing, further explains the background of this litigation and DOJ's wide-ranging demands for sensitive voter information in Vermont and throughout the country.

to attempt to compel the removal of *hundreds of thousands of voters* from the rolls. *See id.* Background § II; Argument § I. In other words, DOJ's true purpose appears to be to *impede* constitutional voting rights, not protect them. This is not a lawful purpose for the demand of these records under the CRA. Rather, it is antithetical to that Act. And DOJ has not complied with the federal privacy laws that would be necessary for it to collect the private information it demands, even if it were otherwise entitled to it. *See id.* Argument § III.

In the motion to compel, DOJ asks the Court to ignore those issues—and other issues raised by the Secretary of State and the Vermont Public Interest Research Group in their own motions to dismiss—and skip straight to compelling production of the full set of information that DOJ demands. It asks the Court to "[o]rder Defendant to produce an electronic copy of the Vermont [S]tatewide Voter Registration List," including all the sensitive fields DOJ demands. Mot. Compel Prod. at 2, ECF No. 2.

**ARGUMENT**

The Federal Rules of Civil Procedure govern this civil action, like any other. Nothing in the CRA's text supports DOJ's contention that the CRA "displaces" the Federal Rules or authorizes a "special statutory proceeding." Mem. in Support of Mot. Compel Prod. at 12, ECF No. 2-2. And DOJ is wrong to minimize the Court's role in reviewing the lawfulness of the relief it seeks. The Court should deny DOJ's motion and permit this litigation to unfold under the normal course—starting with resolving the motions to dismiss DOJ's baseless claim.

**I.   The Federal Rules govern DOJ's claim.**

The Court should reject DOJ's request to short-circuit the Federal Rules in this case. Those Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case is just such an action. While Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—

such as certain admiralty or bankruptcy actions—none involve the CRA. *See* Fed. R. Civ. P. 81(a). Just the opposite. Rule 81(a)(5) expressly provides that "proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute" are subject to the Federal Rules, "except as otherwise provided by statute, by local rule, or by court order in the proceedings." As a result, even if Title III document requests could be characterized as a subpoena, they would still be subject to the Federal Rules, as none of the sources listed in Rule 81(a)(5) provide an exception for document requests under Title III. Congress knows how to prescribe streamlined proceedings for that circumstance, *see, e.g.*, 29 U.S.C. § 161(2), and it did not do so in the CRA.

As the first federal court to adjudicate DOJ's procedural arguments put it, "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures." *Weber*, slip op. at 13. DOJ identifies not a word to support its demand for an immediate grant of the final relief it seeks in this case. The statute says only that district courts "shall have jurisdiction *by appropriate process* to compel the production" of the documents sought. 52 U.S.C. § 20705 (emphasis added). Nothing in that language suggests that the "appropriate process" should be something other than that which federal courts ordinarily use to resolve contested cases. *Weber*, slip op. at 13 (exercising "appropriate process" by applying the Federal Rules of Civil Procedure). And as the Supreme Court has held, where a statute of this type "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*." *Powell*, 379 U.S. at 58 n.18 (emphasis added). *Powell* is directly on point, because the relevant text of the statute in *Powell* was identical to the relevant text of Section 20705, providing that the federal courts "shall have jurisdiction by appropriate process to compel" the production sought. 26 U.S.C. § 7604(a).

DOJ's contrary argument relies on a Fifth Circuit decision from 1962, *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). But *Lynd* is irreconcilable with *Powell*, which the Supreme Court decided two years later. Where *Lynd* says that enforcement proceedings under Title III "do[] not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," 306 F.2d at 225–26, *Powell* explains—again, construing a statute with identical text to that found in Title III—that "the Federal Rules of Civil Procedure apply," and that "proceedings are instituted by filing a complaint, followed by answer and hearing," 379 U.S. at 58 n.18. After *Powell*, *Lynd*—which was never binding on this Court—would not control even in the Fifth Circuit. *E.g.*, *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent." (quoting *Gonzales v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010)). This Court should follow *Powell*.

## II. The Court must conduct meaningful review of DOJ's demand.

DOJ is also wrong to minimize the Court's role in reviewing the legality of DOJ's demand. To invoke the powers of a federal court to enforce a subpoena, the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose." *Powell*, 379 U.S. at 57. After all, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58. And "an abuse would take place if the summons had been issued for an improper purpose." *Id.*

Unsurprisingly, then, courts—including the same circuit court that issued *Lynd*—regularly engage in meaningful judicial review of government document requests issued under a variety of statutory schemes. *E.g.*, *United States v. Millman*, 822 F.2d 305, 308–09 (2d Cir. 1987) (holding that a summons recipient can successfully challenge the government's document request by "showing bad faith on the part of the [agency]"); *Sugarloaf Funding, LLC v. U.S. Dep't of*

5

*Treasury*, 584 F.3d 340, 347–50 (1st Cir. 2009) (allowing summons recipient opportunity to rebut government's prima facie case); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing" (quoting *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994)); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"). Nothing in Title III justifies any different treatment.

