**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

SARAH COPELAND HANZAS, in her official
capacity as the Secretary of State of Vermont,

*Defendant*.

Case No. 2:25-cv-00903-mkl

**INTERVENOR-DEFENDANT VERMONT PUBLIC INTEREST RESEARCH GROUP'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND AND PROCEDURAL HISTORY ..........................................................4

    I.      Procedural History ...................................................................................4

          A.  Timeline of Letters..................................................................4

          B.  Proceedings in this Court ........................................................5

    II.     Statutory Background .............................................................................5

          A.  CRA ........................................................................................5

          B.  NVRA .....................................................................................7

          C.  HAVA .....................................................................................7

LEGAL STANDARD ............................................................................................................8

ARGUMENT .........................................................................................................................9

    I.      The CRA requires Plaintiff to provide a statement of the basis and the purpose for a request for records....................................................................................10

    II.     Plaintiff failed to meet the CRA's requirement to state the basis and the purpose of its request ....................................................................................................11

          A.  The complaint and letter fail to state the basis for demanding the unredacted voter list...................................................................................................12

          B.  The complaint and letter fail to state the purpose for demanding the unredacted voter list .................................................................................................12

              i.      The facts alleged do not state a purpose for using sensitive voter data to assess Vermont's compliance with the NVRA.............................................13

              ii.    The facts alleged do not state a purpose for needing sensitive voter data to assess Vermont's compliance with HAVA .................................................15

          C.  Plaintiff's apparent goals for compiling nationwide voter data do not appear connected to list-maintenance analysis..................................................16

    III.    Vermont law prevents the disclosure of this sensitive voter data ................................17

CONCLUSION......................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                           **Pages**

*Allen v. Milligan*, 599 U.S. 1 (2023) ....................................................................................5

*Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1 (2013)....................................14

*Atlas Data Privacy Corporation v. We Inform, LLC*, No. 24-cv-4037,
    2025 WL 2444153 (D.N.J. Aug. 25, 2025)..............................................................19

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)..........................................8

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019)..........................................................8

*Center for Taxpayer Rights v. Internal Revenue Service*, No. 1:25-cv-00457-CKK, 2025 WL
    3251044 (D.D.C. Nov. 21, 2025)............................................................................3

*Common Cause/New York v. Brehm*, 432 F. Supp. 3d 285 (S.D.N.Y. 2020)................14

*Consumer Financial Protection Bureau v. Accrediting Council for Independent Colleges and*
    *Schools*, 854 F.3d 683 (D.C. Cir. 2017) ......................................................9, 11, 12

*Disabled in Action of Metropolitan New York v. Hammons*, 202 F.3d 110 (2d. Cir. 2000)............14

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012)........................................................18

*Husted v. A. Philip Randolph Institute*, 584 U.S. 756 (2018) ........................................13

*In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963)...........................................10, 16

*In re Tax Liabilities of John Does*, 688 F.2d 144 (2d Cir. 1982)....................................11

*Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) ...................................................10

*Kennedy v. Lynd*, 306 F. 2d 222 (5th Cir. 1962)............................................................10

*Matson v. Board of Education of City School District of New York*, 631 F.3d 57 (2d Cir. 2011)....8

*National Labor Relations Board v. American Medical Response, Inc.*, 438 F.3d 188
    (2d Cir. 2006)........................................................................................................11

*Pennsylvania State Conference of NAACP Branches v. Secretary Commonwealth of*
    *Pennsylvania*, 97 F.4th 120 (3d Cir. 2024) ........................................................5, 6

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ...............18

*Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections*, 996 F.3d 257
    (4th Cir. 2021)......................................................................................................18

*Roe v. St. John's University*, 91 F.4th 643 (2d Cir. 2024) ...............................................8

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007)...........................................................8, 9

*United States v. Clarke*, 573 U.S. 248 (2014)................................................................11

*United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995) ................................................................11

*United States v. State of New York*, 3 F. Supp. 2d 298 (E.D.N.Y. 1998) ........................................14

**Statutes and Rules**

17 V.S.A. § 2150 ..........................................................................................................................14

17 V.S.A. § 2154 .....................................................................................................................13, 17

17 V.S.A. § 2154(b)(1) ................................................................................................................17

17 V.S.A. § 2154(b)(2) ................................................................................................................17

5 U.S.C. § 552a ..............................................................................................................................3

44 U.S.C. § 3506(c) ........................................................................................................................3

44 U.S.C. § 3507(a) ........................................................................................................................3

52 U.S.C. § 20501(b) ......................................................................................................................7

52 U.S.C. § 20507(a)(4) .............................................................................................................7, 13

52 U.S.C. § 20507(b) ......................................................................................................................7

52 U.S.C. § 20507(d) ......................................................................................................................2

52 U.S.C. § 20701 ..........................................................................................................................6

52 U.S.C. § 20703 .............................................................................................................6, 9, 10, 15

