IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>SARAH COPELAND HANZAS, in her official capacity as the Secretary of State of Vermont,<br><br>*Defendant*. | Case No. 2-25-cv-00903-MKL |

### VERMONT PUBLIC INTEREST RESEARCH GROUP'S OPPOSITION TO THE MOTION TO COMPEL PRODUCTION OF RECORDS PURSUANT TO 52 U.S.C. § 20701, *et seq*.

### INTRODUCTION

Plaintiff the United States has undertaken a widespread effort to amass voters' sensitive data from almost every state in the country. Vermont is one of 23 states, plus the District of Columbia, that Plaintiff has sued over their refusals to produce unredacted voter rolls, including driver's license numbers and social security numbers. Plaintiff's attempt to circumvent the traditional protections of litigation and the Federal Rules of Civil Procedure (FRCP) to obtain its sole remedy through this Motion to Compel Production of Records Pursuant to 52 U.S.C. § 20701 *et seq.*, ECF No. 2 (Motion to Compel) should be denied in full. Rather than use its authority to safeguard the right to vote, the United States has chosen to file this litigation and this motion in an attempt to take over the state's statutorily mandated and constitutionally protected role in elections.

### BACKGROUND AND PROCEDURAL HISTORY

In the summer of 2025, Plaintiff sent letters to election officials in dozens of states, including Vermont, demanding production of their statewide voter registration lists, including

1

sensitive information that is not part of the public voter file. The United States Department of Justice (USDOJ) wrote to Secretary of State Copeland Hanzas on September 8, 2025, demanding an electronic copy of Vermont's statewide voter registration list containing "all fields, which include the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number." Complaint, ECF No. 1 ¶¶ 19-20. The letter invoked the Civil Rights Act (CRA), the National Voter Registration Act (NVRA), and the Help America Vote Act (HAVA). *Id.* ¶ 20. On September 22, 2025, Secretary Copeland Hanzas declined to provide the non-public statewide voter registration list—which includes confidential voter information—without assurances that USDOJ would comply with the Privacy Act of 1974, the E-Government Act, and Vermont law. *Id.* ¶ 25. USDOJ never responded to Secretary Copeland Hanzas's conditions.

Plaintiff filed this suit on December 1, 2025, alleging only one claim: that Defendant has violated the CRA. ECF No. 1. It also moved to compel Vermont to provide its full statewide voter registration list pursuant to the same statute. Memorandum in Support of Motion to Compel (Motion to Compel Br.) ECF No. 2-2.

**ARGUMENT**

**I.      The Motion to Compel Production of Records Is Procedurally Improper**

Plaintiff tries to shoehorn a dispositive motion into this Motion to Compel without affording either the Court or the parties any opportunities to develop the legal and factual issues in this litigation. Its attempt to use the CRA to create this procedural oddity fails for three reasons: (1) the text of the CRA, under which Plaintiff brings its case, does not authorize this process, (2) current rules of civil procedure and relevant precedent dictate that this Court conduct substantive

review of Plaintiff's request before granting the ultimate relief sought in the complaint, and (3) Plaintiff cherry picks quotes from one 1962 case that do not justify this extraordinary process.

*First*, the language of the CRA does not authorize a rushed proceeding outside the bounds of the FRCP. The CRA provides only that a district court "shall have jurisdiction by *appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). Nothing in the statute suggests that a Motion to Compel based exclusively on Plaintiff's representations and without the opportunity to inquire into the nature of its request is the appropriate process, especially given that Plaintiff's argument would make this Court's review a mere "rubber stamp" of their requests. *See* Motion to Compel Br. at 9; *but see* Order Granting Defendant's Motion to Dismiss and Intervenors' Motions to Dismiss, at 13, *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Jan. 15, 2026) (finding that "[n]othing in Title III requires a special statutory proceeding or any abbreviated procedures") (hereinafter *Weber* Order); *United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995) ("[A] district court is not a 'rubber stamp' for agency demands for the production of information."). The Federal Rules "govern the procedure in all civil actions and proceedings in the United States district courts" with limited exceptions not applicable here. Fed. R. Civ. P. 1; *see also* 28 U.S.C. § 2072(b) (authorizing FRCP and providing that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect"). The FRCP were promulgated to "secure the just, speedy, and inexpensive determination of every action," Fed. R. Civ. P. 1, "consistent with fairness to the parties." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). The CRA does not provide Plaintiff with *carte blanche* to ignore the rules as it wishes. To the contrary, it requires "appropriate process." 52 U.S.C. § 20705.

