U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 JAN 29 PM 3:02

CLERK

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>SARAH COPELAND HANZAS, in her official capacity as the Secretary of Vermont, et al.<br><br>Defendant. | Case No. 2:25-cv-00903-MKL<br><br>**COMBINED REPLY TO DEFENDANTS' OPPOSITIONS TO MOTION TO COMPEL** |

**COMBINED REPLY TO DEFENDANTS' OPPOSITIONS TO MOTION TO COMPEL**

In response to the Oppositions of the Defendants the United States replies as follows:

## THE ATTORNEY GENERAL IS ENTITLED TO SUMMARY PRODUCTION OF THE SOUGHT RECORDS

Defendants repeat what the Fifth Circuit has described as "a basic misconception... concerning a Title III proceeding." *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962) . The "chief purpose" of Title III "is to facilitate the investigation of the records *before suit is filed.*" *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam) (emphasis added). "[T]he function sought to be exercised by the Attorney General is... purely investigative," *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960), to evaluate "possible violations of a Federal statute," *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) ("*Coleman II*").

Title III enables the Attorney General to determine whether a federal lawsuit "should be instituted" and "to obtain evidence for use in such cases if and when filed." *Lynd*, 306 F.2d at 228. Contrary to what the Defendants argue, no factual allegations of a substantive violation of federal law are required. Instead, "Congress has specifically committed the investigative responsibility to the Attorney General and has equipped [her] with machinery thought suitable for the effective fulfillment of that obligation" through Title III of the CRA.[1] *Id.* at 230. That approach makes sense. The United States cannot be expected to effectively enforce federal election laws such as HAVA and the NVRA if the Attorney General is required to allege facts from federal election records that state officers of election have denied to her. *See id.* at 227 (the Attorney General's "right to records

---

[1] Title III invests the Attorney General with a power akin to a grand jury which "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Bisceglia*, 420 U.S. 141, 148 (1975).

1

does not require that [she] show [she] could win without them").

In *Lynd*, the Court explicitly stated that "there is no place for any other procedural device or maneuver — either before or during any hearing of the application — to ascertain the factual support for or the sufficiency of the Attorney General's statement of the basis and purpose therefore as set forth in the written demand." *Lynd* at 226; *cf. United States v. Powell* 379 U.S. 48 (1964) (analyzing the process by which an IRS administrative subpoena can be enforced under a different set of statutes not applicable to the CRA).

The Attorney General's filing of an application for an order under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Lynd.* at 225. It is "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Id.* In structuring the statute this way, Congress has indicated that the Federal Rules of Civil Procedure are inapplicable. "Since it is a special statutory proceeding, it does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure." *Id.* at 225-26; *see also Gallion*, 187 F. Supp. at 854 (comparing applications to compel to actions by the Securities and Exchange Commission in which procedural rules "are made specifically inapplicable to investigations"). The CRA differs from ordinary civil actions because its "chief purpose" is to facilitate *pre-suit* investigation. *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960). In stark contrast, "[t]he chief purpose of Rule 34... is to give a party litigant the right to have records produced *after* suit has been filed." *Id.* (emphasis added). To summarize, "[t]here is no place for any other procedural device or maneuver," in response to a CRA claim. *Lynd*, 306 F.2d at 226; *see also* Fed. R. Civ. P. 81 (summarizing other federal claims to which the Federal Rules of Civil Procedure do not apply).

The CRA restricts the Court to a "severely limited" inquiry: (1) did the Attorney General

2

make a written demand for federal election records stating the basis and purpose; (2) was that demand made to one or more "officer[s] of election" responsible for performing any act requisite to voting in federal elections including voter registration; (3) did the officer(s) of election fail or refuse to make the demanded federal election records "available for inspection, reproduction, and copying"; and (4) did the Attorney General make "a simple statement" to the Court that she satisfied the first three elements. *Lynd*, 306 F.2d at 225-26; *see also* 52 U.S.C. § 20703. All of the elements are met here. Vermont concedes that the Attorney General has stated a legal basis for the demand, Def. Opp. To Mot. To Compel, Doc. 36 at 6, and further concedes the Attorney General has stated her purpose, *Id.* at 7, but complains that there is no factual basis or legally relevant purpose. As discussed above, this is not the standard.