In arguing otherwise, DOJ relies on *Lynd* and some other cases from the deep South in the early 1960s. But the context in which those cases were decided was vastly different. *Lynd* involved demands for voter records from counties in Mississippi and parishes in Louisiana "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." 306 F.2d at 229 n.6. That was undeniably a valid "purpose" under 52 U.S.C. § 20703, as eliminating racial discrimination in voting was the explicit purpose of Title III, *see State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III of the CRA] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). And there could be no serious question that DOJ had a valid "basis" to suspect racial discrimination in voting in localities where Black residents had overwhelmingly been excluded from the voter rolls. *See,*

*e.g.*, *United States v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962) (explaining that "[n]o Negro had been registered in Forrest County during defendant Lynd's term of office," while "none of the defendants nor their deputies were able to testify to any individual white person who had been rejected."). Moreover, *Lynd* emphasized that it was "of great importance" that the records DOJ sought there were "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers." 306 F.2d at 231. Here, in contrast, DOJ seeks sensitive and private information that is regularly protected from disclosure. And even *Lynd* emphasized that, if there were a "genuine dispute" whether the records sought fell within the scope of Title III, the court would need to adjudicate that issue. *Id.* at 226.

None of the factors that made *Lynd* such an easy case are present here. The avowed purpose of DOJ's request falls outside of Title III, because—even by DOJ's own telling—the demand relates not to the protection of constitutional voting rights, but merely administrative requirements imposed by other statutes with their own enforcement and investigatory mechanisms (specifically, the NVRA and HAVA). *See* Mem. in Support of Mot. to Dismiss Argument § I.[3] There is therefore at least a "genuine dispute" whether the records are subject to production under Title III. *Lynd*, 306 F.3d at 226. Indeed, public reporting and statements by DOJ officials themselves strongly indicate that DOJ's real purpose is to impede voting rights, not protect them. Moreover, even if DOJ could use Title III to investigate list maintenance issues governed by the NVRA and HAVA

---

[3] Notably, although DOJ alleged claims under the NVRA and HAVA in its first set of otherwise identical cases against states seeking the same relief it seeks here, DOJ has abandoned those claims in later iterations of these cases, including this one against Vermont. *See* Proposed Intervenors' Mem. in Support of Mot. to Dismiss at 6. In doing so, DOJ has effectively conceded that those statutes do not entitle it to the relief it seeks, and concocted instead an ill-advised theory that the CRA operates as a catch-all authorizing any demand by DOJ for any information related to voting for any purpose, without any place for judicial review. For the reasons discussed here (and in greater detail in Proposed Intervenors' motion to dismiss), this argument is not well founded.

(and there is good reason to find that it cannot), DOJ has also provided no reason to believe that it has a valid basis to suspect that there are NVRA and HAVA violations in Vermont, much less in all 40-plus States from which DOJ has demanded similar records. Finally, the records that DOJ seeks here involve confidential, not public, information. *Lynd*'s approach may have made sense for requests for public voter registration forms in 1960s Mississippi. But it is entirely inappropriate for the brave new world ushered in by DOJ's wave of extraordinary document demands targeting quintessential private information about all registered voters in the entire State of Vermont, and nearly every other State, too.

Nothing in DOJ's recently filed notice of supplemental authority changes that conclusion. In its notice, DOJ submitted a recent order from a federal court in Connecticut that instructs the Secretary to show cause as to why the court should not order the release of the State's voter registration list to DOJ. *See* ECF No. 20. Proposed Intervenor Vermont Alliance for Retired Americans' sister organization, the Connecticut Alliance for Retired Americans, was granted intervention as a defendant in that case, Order, *United States v. Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 13, 2026), ECF No. 23, and is accordingly familiar with the Connecticut proceedings. The Connecticut court's order was issued in the infancy of that case, before the state had appeared (indeed, was even served), and merely set a scheduling order. It said nothing about the merits of the case, and did not require Connecticut officials to turn over *any* data, nor does it contain any legal analysis that could aid this Court. *See* ECF No. 20-1 (Order, *United States v. Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 8, 2026), ECF No. 10)); *see also Smith v. New Haven Superior Ct.*, No. 3:20-cv-00744-KAD, 2020 WL 4284565, at *3 (D. Conn. July 27, 2020) ("the Court's order to show cause, which is a non-final order"); *BKV Barnett, LLC v. Elec. Drilling Techs., LLC*, No. 23-cv-00139, 2024 WL 4833776, at *1 (D. Colo. Nov. 20, 2024) ("show cause

order was not a final order"). Nor does the order find that DOJ has adequately stated a claim for relief under the Civil Rights Act—never mind proven such a claim. Indeed, despite DOJ having now sued 24 states for private voter data, not a single court nationwide has yet found DOJ's claims to be legally viable. Instead, the same California court that rejected DOJ's procedural arguments also granted motions to dismiss DOJ's claims on the merits, *see Weber*, slip op. at 33, and a court in Oregon is similarly inclined to dismiss DOJ's claims.[4]