52 U.S.C. § 20510(a) ....................................................................................................................14

52 U.S.C. § 20510(b) ....................................................................................................................14

52 U.S.C. § 21083(a)(1)(A) .......................................................................................................8, 15

52 U.S.C. § 21083(a)(1)(A)(i) .......................................................................................................8

52 U.S.C. § 21083(a)(2)(A)(ii) ......................................................................................................8

52 U.S.C. § 21083(a)(4) ...............................................................................................................15

52 U.S.C. § 21083(a)(5)(A) ..........................................................................................................15

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................8

**Other Authorities**

Alexandra Berzon & Nick Corasaniti, *Initial Review Finds No Widespread Illegal Voting by Migrants, Puncturing a Trump Claim*, N.Y. Times (Jan. 14, 2026), https://www.nytimes.com/2026/01/14/us/politics/noncitizen-voters-save-tool.html ...............3

*Black's Law Dictionary* (8th ed. 2004) ........................................................................................10

Brief for the United States as Amicus Curiae, *Public Interest Legal Foundation, Inc. v. Bellows*, No. 23-1361, 2023 WL 4882397 (1st Cir. July 25, 2023) ......................................................18

Daniel M. Berman, A Bill Becomes a Law: Congress Enacts Civil Rights Legislation (2d ed. 1966) ..................................................................................................................6

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html ..................................................3

Hamed Aleaziz, *Immigration Agents Are Using Air Passenger Data for Deportation Effort*, N.Y. Times (Dec. 12, 2025), https://www.nytimes.com/2025/12/12/us/politics/immigration-tsa-passenger-data.html ..................................................................................................3

Jonathan Shorman, *Trump's DOJ Offers States Confidential Deal to Remove Voters Flagged by Feds*, Stateline (Dec. 18, 2025), https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/ ...............................................1

Order Granting Defendant's Motion to Dismiss and Intervenors' Motions to Dismiss, *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Jan. 15, 2026) ...............1, 5, 6, 7, 10, 11, 13, 16, 18

Press Release, Office of Public Affairs, U.S. Department of Justice, Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws (Dec. 12, 2025), https://perma.cc/2N9T-YASF .............................................2

Proposed "Confidential Memorandum of Understanding" sent to Colorado, https://www.documentcloud.org/documents/26330926-vrldata-sharing-agreement-doj-co/ ....................................................1, 2

Pub. L. No. 107-252, 116 Stat. 1666 (2002) ...................................................................7

Report of U.S. Commission on Civil Rights 1963 (1963) ................................................6

Vermont Secretary of State, *Request for Electronic Copy of the Vermont Statewide Checklist*, https://perma.cc/T9WR-JDDE (last visited Jan. 12, 2026) .....................................13

## INTRODUCTION

Plaintiff the United States is engaged in an unprecedented effort to collect voters' sensitive data from almost every state in the country. Vermont is one of 23 states, plus the District of Columbia, that Plaintiff has sued over their refusal to produce unredacted voter rolls, including driver's license numbers and social security numbers. In this case, Plaintiff cites three statutes in support of its demand—the National Voter Registration Act (NVRA), the Help America Vote Act (HAVA), and Title III of the Civil Rights Act of 1960 (CRA)—none authorizes Plaintiff to compel Vermont to produce its unredacted voter file. *See* Ex. A, Order Granting Defendant's Motion to Dismiss and Intervenors' Motions to Dismiss, *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Jan. 15, 2026) (dismissing, without leave to amend, a similar complaint based on the same three statutes) (hereinafter *Weber* Order).

Plaintiff's complaint contains only one count, brought under the CRA. The Attorney General did not satisfy the requirements to provide both the basis and the purpose of her request for this data as required under the CRA, instead relying entirely on a purported desire to ensure Vermont's compliance with the NVRA and HAVA. But a single snapshot of the unredacted voter file cannot be used to determine the State's compliance with those statutes, demonstrating that the Attorney General's purported basis and purpose are insufficient.

Plaintiff's plans for this sensitive data appear nowhere in the complaint, but have emerged from other sources, including a proposed Memorandum of Understanding (MOU) the Justice Department asked Colorado, and reportedly other states, to sign. *See* Proposed "Confidential Memorandum of Understanding" sent to Colorado at 5, https://www.documentcloud.org/documents/26330926-vrldata-sharing-agreement-doj-co/; *see also* Jonathan Shorman, *Trump's DOJ Offers States Confidential Deal to Remove Voters Flagged*

1

*by Feds*, Stateline (Dec. 18, 2025), https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/. The MOU describes the United States Department of Justice's (USDOJ) attempted takeover of states' exclusive authority to maintain their voter rolls and determine who should be removed from the rolls due to ineligibility. It provides that USDOJ will conduct an "analysis and assessment" of the state's voter rolls and instruct the state to remove voters USDOJ identifies.[1] MOU at 5. In announcing these lawsuits, USDOJ confirmed its goal was not to review list-maintenance procedures, but to expand federal control over elections and target voters for removal, stating: "At this Department of Justice, we will not permit states to jeopardize the integrity and effectiveness of elections by refusing to abide by our federal elections laws. If states will not fulfill their duty to protect the integrity of the ballot, we will."[2] This federal takeover of list maintenance would run contrary to the constitutional and the statutory frameworks for elections, which provide that Congress and the states make the law, and state and local governments run elections, including registering voters and maintaining voter rolls.