*Second*, appropriate processes require meaningful judicial review including through compliance with the procedural requirements of the FRCP. *See Weber* Order at 13 (holding that "appropriate process" requires application of the FRCP which allows the Court to determine whether Plaintiff has met the CRA's statutory requirements). Only four years after Congress enacted the CRA, including its reference to "appropriate process," but after many of the decisions on which Plaintiff relies, the Supreme Court held that a statute also using the phrase "appropriate process" required application of the procedures mandated in the FRCP. *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964) ("Because § 7604(a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply."). Courts have applied *Powell* to federal agency demands for records. *See Markwood*, 48 F.3d 969. At a minimum, Plaintiff's demand under the CRA must satisfy the basic administrative requirements outlined in the statute to obtain records. *See, e.g.*, *id*. at 975-76, 978 (analyzing enforceability of "civil investigative demand" under federal False Claims Act). Plaintiff has not met the statutory prerequisites under the CRA, because it has not provided a statement of basis and purpose for its demand, *see infra* Section II, and should not be allowed to abuse this procedural device to circumvent judicial analysis of that failure.

*Third*, Plaintiff relies extensively on *Kennedy v. Lynd*, a Fifth Circuit opinion from 1962, *see* Motion to Compel Br. at 12-13, which contains a single line suggesting that the CRA authorizes a special statutory proceeding "*comparable to* the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency." 306 F.2d 222, 225 (5th Cir. 1962) (emphasis added). But *Lynd* does not suggest that even such a "comparable" proceeding is warranted in all CRA cases, including where there is no administrative order. *See id.* And *Lynd* was the product of a different era, shortly after the enactment of the CRA, during which "some

4

southern officials, in order to hamper investigations by the Department of Justice and the Civil Rights Commission, had been destroying or impounding voting and registration records." Daniel M. Berman, *A Bill Becomes a Law: Congress Enacts Civil Rights Legislation* 9 (2d ed. 1966); *see also* Report of U.S. Comm'n on Civil Rights 1963, at 16. In the intervening 60 years, the Supreme Court has clarified that normal procedure attaches when a federal agency seeks to compel the production of records. *See Becker v. United States*, 451 U.S. 1306, 1308 (1981); *Powell*, 379 U.S. at 57-58; *see also, e.g.*, *United States v. Will*, 671 F.2d 963, 966 (6th Cir. 1982) (allowing summons recipient opportunity to rebut government's prima facie case).

Plaintiff's discussion of *Lynd* is tellingly selective. For example, Plaintiff never addresses the Court's statement that "Title III provides 'an effective means whereby preliminary investigations of registration practices can be made to determine whether or not such practices conform to *constitutional* principles.'" *Lynd*, 306 F.2d at 225 (emphasis added) (internal citation omitted). Plaintiff does not argue that it is attempting to use *Lynd*'s process to effectuate the constitution's guarantee of voting rights but, rather, that it needs the documents to engage in list maintenance required by federal statute. Similarly, *Lynd* also directs that "if the respondent-custodian opposes the grant of such relief," the Court should set a "suitable hearing" on the matter. *Lynd*, 306 F.2d at 226. Thus, at minimum, this Court should decline Plaintiff's request to decide this matter based on Plaintiff's bare representations, without the benefit of discovery, and set an evidentiary hearing for this Motion to Compel. In the absence of anything more instructive than a case from over 60 years ago based on fundamentally different facts and with no controlling effect in this Circuit, the Court should not wholly dispense with the process otherwise applicable under the Federal Rules. *See* Fed. R. Civ. P. 1.