The demand is not a subpoena capable of being challenged in the normal course. The CRA does not grant the Attorney General mere subpoena power. Congress has in many instances granted various arms of the federal government subpoena power and knows how to do so when it wishes. *See e.g.* 26 U.S.C. § 7602; *Cf. Powell*, 379 U.S. 48. Here, however, Congress empowered the Attorney to make a "demand" for the records. 52 U.S.C. § 20703. Had Congress only granted subpoena power, the statute would say so. The word "subpoena" is nowhere to be found in the text of Title III, and the Court should not amend the statute to add it and diminish the power of the Attorney General, nor should the Court amend the procedures dictated by the CRA. "After all, only the words on the page constitute the law adopted by Congress and approved by the President." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 654-55 (2020).

**THE RECORDS DEMANDED ARE WITHIN THE SCOPE OF THE CRA**

The Defendants argue that the statewide voter registration list (SVRL) does not relate to voter registration. Def. Opp. To Mot. To Compel, Doc. 36 at 6. SVRLs are central to voter

3

registration practices, and federal oversight of those practices. The United States has previously requested SVRLs under Title III of the CRA for voter list maintenance purposes, and that data has been produced. For example, in two of those matters against Georgia and Texas, the United States obtained the SVRLs, including drivers' license numbers and SSN4s, to evaluate compliance with the NVRA, including that Act's list maintenance requirements.[2]

The data the United States has requested under the CRA is also the same that twenty-five states (including Vermont) and the District of Columbia routinely share through the Electronic Registration Information Center, ("ERIC"), to facilitate their compliance with federal list-maintenance requirements. ERIC, *ERIC Overview,* (Jan 29, 2026 9:49 AM), https://ericstates.org/; ERIC, Who We Are, (Jan 29, 2026 9:49 AM) https://ericstates.org/who-we-are/. ERIC is a private organization whose mission includes, among other things, the means "to assist states in improving the accuracy of America's voter rolls". ERIC, FAQ's [sic] (Jan. 26, 2026 9:49 AM), https://ericstates.org/faq/. According to ERIC's website, "Members submit dates of birth, driver's license/ID card numbers, and Social Security numbers to ERIC...." *Id.* "At least every 60 days, each member submits their voter registration data and licensing and identification data from their MVD [motor vehicle departments] to ERIC. ERIC refers to these data as Member Data. Data fields related to name, address, driver's license or state ID number, last four digits of social security number, date of birth, and activity date are required, if present. Members also submit information on current record status (e.g., is the record "active" or "cancelled"), phone number, and email address when available. These fields improve the quality of the data matching process." *Id.* List

---

[2] *See* Compl., *United States v. Georgia,* No. 1:06-cv-02442 (N.D. Ga. Oct. 12, 2006), doc. 1. The Court entered a consent decree in the Georgia case requiring production of the SVRL. *See Georgia, supra,* at Doc. 4 (filed Oct. 27, 2006). The Texas matter was resolved by a Memorandum of Understanding. *See* U.S. Dep't of Just., Mem. of Understanding between the United States and Texas (May 13, 2008), *available at* https://www.justice.gov/media/1173461/dl?inline (last visited Jan. 6, 2026). For the Court's convenience, the three documents are provided as Exhibits 1-3.

maintenance is an authorized enforcement activity, and Vermont's voter registration list is integral to that effort.

The plain text of the CRA allows the Attorney General to demand these records and nothing in the statute provides for a state to withhold them. Further, HAVA requires the SVRL be maintained electronically and what information must be included. It would therefore be illogical for the state to produce it in any other form. This is consistent with the CRA which provides for the reproduction or the records. *Cf. Greater Birmingham Ministries, Inc. v. Secretary of State for Ala.*, 105 F.4th 1324, 1332-33 (11th Cir. 2024) (holding a statute that only provides for "public inspection and where available, photocopying at a reasonable cost," of records does not include electronic reproduction.)