In a subsequent order issued yesterday, the Connecticut court eliminated any doubt that unlike the *Weber* court in California, it has not yet adjudicated any aspect of DOJ's claims. *See* Order, *United States v. Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 14, 2026), ECF No. 30. There, the court emphasized that "the dispute shall be fully briefed followed by a hearing at which oral argument shall be had"—making it clear as can be that the court has not yet resolved the merits of DOJ's claim. *Id.* The court also explained that it has not yet decided whether it will "accept[] the scope and limitations of the [Civil Rights] Act as set forth in *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)." *Id.*[5] The court expressed a preliminary procedural view that the issue can be decided after briefing and a hearing, but it invited further briefing on that procedural question, too. *Id.* And, unsurprisingly, for a preliminary order that was issued quickly after the case was filed and based on very "limited filings to date," the Connecticut court's order reflects some oversights.

---

[4] Yesterday, a federal court hearing DOJ's parallel case in Oregon advised the parties from the bench that he tentatively plans to grant the motions to dismiss filed in that case. *See* Jaime Adame, *In 'tentative' ruling, judge denies federal access to Oregon voter data*, LookOut Eugene-Springfield (Jan. 14, 2026), https://perma.cc/P2T7-4DC8. DOJ's complaints in Oregon and California included a CRA claim advanced under the same theory DOJ presses here. *See* Compl., *United States v. Oregon*, 6:25-cv-01666-MTK (D. Or. Sept. 16, 2025), ECF No. 1; Compl., *United States v. Weber*, 2:25-cv-09149-DOC-ADS (C.D. Cal. Sept. 25, 2025), ECF No. 1.

[5] The court's order referred to the Voting Rights Act. In a subsequent notice issued this morning, the Connecticut court corrected that error, recognizing that DOJ proceeds under the Civil Rights Act, not the Voting Rights Act. Notice, *United States v. Thomas*, 3:26-cv-00021-KAD (Jan. 15, 2026), ECF No. 33.

*Id.* In addition to initially conflating the Voting Rights Act with the Civil Rights Act, *see supra* note 5, it did not address the Supreme Court's controlling decision in *Powell* (which the parties in that case have not yet had an opportunity to brief), and it analogized Title III to 28 U.S.C. § 1782, a provision with very different text that does in fact specify a different procedure, unlike Title III and the statute at issue in *Powell*, both of which refer only to "appropriate process." *See id.*

Finally, the Connecticut order is an outlier to the extent that it flips the burden onto the Defendant (and Intervenor-Defendants) to explain why DOJ should not prevail on its claims. In addition to the decision in California and the tentative ruling in Oregon, other courts have proceeded with Rule 12 motions: defendants' and intervenors' motions to dismiss are fully also briefed in Michigan, with Maine and Pennsylvania to follow within the week.[6] These courts have had the benefit of advocacy on the question of what rules apply to this case, as well as on the merits. In the Connecticut case, the court issued its order to show cause before the Secretary was served or appeared, before granting the Connecticut Alliance for Retired Americans' motion to intervene, and before adversarial briefing on the propriety of the order. *See, e.g.*, Summonses Returned Executed, *Thomas*, No. 3:26-CV-00021-KAD (D. Conn. Jan. 12, 2026), ECF Nos. 20–21; Notices of Appearance, *Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 13, 2026), ECF Nos. 25–26; Order Granting Mot. Intervene, *Thomas*, No. 3:26-CV-00021-KAD (D. Conn. Jan. 13, 2026), ECF No. 23. With briefing already underway before this Court, there is no reason to change course and deviate from the procedures provided by the Federal Rules.

---

[6] *See* Minutes of Motion Hearing, *United States v. Weber, et al.*, No. 2:25-CV-09149 (C.D. Cal. Dec. 4, 2025), ECF No. 97; Scheduling Order, *United States v. Oregon, et al.*, No. 6:25-CV-01666 (D. Or. Dec. 5, 2025), ECF No. 54; Reply in Support of Mot. Dismiss, *United States v. Benson*, No. 1:25-CV-01148 (W.D. Mich. Jan. 9, 2026), ECF No. 58; Scheduling Order, *United States v. Bellows*, No. 1:25-CV-00468 (D. Me. Nov. 21, 2025), ECF No. 38; Resp. in Opp'n to Mot. Dismiss, *United States v. Schmidt*, No. 2:25-CV-01481 (W.D. Pa. Jan. 12, 2026), ECF No. 103.