Other purposes for Plaintiff's vast data-collection exercise apparently have nothing to do with the statutes relied upon in the complaint. According to one USDOJ lawyer, Civil Rights Division leadership demanded that USDOJ obtain "states' voter rolls, by suing them if necessary" to "go through all the data and compare it to the Department of Homeland Security data and Social Security data" and search for "immigrants that have registered to vote" even though "[t]here was

---

[1] The MOU provides that removals must take place within 45 days of notification from USDOJ, which—for any voters flagged for removal based on having moved—would violate Section 8(d) of the NVRA. 52 U.S.C. § 20507(d).

[2] Press Release, Off. of Pub. Affs., U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/2N9T-YASF.

no pre-existing evidence" that unlawful immigrant voting is a problem.[3] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html. Moreover, Plaintiff's demands for private voter data persist despite reports that efforts to use the data for voter verification have resulted in erroneous removals of eligible U.S. citizens from state voter rolls. Alexandra Berzon & Nick Corasaniti, *Initial Review Finds No Widespread Illegal Voting by Migrants, Puncturing a Trump Claim*, N.Y. Times (Jan. 14, 2026), https://www.nytimes.com/2026/01/14/us/politics/noncitizen-voters-save-tool.html.

The Department of Homeland Security confirmed that it is receiving information from USDOJ, and the information exchange is being done "to scrub aliens from voter rolls." And Plaintiff's efforts in this case, and the 23 similar cases against other states and Washington, D.C., are part of a larger program of the federal government to gather and use vast swaths of data, notwithstanding laws to the contrary. *See Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, No. 1:25-cv-00457-CKK, 2025 WL 3251044, at *2 (D.D.C. Nov. 21, 2025); *see also* Hamed Aleaziz, *Immigration Agents Are Using Air Passenger Data for Deportation Effort*, N.Y. Times (Dec. 12, 2025), https://www.nytimes.com/2025/12/12/us/politics/immigration-tsa-passenger-data.html.

Under the facts alleged, the CRA does not entitle the Attorney General to an unredacted version of Vermont's voter registration list. And regardless of her actual goals, the Attorney General's only stated purpose for seeking the unredacted list is to ensure compliance with the NVRA and HAVA, for which the driver's license numbers, other DMV identifiers, and

---

[3] To the extent that USDOJ is not engaging in an investigation, as it purports to be doing to ensure compliance with the NVRA and HAVA, and is instead engaging in data collection for any other purpose, USDOJ must comply with the Paperwork Reduction Act, *see* 44 U.S.C. §§ 3506(c), 3507(a), and the Privacy Act, *see* 5 U.S.C. § 552a.

partial social security numbers of every Vermont voter are not necessary. As such, Plaintiff has failed to state a claim under the CRA, and the Court must dismiss the complaint.

## BACKGROUND AND PROCEDURAL HISTORY

### I.    Procedural History

In the summer of 2025, USDOJ began a widespread and unprecedented effort to obtain sensitive data on millions of Americans in service of a national voter registration database and to usurp the State's role in conducting list maintenance. Throughout the summer of 2025, USDOJ sent letters to election officials in dozens of states, including Vermont, demanding production of their unredacted statewide voter registration lists that contained sensitive information about every registered voter.

### A.  Timeline of Letters

USDOJ wrote to Secretary of State Sarah Copeland Hanzas on September 8, 2025, demanding an electronic copy of Vermont's statewide voter registration list containing "all fields, which include the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number." Complaint, ECF No. 1 ¶¶ 19-20. The letter invoked the CRA, the NVRA, and HAVA. *Id.* ¶ 20; *see also* September 8 Letter, ECF No. 2-3. On September 22, 2025, Secretary Copeland Hanzas responded, declining to provide the non-public statewide voter registration list—which includes confidential voter information—without assurances from USDOJ that it would comply with the Privacy Act of 1974, the e-Government Act of 2004, and Vermont law. *Id.* ¶ 25; *see also* September 22 Letter, ECF No. 2-4. USDOJ never replied to Secretary Copeland Hanzas's letter, filing this lawsuit instead.

### B. Proceedings in this Court

Plaintiff filed suit on December 1, 2025, alleging that Defendant has violated the CRA. *See* ECF No. 1. At the same time, Plaintiff filed a "Motion to Compel Production of Records Demanded Pursuant to the Civil Rights Act of 1960." Motion to Compel, ECF No. 2.