Moreover, if the Court accedes to Plaintiff's extraordinary procedural demand, it should exercise its judicial authority to ensure the demand is proper and legally supported. Even *Lynd* recognized that under the CRA, a court "exercises judicial judgment. It does not confer or withhold a favor.'" *Lynd*, 306 F.2d at 225 (quoting *Tutun v. United States*, 270 U.S. 568, 578 (1926)). That type of judgment includes an analysis of whether the agency made the request for an improper purpose or in bad faith. *See In re Tax Liabilities of John Does*, 688 F.2d 144, 147-48 (2d Cir. 1982) (In the IRS summons context, Government must establish "legitimate purpose," "relevan[ce] to that purpose," and that the Government followed the requisite process) (citation modified); *see also Sugarloaf Funding, LLC v. U.S. Dep't of the Treasury*, 584 F.3d 340, 345 (1st Cir. 2009) (a court's role is to ensure the government is using its authority "in good faith and in compliance with the law") (internal citation omitted); *United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 166-67 (3d Cir. 1986) ("[I]f a subpoena is issued for an improper purpose . . . , its enforcement constitutes an abuse of the court's process."). Given the extraordinary nature and breadth of Plaintiff's demands in this case and parallel litigation playing out across the country, the Court should exercise its judgment to ensure that Plaintiff is complying with the law and that its requests are made in good faith.

## II.     Plaintiff Has Failed to Meet Its Statutory Requirements Under the CRA

A federal agency's power to enforce demands for records "is created solely by statute." *Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988). Therefore, to enforce such a demand, the agency must comply with the terms of the applicable law. *See CFPB v. Accrediting Council for Indep. Colls. and Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) (requiring compliance with the statute that controls the CFPB's investigative demands). Section 303 of the CRA requires the Attorney General to provide "a statement of the basis and the purpose" for records she demands.

52 U.S.C. § 20703; *see also Weber* Order at 14. The plain language of the statute suggests that the "basis" is the statement describing the Attorney General's belief that federal civil rights law has been violated, and the "purpose" is the statement that explains how the requested record would help determine if a violation occurred. *See Basis*, *Black's Law Dictionary* 161 (8th ed. 2004) ("an underlying condition"); *Purpose*, *Black's Law Dictionary* 161 (8th ed. 2004) ("An objective, goal, or end"). At a minimum, the "basis" requirement compels the Attorney General to describe information in her possession that tends to show the law has been violated. *See Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *United States v. Lynd*, 301 F.2d 818 at 822-23 (5th Cir. 1962) (requiring sufficient allegations that "there are reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights in a given county"); *see also Weber* Order at 15 ("In the past, the DOJ has routinely stated both a purpose and basis related to alleged civil rights violations and how their requested records would specifically assist in their investigation.")

      The basis and purpose requirements of the CRA are safeguards that ensure that the statute cannot be used as a tool to obtain records for unrelated reasons, or for no reason at all. *See Weber* Order at 16 ("The requirement that the Attorney General state their purpose and basis is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute."). For example, the United States could not use the CRA to obtain voting records because it wanted to verify taxpayer addresses. *See In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) ("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued in such Federal elections after May 6, 1960."). Neither the Court nor Plaintiff may simply dispense with the statutory requirements that Plaintiff establish its basis and purpose for the demand, and Plaintiff's Complaint and Motion to Compel fail to do so. Even accepting that USDOJ need not *prove* a violation, the statute requires

the Attorney General to explain *some* factual predicate as to why the demand is warranted. Courts apply similar safeguards in analogous situations where agencies seek to compel the production of records. In the related context of administrative subpoenas, courts have found that the test of judicial enforcement of an administrative subpoena includes an evaluation of whether the investigation is "conducted pursuant to a legitimate purpose." *Nat'l Lab. Rels. Bd. v. Am. Med. Response, Inc.*, 438 F.3d 188, 192 (2d Cir. 2006) (internal citation omitted); *In re Tax Liabilities of John Does*, 688 F.2d at 147-48; *see also United States v. Clarke*, 573 U.S. 248, 254 (2014) (taxpayer entitled to examine IRS agent upon showing of an inference of bad faith.). Such investigations cannot be "unduly burdensome or unreasonably broad" and courts should "inquire into allegations that an agency is using an administrative subpoena for an improper purpose." *CFPB*, 854 F.3d at 689 (internal citation omitted).