That case however was interpreting the public disclosure section of the NVRA that explicitly provides for "public inspection and, where available photocopying at a reasonable cost...", 52 U.S.C. § 20507(i), and is therefore not applicable. The Attorney General is not seeking records as a member of the public pursuant to the NVRA. The Attorney General is seeking records in her role as a federal officer who has been mandated by Congress to enforce the voting rights of all Americans pursuant to 52 U.S.C. § 20703. That statute requires the records be made available for "inspection, reproduction, and copying." Production of an electronic copy of the SVRL is consistent with the CRA.

### THE CRA PREEMPTS STATE PRIVACY LAWS

The Supreme Court has explained that the Elections

> "Clause is a default provision; it invests the States with responsibility for the mechanics of congressional elections ... but only so far as Congress declines to preempt state legislative choices .... Thus, it is well settled that the Elections Clause grants Congress 'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States. "

5

*Foster v. Love*, 522 U.S. 67, 69 (1997) (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 832-33 (1995)) (citations omitted). "[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." *Foster*, 522 U.S. at 69 (quoting *Ex Parte Siebold*, 100 U.S. 371, 384 (1879)); *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 7-9 & n.1 (2013) (discussing the breadth of the Elections Clause).

Congress enacted broad regulations over the conduct of federal elections in the three statutes at issue in this litigation. Title III of the CRA imposes a "sweeping" obligation on election officials to preserve and, on request, to produce registration records pertaining to federal elections. *Lynd*, 306 F.2d at 226. HAVA requires states to implement a computerized SVRL and establish "[m]inimum standard[s] for accuracy of State voter registration records." 52 U.S.C. § 21083(a)(4). Section 303 of HAVA mandates that every state "ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* Section 8(i) of the NVRA requires states to make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters...." 52 U.S.C. § 20507(i)(1). Only the United States, through the Attorney General, is authorized to compel production of records under Title III of the CRA and to enforce Section 303 of HAVA. *See* 52 U.S.C. §§ 20703, 20705 (CRA); 52 U.S.C. § 21111 (HAVA). The Attorney General likewise enforces the NVRA's requirement that all states maintain "accurate and current voter rolls" and remove ineligible voters in the conduct of federal elections. *See* 52 U.S.C. §§ 20510(a), 20507(b), 20507(a)(4). 52 U.S.C.

6

§ 20703 allows the Attorney General to demand voting related records from the states. The records sought by the Attorney General fall squarely within what the state has been mandated to provide by federal law. To the extent that any of the records sought cannot be produced as a result of state law is preempted. It would make no sense and render the CRA dead letter law, if a state under federal investigation could pass a law exempting it from federal scrutiny. Moreover, the plain language of Section 304 of the CRA prohibits the United States from "disclos[ing] any record or paper produced" pursuant to Title III, including "any reproduction or copy," except for narrow purposes including "the presentation of any case or proceeding before any court or grand jury." 52 U.S.C. § 20704. If the United States was only entitled to redacted information, then Section 304 would have no purpose. Section 304 contemplates that the United States will have sensitive information, which is why it limits the disclosure of that information and preempts state law to the contrary.

The Court should therefore summarily order Vermont to produce the demanded records.

DATED: January 29, 2026,        Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ROBERT J. KEENAN
Acting Deputy Assistant Attorney General
Civil Rights Division

/s/ Eric V. Neff[3]
ERIC V. NEFF
Acting Chief
Voting Section, Civil Rights Division
CHRISTOPHER J. GARDNER*
BRITTANY E. BENNETT*
Trial Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Eric.Neff@usdoj.gov
Email: Christopher.Gardner@usdoj.gov
Email: Brittany.Bennett@usdoj.gov

---

[3] The previously assigned Trial Attorney, David Vandenberg, is no longer with the Voting Section. The Voting Section does not have another attorney admitted in Vermont at this time. The Voting Section, in conjunction with the United States Attorney's Office, is in the process of getting substitute Trial Attorneys admitted into the District of Vermont. As that process proceeds, the United States requests of the Court leave to file this Reply under the Acting Chief's signature, so as not to create unnecessary delay in the litigation.

*Admissions pending.

CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, a true and correct copy of the foregoing document was served via email to all counsel of record.

/s/ Eric V. Neff

ERIC V. NEFF
CHRISTOPHER J. GARDNER*
BRITTANY E. BENNETT*
Trial Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Christopher.Gardner@usdoj.gov
Email: Brittany.Bennett@usdoj.gov

9