This Court should thus reject DOJ's suggestion that Title III "displaces the Federal Rules of Civil Procedure," Mem. in Support of Mot. Compel Prod. at 12, and apply those Federal Rules as it does in nearly every other civil action. That starts with resolving the parties' motions to dismiss before proceeding to any necessary discovery period and summary judgment briefing.

**III.      The proper procedural course is for the Court to resolve the pending motions to dismiss and then, if needed, to proceed to discovery.**

Consistent with the above, the Court can and should resolve this case via the pending motions to dismiss, not through a "motion to compel production of records" that is not sanctioned by the Federal Rules or any statute. The Federal Rules provide for motions to dismiss for a simple and sound reason: to test "the legal sufficiency" of the complaint. *Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Federal Rules likewise set an early deadline for motions to dismiss because they are a "screening mechanism in the early stages of the litigation" that closes "the doors of discovery" to plaintiffs "armed with nothing more than conclusions." *Lugo v. City of Troy*, 114 F.4th 80, 89 (2d Cir. 2024) (internal quotation marks and citations omitted). Accordingly, Rule 12(b)(6) motions are meant to "weed[] out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

As explained more fully in Proposed Intervenors' motion to dismiss, DOJ asserts novel authority to compel the production of an unredacted copy of Vermont's complete statewide voter registration list, without any valid statutory basis to do so. *See* Mem. in Support of Mot. Dismiss Argument §§ I–III. In light of the fatal legal deficiencies in DOJ's complaint, resolving DOJ's motion to compel first would flip the process backwards, depriving Proposed Intervenors and the Secretary of State of their right and opportunity to test the legal sufficiency of DOJ's claims at the outset, as the Rules envision. As the Second Circuit has repeatedly said, "[d]espite the flexibility that is accorded district courts to streamline proceedings and manage their calendars, district courts

are not free to bypass rules of procedure that are carefully calibrated to ensure fair process to both sides." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 812–13 (2d Cir. 2019) (reversing district court decision that did not comply with Rule 12). "[R]ules matter, and procedural regularity and evenhandedness matter, as well." *SM Kids, LLC v. Google LLC,* 963 F.3d 206, 214 (2d Cir. 2020) (again reversing for failure to comply with Rule 12). The motions to dismiss are thus the proper vehicle to resolve DOJ's claim.

Even if the Court denies the motions to dismiss in whole or in part, the next step would be to permit discovery on DOJ's claim. Even at this early stage, it is apparent that there are potential disputes of material fact that may bear on the resolution of this case. For example, even assuming DOJ could seek records under the Civil Rights Act of 1960 to assess Vermont's compliance with the NVRA and HAVA (and there is good reason to find that it cannot), there is a genuine dispute of fact as to whether that is in fact DOJ's purpose. Public reporting has indicated that DOJ intends to create a nationwide voter list, an unprecedented scheme not authorized by any source of law.[7] And Assistant Attorney General Harmeet Dhillon has even stated publicly that DOJ intends to use the information to attempt to compel removal of *hundreds of thousands* of voters from the rolls.[8] Granting DOJ the final relief it seeks before the Secretary and Proposed Intervenors have the opportunity to conduct discovery relevant to this and other factual disputes would be premature and contrary to the well-established practices that govern civil litigation. *See, e.g.*, *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 83 (2d Cir. 2018) ("Since summary judgment

---

[7] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.
[8] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET), https://x.com/AAGDhillon/status/2001659823335616795 (stating in video discussing these lawsuits: "You're going to see hundreds of thousands of people in some States being removed from the voter rolls.").

is a drastic device, it should not be granted when there are major factual contentions in dispute. This is particularly so, when, as here, one party has yet to exercise its opportunities for pretrial discovery." (cleaned up)).

**CONCLUSION**

For the reasons stated above, Proposed Intervenors respectfully request that this Court deny DOJ's motion to compel production.

Dated: January 15, 2026

Respectfully submitted,

*/s/ Joshua C. Abbuhl*
Marc E. Elias*
David R. Fox*
Joshua C. Abbuhl
Julianna D. Astarita**
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, D.C. 20001
T: (202) 987-5288
F: (202) 968-4498
eliasm@elias.law
dfox@elias.law
jabbuhl@elias.law

* Admitted *pro hac vice*
** *Pro hac vice* application filed
*Counsel for Proposed Intervenor-Defendants*