Intervenor-Defendants Vermont Alliance for Retired Americans, Richard Monterosso and Mary Andrews moved to intervene in this litigation on December 11. ECF No. 6. On December 17, Secretary Copeland Hanzas informed the Court that Plaintiff and Defendant had agreed on an extended briefing schedule, which the Court subsequently adopted. ECF Nos. 10, 12. Intervenor-Defendant Vermont Public Interest Research Group (VPIRG) moved to intervene on December 30. ECF No. 19. No party has opposed intervention. *See* ECF Nos. 11, 19.

## II.    Statutory Background

Although Plaintiff's lawsuit brings only one count under the CRA, the lawsuit invokes three statutes—the CRA, NVRA, and HAVA. Congress's intent in passing all three of the statutes "was clear—ensuring that all Americans, regardless of race, are able to vote without fear or distress." *Weber* Order at 4.

### A. CRA

The Civil Rights Act of 1960 was "designed to protect access to the ballot in jurisdictions with patterns or practices of denying [voting] access based on race." *Allen v. Milligan*, 599 U.S. 1, 47 (2023). "Title III of the Civil Rights Act of 1960 was passed during the Jim Crow era, when persistent voter suppression was preventing Black Americans from voting." *Weber* Order at 3. "States were utilizing literacy tests, arbitrary registration tactics, voter ID laws, and poll taxes to keep minorities away from the ballot. Black Americans risked intimidation and violence every time they tried to access the polls." *Id.* "One of the many techniques used to keep Black voters from the polls was to reject would-be registrants for insignificant, hyper-technical errors in filling

5

out application forms." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 126 (3d Cir. 2024). These efforts included rejecting "applicants for failing to calculate [their] age to the day" and "underlining Mr. when it should have been circled." *Id.* (citation modified). During this time "[t]o hide their complicity in voter suppression, state officials destroyed the records of Black Americans who had registered to vote, as well as those denied the opportunity to register." *Weber* Order at 3; *see also* Daniel M. Berman, A Bill Becomes a Law: Congress Enacts Civil Rights Legislation 9 (2d ed. 1966); *see also* Report of U.S. Comm'n on Civil Rights 1963, at 16 (1963) ("[S]ome southern officials, in order to hamper investigations by the Department of Justice and the Civil Rights Commission, had been destroying or impounding voting and registration records.").

In response to these types of widespread voter suppression methods, Congress enacted the CRA. *See Weber* Order at 3 ("Title III was enacted directly in response to these concerns, requiring states to retain and preserve all records pertaining to voter registration, voting applications, and payments of poll taxes."); *see also* Daniel M. Berman, A Bill Becomes a Law: Congress Enacts Civil Rights Legislation 9 (2d ed. 1966). Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of twenty-two months after any federal general, special, or primary election. 52 U.S.C. § 20701. Section 303 requires that a state must make any of these retained records available for inspection by the Attorney General "upon [a] demand in writing by the Attorney General" that contains "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

### B.  NVRA

Congress passed the NVRA in 1993 to establish "procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," making "it possible for Federal, State, and local governments to implement this [Act] in a manner that enhances the participation of eligible citizens as voters in elections for Federal office," protecting "the integrity of the electoral process," and ensuring "that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). Similar to the CRA, the NVRA was enacted "to combat the effects of discriminatory and unfair registration laws that cheapened the right to vote." *Weber* Order at 3 (citing *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334 (4th Cir. 2012)).

Each section of the NVRA works to balance these objectives. Section 8 of the NVRA regulates the way that states update and maintain their voter registration lists—often referred to as list maintenance—and provides a disclosure mechanism by which any party may seek certain information regarding those lists. 52 U.S.C. § 20507(b). Section 8 requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . a change in the residence of the registrant," but does not impose a higher standard than "reasonable effort" and does not require states to conduct programs to remove voters for other reasons. 52 U.S.C. § 20507(a)(4).

### C.  HAVA

Against the backdrop of the NVRA, and following the 2000 general election, Congress enacted HAVA. Pub. L. No. 107-252, 116 Stat. 1666 (2002) (52 U.S.C. §§ 20901-21145). Like the CRA and NVRA, HAVA "was passed in 2002 to help prevent election failures and improve voting accessibility." *Weber* Order at 4.

HAVA requires that each state maintains "a single, uniform, official, centralized, interactive

computerized statewide voter registration list," which "shall serve as the single system for storing and managing the official list of registered voters throughout the State." 52 U.S.C. § 21083(a)(1)(A), (a)(1)(A)(i). HAVA charges states with "conducting a general program of list maintenance that makes a reasonable effort to remove voters who become ineligible because of a change of address [or death]." *Bellitto v. Snipes*, 935 F.3d 1192, 1203 (11th Cir. 2019); *see also* 52 U.S.C. § 21083(a)(2)(A)(ii). Although the statute repeatedly refers to other provisions of the NVRA, *see, e.g.*, 52 U.S.C. § 21083(a)(2)(A)(i), it neither contains nor incorporates a disclosure provision of any kind.

## LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although "factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678).

Although the court can consider only facts alleged in the complaint in considering a motion to dismiss, "[i]n certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6)," without converting the motion to dismiss

to one for summary judgment. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.*

## ARGUMENT

Plaintiff's complaint fails to state a claim because it does not include the requisite law or facts to establish that Plaintiff is entitled to production of Vermont voters' sensitive data, including information about VPIRG's members. While the complaint broadly gestures to enforcing the NVRA and HAVA, it is limited to one CRA claim. But Plaintiff fails to allege the basis and purpose the CRA requires. Plaintiff's allegations do not meet the CRA's "basis" requirement because Plaintiff does not allege any facts that indicate Vermont is not in compliance with the NVRA or HAVA. And Plaintiff's allegations do not meet the CRA's "purpose" requirement because Plaintiff does not allege that Vermont's unredacted voter file containing driver's license numbers, other DMV identifiers, and partial social security numbers are needed to evaluate compliance with the NVRA or HAVA. Because Plaintiff fails to meet the statement-of-basis-and-purpose requirements necessary to state a claim under the CRA, the Court must dismiss its complaint.

The complaint and appended papers do not state the basis and the purpose for the requested voter information, despite the CRA's clear requirements. *See* 52 U.S.C. § 20703. USDOJ, like any other agency, must abide by statutory requirements when seeking documents. *See CFPB v. Accrediting Council for Indep. Colls. and Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) (requiring compliance with statute that controls the CFPB's investigative demands). By failing to abide by the CRA's statement-of-basis-and-purpose requirements, Plaintiff fails to state a claim under the CRA.

I.     **The CRA requires Plaintiff to provide a statement of the basis and the purpose for a request for records.**

The CRA requires the Attorney General "to offer a written statement of *both* purpose and basis for its demands to" Vermont. *Weber* Order at 14; 52 U.S.C. § 20703 (requiring "a statement of the basis and the purpose" for any records requested). "The basis is the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law", and "purpose" is "the rationale for the request[.]" *Weber* Order at 16; *see also Basis*, *Black's Law Dictionary* 161 (8th ed. 2004) ("an underlying condition"); *Purpose*, *Black's Law Dictionary* 161 (8th ed. 2004) ("An objective, goal, or end"). At a minimum, the "basis" requirement compels the Attorney General to describe information in her possession that tends to show the law has been violated. *See Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962). Plaintiff failed to identify facts that indicate that Vermont violated federal civil rights law and failed to explain how the requested sensitive voter data would help determine if a violation occurred. Therefore, Plaintiff has failed to meet the CRA's requirements.

These CRA requirements are meaningful safeguards that Plaintiff may not flout. *See Weber* Order at 14 (finding Plaintiff had failed to meet CRA's requirements). The requirements ensure that the federal government uses the CRA as a tool to conduct properly predicated investigations rather than a blank check to get wide swaths of documents about voters beyond its statutory authority. *See In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) ("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued in such Federal elections after May 6, 1960."). Even *Kennedy v. Lynd*, a case on which Plaintiff extensively relies, recognized that under the CRA, a court "exercises judicial judgment. It does not confer or withhold a favor." 306 F. 2d 222, 225 (5th Cir. 1962) (quoting *Tutun v. United*

*States*, 270 U.S. 568, 578 (1926)); *see also United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995) ("[A] district court is not a 'rubber stamp' for agency demands for the production of information."); *Weber* Order at 13 (holding that "appropriate process" requires application of FRCP which allows the Court to determine whether Plaintiff has met the CRA's statutory requirements).

The CRA's safeguards accord with those that courts apply in analogous situations. In the administrative subpoena context, courts have found that the test for judicial enforcement of an administrative subpoena requires evaluating whether the investigation is "conducted pursuant to a legitimate purpose." *Nat'l Lab. Rels. Bd. v. Am. Med. Response, Inc.*, 438 F.3d 188, 192 (2d Cir. 2006). In the IRS summons context, the Second Circuit has laid out criteria the government must establish to obtain judicial enforcement, including "legitimate purpose," "relevan[ce] to that purpose," and that the government followed the requisite process. *In re Tax Liabilities of John Does*, 688 F.2d 144, 147-48 (2d Cir. 1982) (citations and footnotes omitted); *see also United States v. Clarke*, 573 U.S. 248, 254 (2014) (taxpayer entitled to examine IRS agent upon showing of an inference of bad faith). Courts have similarly confirmed that such investigations cannot be "unduly burdensome or unreasonably broad" and that courts should "inquire into allegations that an agency is using an administrative subpoena for an improper purpose." *CFPB*, 854 F.3d at 689.