USDOJ's September 8 letter does not include a statement of basis and does not articulate a sufficient purpose as required by the CRA. The letter just says that the "Attorney General is requesting an electronic copy of Vermont's complete and current VRL. The purpose of this request is to ascertain Vermont's compliance with the list-maintenance requirements of the NVRA and HAVA." ECF No. 2-3. Nothing in the letter contains a statement of basis explaining why USDOJ believes Vermont may be failing to comply with the NVRA or HAVA. Plaintiff's Complaint alleges the letter was issued due to missing EAVS data, but neither the letter nor the Complaint identify how that allegation creates a belief that there are any potential issues with Vermont's list-maintenance procedures. Secretary Copeland Hanzas raised issues as to the legal basis of this request and assured the DOJ that Vermont was in compliance with federal law. ECF No. 2-4. Plaintiff did not provide additional information or even address her response. Instead, Plaintiff sued, demonstrating that this lawsuit, one of 26 similar lawsuits, is the exact type of fishing

expedition prohibited by law. *See In re Gordon*, 218 F. Supp. at 827 ("It is [likewise] a mistaken view to assume that such investigation of such records is an unlimited discovery device which may be employed and used without restraint."); s*ee also State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("Title III provides—if properly applied and enforced—an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles."), *aff'd sub nom.*, *Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961).[1]

Plaintiff's statement of purpose is also insufficient, because an unredacted voter file with sensitive voter data is not necessary for the United States to assess Vermont's compliance with its statutory responsibilities under the NVRA or HAVA. *See Weber* Order at 15. The NVRA requires states to implement "a *general program* that makes a *reasonable effort* to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4) (emphasis added); *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 787 (2018) (Thomas, J., concurring). The Supreme Court has "recognized that 'States take a variety of approaches' in complying with the NVRA's requirements." *Common Cause/New York v. Brehm*, 432 F. Supp. 3d 285, 317 (S.D.N.Y. 2020) (citing *Husted*, 584 U.S. at 762). "Congress did not give any further guidance on what a 'reasonable effort' must look like. Congress did not, for example, enumerate what steps a state should take to come into compliance with this standard." *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624 (6th Cir. 2025). As the Eighth Circuit held, this phrase represents "some middle ground" in delineating the state's obligations under the NVRA. *United States v. Missouri*, 535 F.3d 844, 850-851 (8th Cir. 2008). "In other words, the NVRA sets the floor for how states conduct list

---

[1] Even in situations in which USDOJ properly invokes Title III and provides a sufficient statement of basis and purpose such that it is entitled to records, the CRA imposes limitations on how those records are to be used. *See* 52 U.S.C. § 20704.

9

maintenance; states have discretion to choose how precisely to follow its requirements." *Common Cause/New York*, 432 F. Supp. 3d at 317. The Attorney General does not explain why she needs access to driver's license numbers, other DMV identifiers, and social security numbers to evaluate whether Vermont's general list-maintenance programs meet the standard of "reasonable effort." Plaintiff argues that it needs this list to ensure "that matches to identify voters are more accurate and complete." *See* Motion to Compel Br. at 10. Such a level of specificity does not fall under the federal government's duty to evaluate a state's general list-maintenance procedures. It is an attempt to usurp the State's role of deciding how to implement its general program—which cannot be a valid purpose under the CRA.