## II.    Plaintiff failed to meet the CRA's requirement to state the basis and the purpose of its request.

Plaintiff's complaint attempts to skirt the CRA's requirements by nakedly alleging that it has made a written demand that stated a basis and purpose. Compl. ¶ 28 (stating that the Attorney General's September 8, 2025 "written demand 'contain[ed] a statement of the basis and the purpose therefor.'" (quoting 52 U.S.C. § 20703)). But Plaintiff's only written demand to Secretary Copeland Hanzas—its September 8 letter—contains no such statement. The letter states that "[t]he

purpose of this [CRA] request is to ascertain Vermont's compliance with the list-maintenance requirements of the NVRA and HAVA" but does not provide any reason to believe that Vermont is not in compliance with those laws (the basis) or an explanation of how the requested sensitive voter data could allow for an investigation of that belief (the purpose). *See* ECF No. 2-3 at 3. This bare assertion is insufficient to meet the CRA's requirements. To hold otherwise would render the statement-of-basis-and-purpose requirements meaningless. *See CFPB*, 854 F.3d at 690.

**A. The complaint and letter fail to state the basis for demanding the unredacted voter list.**

Neither the complaint nor the September 8 letter provides the basis for Plaintiff's request because they fail to state *any* reason to believe that Vermont was not in compliance with federal law, including either the NVRA or HAVA. The complaint points only to USDOJ's letter, Compl. ¶ 20, which does not provide any specific information indicating Vermont has failed to comply with list-maintenance requirements. *See* ECF No. 2-3.

The complaint attempts but fails to cobble together a post-hoc basis for the requested sensitive voter data. It alleges that USDOJ sent this letter to the Secretary "[b]ased on a review of the 2024 EAVS Report[,]" but does not assert that the 2024 EAVS Report demonstrated that Vermont was not in compliance with the NVRA or HAVA. Compl. ¶ 18. The complaint and appended September 8 letter therefore fail to provide any basis to establish that Vermont may not have complied with the list-maintenance requirements of the NVRA and HAVA. Because Plaintiff fails to meet the CRA's basis requirement, the Court must dismiss the complaint.

**B. The complaint and letter fail to state the purpose for demanding the unredacted voter list.**

The complaint and letter also fail to allege the purpose for seeking the unredacted voter list. Plaintiff alleges that, like its statement of basis, its statement of purpose is in the September 8 letter. Compl. ¶ 28. That letter states only that "[t]he purpose of this [CRA] request is to ascertain

Vermont's compliance with the list maintenance requirements of the NVRA and HAVA." *See* ECF No. 2-3 at 3. But "Title III was not conceived by Congress to provide access to 'confidential, private papers and effects,'" such as the sensitive voter information contained in the unredacted voter registration list. *Weber* Order at 15 (quoting *Lynd*, 306 F.2d at 231). And Plaintiff fails to explain how a snapshot of the unredacted voter registration list is necessary to assess Vermont's compliance with the NVRA and HAVA when Plaintiff can access Vermont's publicly available voter list. *See* 17 V.S.A. § 2154; *see also* Vermont Sec'y of State, *Request for Electronic Copy of the Vermont Statewide Checklist*, https://perma.cc/T9WR-JDDE (last visited Jan. 12, 2026). In part, this is likely because driver's license numbers, months and days of birth, and partial social security numbers are *not* necessary for that analysis. *See Weber* Order at 15 ("[E]ven if compliance with the NVRA was a valid purpose, the DOJ states no reason why an unredacted version of California's voter list is necessary under the NVRA."); *infra* Argument II.B.ii. Plaintiff's allegation thus falls short of the statutory requirements. Because Plaintiff fails to meet this requirement, the Court must dismiss the complaint.

> *i. The facts alleged do not state a purpose for using sensitive voter data to assess Vermont's compliance with the NVRA.*

Plaintiff fails to state a purpose because it fails to allege in the complaint or state in its letter why it would need sensitive voter information to evaluate whether Vermont is in compliance with the NVRA's list-maintenance requirements.

The federal government's role in enforcing the NVRA is narrowly circumscribed. The NVRA tasks the states, not the federal government, with maintaining voter registration lists and affords states discretion in deciding how to comply with the NVRA. The NVRA requires states to implement "a *general program* that makes a *reasonable effort* to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4) (emphases added); *Husted*

*v. A. Philip Randolph Inst.*, 584 U.S. 756, 787 (2018) (Thomas, J., concurring). "In other words, the NVRA sets the floor for how states conduct list maintenance; states have discretion to choose how precisely to follow its requirements." *Common Cause/New York v. Brehm*, 432 F. Supp. 3d 285, 317 (S.D.N.Y. 2020) (citing *Husted*, 584 U.S. at 762). Vermont implements the required general program that makes a reasonable effort to remove the names of ineligible voters. *See* 17 V.S.A. § 2150 (mandating process to remove names from voter registration list). Plaintiff has no authority under the NVRA to assess whether Vermont should, in Plaintiff's view, do more than the reasonable effort it is already undertaking.