Moreover, a static, unredacted copy of Vermont's voter registration list is not necessary to determine whether Vermont is complying with HAVA's list-maintenance requirements because a static list does not explain the procedures by which Vermont maintains the list. Secretary Copeland Hanzas similarly asked USDOJ how a copy of the unredacted statewide voter registration list would assist assessing in compliance with HAVA, and USDOJ failed to respond to her question. *See* ECF No. 2-4 at 3. In its Motion to Compel, Plaintiff now argues that unredacted voter files could be used to ensure that duplicate names are eliminated from the statewide list. *See* Motion to Compel Br. at 10. But, again, Plaintiff's limited role does not require it to engage in list maintenance, but rather to make sure the States–that are statutorily obligated to conduct list maintenance–do so in a manner compliant with federal laws, including anti-discrimination provisions. Therefore, Plaintiff's stated purpose—to conduct its own list maintenance under the NVRA and HAVA—is not sufficient under the CRA.

Plaintiff's failure to provide the required basis and purpose is unsurprising, because its purpose is plainly not to evaluate compliance with the general list-maintenance provisions of the

NVRA or HAVA, but to sweep up sensitive data of tens of millions of voters that can be used for any number of undisclosed and opaque purposes including taking over the State's statutory and constitutionally mandated role in elections. *See Weber* Order at 17-18. In stark contrast to previous, targeted demands under the CRA, USDOJ has made the same request for sensitive voter data to at least 43 states and Washington, D.C., and thus far sued 22 other states, Washington, D.C., and two counties that have failed to immediately comply with its full demands. Nor has USDOJ attempted to show that it believes these 43 states and Washington, D.C. are violating the NVRA's and HAVA's list-maintenance provisions. The widespread lack of justification demonstrates again that USDOJ improperly seeks to abuse the CRA as an unlimited tool to compile and consolidate voter data and to expand USDOJ's role into election administration beyond what's envisioned in the Constitution, rather than to protect the right to vote. *See Weber* Order at 19 ("If the DOJ wants to instead use these statutes for more than their stated purpose, circumventing the authority granted to them by Congress, it cannot do so under the guise of a pretextual investigative purpose."); *In re Gordon*, 218 F. Supp. at 827 ("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued in such Federal elections after May 6, 1960.").

Plaintiff's plans have emerged from other sources, including a proposed Memorandum of Understanding (MOU) the Justice Department asked Colorado, and other states, to sign. *See* Proposed "Confidential Memorandum of Understanding" sent to Colorado at 5, https://www.documentcloud.org/documents/26330926-vrldata-sharing-agreement-doj-co/; *see also* Jonathan Shorman, *Trump's DOJ Offers States Confidential Deal to Remove Voters Flagged by Feds*, Stateline (Dec. 18, 2025), https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/. The MOU describes USDOJ's

attempted takeover of states' exclusive authority to maintain their voter rolls and determine who should be removed from the rolls due to ineligibility. It provides that USDOJ will conduct an "analysis and assessment" of the state's voter rolls and instruct the state to remove voters USDOJ identifies.[2] MOU at 5. In announcing lawsuits against four more states earlier this month, USDOJ confirmed its goal was not to review list maintenance procedures, but to expand federal control over elections and target voters for removal, stating: "At this Department of Justice, we will not permit states to jeopardize the integrity and effectiveness of elections by refusing to abide by our federal elections laws. If states will not fulfill their duty to protect the integrity of the ballot, we will."[3] This federal takeover of list maintenance would run contrary to the constitutional and the statutory frameworks for elections, which provide that Congress and the states make the law, and state and local governments run elections, including registering voters and maintaining voter rolls.[4]

Other purposes for the vast data-collection exercise Plaintiff is undertaking apparently have nothing to do with the statutes relied upon in the Complaint or Motion to Compel. According to one USDOJ lawyer, Civil Rights Division leadership demanded that USDOJ obtain "states' voter rolls, by suing them if necessary" to "go through all the data and compare it to the Department of Homeland Security data and Social Security data" and search for "immigrants that have registered to vote" even though "[t]here was no pre-existing evidence" that unlawful immigrant voting is a