Plaintiff seeks to overstep its limited role in enforcing the NVRA. In its September 8 letter, USDOJ explained that "[w]e request Vermont's [voter registration list] to assess your state's compliance with the statewide VRL maintenance provisions of the NVRA" and "[o]ur request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions." *See* ECF No. 2-3 at 2. But the NVRA's provision granting the Attorney General enforcement authority simply allows the Attorney General to "bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter." *See* 52 U.S.C. § 20510(a). Neither that provision nor any part of the NVRA grants the Attorney General independent subpoena or administrative investigatory powers.[4] *See* 52 U.S.C. § 20510(a). The Attorney General has no special right to access information outside of the procedures that the

---

[4] Instead, Congress authorized parallel enforcement by private plaintiffs and the Attorney General to ensure broad compliance with the NVRA's goals. 52 U.S.C. § 20510(a) & (b); *see United States v. State of New York*, 3 F. Supp. 2d 298, 308 (E.D.N.Y. 1998) (Attorney General's powers under the NVRA are "limited to commencing civil actions 'as is necessary to carry out' the purposes of the statute" and are not exclusive), *aff'd in part, rev'd on other grounds sub nom.*, *Disabled in Action of Metro. N.Y. v. Hammons*, 202 F.3d 110 (2d. Cir. 2000). This reflects that the NVRA's provisions were designed intentionally to balance transparency and privacy concerns. *See supra* Background II.B.

NVRA prescribes. *See Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 8-9 (2013) (emphasizing that Elections Clause, which empowers states to prescribe the time, place, and manner of electing Representatives and Senators acts as "a default provision; it invests the States with responsibility for the mechanics of congressional elections, but only so far as Congress declines to pre-empt state legislative choices.").

> ii. *The facts alleged do not state a purpose for needing sensitive voter data to assess Vermont's compliance with HAVA.*

Plaintiff fails to state a purpose for requesting sensitive voter data to conduct an evaluation of Vermont's compliance with HAVA's list-maintenance procedures. As the complaint notes, Section 21083(a)(1)(A) of HAVA requires states to maintain a statewide voter registration list that contains the name and registration information of each voter. Section 21083(a)(4) establishes accuracy standards for states' voter registration records, and Section 21083(a)(5)(A) requires states to obtain and verify certain identifying information from applicants. Vermont has already explained in detail its processes for list maintenance and HAVA compliance, including maintaining a statewide voter registration list, conducting regular list maintenance at the municipal level, and requiring applicants for registration to provide the required identifying information. *See* ECF No. 2-3.

Vermont's explanation is all that is required under the law. No part of HAVA or any other legal authority, gives the Attorney General the power to demand the full, unredacted voter registration file from states outside of seeking it in discovery in a HAVA enforcement suit. A basic enforcement provision does not implicitly include the authority to force production of records, especially those that must be kept private under law. *See supra* Argument II.B.i; *cf.* 52 U.S.C. § 20701; 52 U.S.C. § 20703 (empowering Attorney General with specific power to demand records). Moreover, a static, unredacted copy of Vermont's voter registration list is not necessary

to determine whether Vermont is complying with HAVA's list-maintenance requirements because a static list does not explain the procedures by which Vermont maintains the list. The complaint contains no factual allegations as to why the information already provided is insufficient to evaluate the State's HAVA compliance. As such, Plaintiff fails to meet the CRA's statement-of-purpose requirement by invoking HAVA.

### C. Plaintiff's apparent goals for compiling nationwide voter data do not appear connected to list-maintenance analysis.

Plaintiff's failure to provide the required basis and purpose is unsurprising, because its purpose is plainly not to evaluate compliance with the list-maintenance provisions of the NVRA or HAVA. Instead, this lawsuit is part of Plaintiff's nationwide effort to sweep up sensitive data of tens of millions of voters and use that data for opaque purposes, including taking over the states' statutory and constitutionally mandated roles in elections.

In stark contrast to previous, targeted demands under the CRA, USDOJ has made the same untailored request for sensitive voter data to at least 43 states and Washington, D.C., and thus far sued 23 other states, Washington, D.C., and two counties that have failed to immediately comply with its full demands. USDOJ has not attempted to show that it believes all 43 states and Washington, D.C. are violating the NVRA's and HAVA's list-maintenance provisions. "These nationwide efforts point at a larger pattern than the DOJ's stated purpose—one that involves collecting sensitive, personally identifying information of nearly every voter in America on an unprecedented scale and then utilizing that information in a completely different context than what the information was provided for." *Weber* Order at 8. Indeed, the widespread lack of justification demonstrates that USDOJ improperly seeks to use the CRA as an unlimited tool to compile and consolidate voter data and to expand USDOJ's role into election administration beyond constitutional limits, rather than to protect the right to vote. *See In re Gordon*, 218 F. Supp. at 827

16

("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued in such Federal elections."); *see also* Opp. to Mot. to Compel at 6-7. The CRA's statement-of-basis-and-purpose requirements protect against this overreach.