---

[2] The MOU provides that removals must take place within 45 days of notification from USDOJ, which—for any voters flagged for removal based on having moved—would violate Section 8(d) of the NVRA. 52 U.S.C. § 20507(d).
[3] Press Release, Off. of Pub. Affs., U.S. Dep't of Just., Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws (Dec. 12, 2025), https://perma.cc/2N9T-YASF.
[4] Further, the proposed MOU does not limit USDOJ's ability to use states' data and expressly permits USDOJ to provide the data to contractors. MOU at 6-7; *but see* 52 U.S.C. § 20704.

problem.[5] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html. Moreover, Plaintiff's demands for private voter data persist despite reports that efforts to use the data for voter verification have resulted in erroneous removals of eligible U.S. citizens from state voter rolls. Alexandra Berzon & Nick Corasaniti, *Initial Review Finds No Widespread Illegal Voting by Migrants, Puncturing a Trump Claim*, N.Y. Times (Jan. 14, 2026), https://www.nytimes.com/2026/01/14/us/politics/noncitizen-voters-save-tool.html. The Department of Homeland Security confirmed that it is receiving information from USDOJ, and the information exchange is being done "to scrub aliens from voter rolls."[6] And Plaintiff's efforts in this case, and the 22 similar cases against other states and Washington, D.C., are part of a larger program of the federal government to gather and use vast swaths of data, notwithstanding laws to the contrary. *See Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, No. 1:25-cv-00457-CKK, 2025 WL 3251044, at *2 (D.D.C. Nov. 21, 2025); *see also* Hamed Aleaziz, *Immigration Agents Are Using Air Passenger Data for Deportation Effort*, N.Y. Times (Dec. 12, 2025), https://www.nytimes.com/2025/12/12/us/politics/immigration-tsa-passenger-data.html.

Given the unprecedented nature of the Plaintiff's actions in this case, and across more than 43 states in which it has demanded unredacted voter rolls, should the Court decline to dismiss the Complaint, it should nonetheless permit some amount of discovery into any purported statement of basis and purpose before it considers this Motion to Compel, consistent with the FRCP.

---

[5] To the extent that USDOJ is not engaging in an investigation, as it purports to be doing to ensure compliance with the NVRA and HAVA, and is instead engaging in data collection for any other purpose, USDOJ must comply with the Paperwork Reduction Act, *see* 44 U.S.C. §§ 3506(c), 3507(a), and the Privacy Act, *see* 5 U.S.C. § 552a.

[6] Jonathan Shorman, *DOJ is sharing state voter roll lists with Homeland Security*, Colo. Newsline (Sep. 15, 2025), https://coloradonewsline.com/2025/09/15/repub/doj-voter-roll-homeland-security/.

Dated: January 20th, 2026                                    Respectfully submitted,

/s/ *Sejal Jhaveri*
Sejal Jhaveri\*
Brent Ferguson\*
Daniel S. Lenz\*
Renata O'Donnell\*
Kate Hamilton\*
Alexis Grady\*
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
khamilton@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
agrady@campaignlegalcenter.org

/s/ *Anthony Iarrapino*
Anthony Iarrapino
Wilschek Iarrapino Law Office, PLLC
35 Elm St., Ste. 200
Montpelier, VT 05602
Tel: (802) 522-2802
anthony@ilovt.net

Maura Eileen O'Connor \*\*
Brennan Center for Justice
at NYU School of Law
777 6th St. NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew Garber\*\*
Brennan Center for Justice
at NYU School of Law
120 Broadway, Ste. 1750
Tel: (646) 292-8310
Fax: (212) 463-7308
garbera@brennan.law.nyu.edu

*\* Admitted pro hac vice*
*\*\*Pro hac vice Applications Forthcoming*

*Counsel for Intervenor-Defendant Vermont Public Interest Research Group*

## CERTIFICATE OF SERVICE

  I, Sejal Jhaveri, do hereby certify that on this 20th day of January, 2026, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities.

<u>/s/ *Sejal Jhaveri*</u>
Sejal Jhaveri