## III.    Vermont law prevents the disclosure of this sensitive voter data.

Even if Plaintiff sufficiently stated a basis and purpose for seeking the unredacted voter file under the CRA for potential violations of the NVRA's or HAVA's list-maintenance requirements, Vermont's voter protection laws prevent disclosure of the personally identifying information at issue, and no federal law preempts those laws. 17 V.S.A. § 2154.

Vermont law provides that "[a] registered voter's month and day of birth, driver's license or nondriver identification number, telephone number, e-mail address, and the last four digits of his or her Social Security number shall be kept confidential and are exempt from public inspection and copying under the Public Records Act." 17 V.S.A. § 2154(b)(1). The law further provides that "any officer, employee, agent, or independent contractor of a public agency shall not knowingly disclose a copy of all of the statewide voter checklist, a municipality's portion of the statewide voter checklist, or any other municipal voter checklist . . . to a federal agency or commission or to a person acting on behalf of a foreign government or of such a federal entity for the purpose of:" "registration of a voter based on his or her information maintained in the checklist; publicly disclosing a voter's information maintained in the checklist; or comparing a voter's information maintained in the checklist to personally identifying information contained in other federal or state databases." 17 V.S.A. § 2154(b)(2).

Secretary Copeland Hanzas specifically invoked 17 V.S.A. § 2154(b) in her response to Plaintiff's September 8 letter, explaining that "[w]ithout a commitment from DOJ that the unredacted [voter registration list] will not be used for any of these prohibited purposes, I am not

able to provide the requested information due to Vermont state law." ECF No. 2-4 at 5. Rather than provide a commitment that the requested sensitive voter information would not be used for these prohibited purposes, Plaintiff filed this lawsuit.

Plaintiff does not argue that HAVA preempts state privacy, nor could it: HAVA lacks a public disclosure provision. And courts have recognized that the NVRA and state privacy laws operate together where such state privacy laws require minimal redaction of sensitive personal identifiers, while still requiring disclosure of the underlying records. *See Weber* Order at 22; *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 339-40 (4th Cir. 2012); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 265-66 (4th Cir. 2021). The NVRA's coexistence with state privacy laws is another way that the law balances its objectives of encouraging participation and protecting the integrity of the electoral system. Instead of displacing state protections, those laws operate in concert with the NVRA as a "single procedural scheme," ensuring that the Attorney General and private litigants have the data required to enforce the Act, while simultaneously protecting voters' privacy interests. *See Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012).

Vermont laws preventing disclosure of sensitive information do not frustrate the NVRA's purpose. Instead, those privacy laws reinforce the boundaries of public inspection articulated by the courts and the Attorney General. *See id.*; Brief for the United States as Amicus Curiae, *Public Interest Legal Foundation, Inc. v. Bellows*, No. 23-1361, 2023 WL 4882397, at *28 (1st Cir. July 25, 2023) (arguing that state law limits on voter information are not preempted when they affect uses that "would not further the NVRA's purposes," including "bans on disseminating personal data."). Thus, Vermont's privacy laws are not preempted by the NVRA and, because Plaintiff's purported need for the unredacted voter file is to assess NVRA compliance, prevent Plaintiff from

accessing the sensitive voter information it seeks through this litigation. *See Atlas Data Priv. Corp.*

*v. We Inform, LLC*, No. 24-cv-4037, 2025 WL 2444153, at *2-3 (D.N.J. Aug. 25, 2025) (state law

limiting disclosure of personal information not preempted by NVRA).

**CONCLUSION**

For the reasons stated above, Intervenor Defendant VPIRG asks that the Court grant this

motion to dismiss the complaint because Plaintiff has failed to state a claim under the CRA.

Dated: January 20th, 2026                                  Respectfully submitted,

*/s/ Kate Hamilton*
Kate Hamilton*
Brent Ferguson*
Daniel S. Lenz*
Sejal Jhaveri*
Renata O'Donnell*
Alexis Grady*
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
khamilton@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
agrady@campaignlegalcenter.org

*/s/ Anthony Iarrapino*
Anthony Iarrapino
Wilschek Iarrapino Law Office, PLLC
35 Elm St., Ste. 200
Montpelier, VT 05602
Tel: (802) 522-2802
anthony@ilovt.net

Maura Eileen O'Connor **
Brennan Center for Justice

at NYU School of Law
777 6th St. NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew Garber**
Brennan Center for Justice
at NYU School of Law
120 Broadway, Ste. 1750
Tel: (646) 292-8310
Fax: (212) 463-7308
garbera@brennan.law.nyu.edu


*Admitted pro hac vice*
**Pro hac vice Applications Forthcoming*

*Counsel for Intervenor-Defendant Vermont Public Interest Research Group*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 20th day of January, 2026, I caused to be served a copy of the above

document on all counsel of record and parties via the ECF system.

/s/ *Kate Hamilton*
Kate Hamilton
