IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>SARAH COPELAND HANZAS, in her Official Capacity as Secretary of State for the State of Vermont,<br><br>Defendant(s). | Case Number: 2:25-cv-00903-MKL |

**DECLARATION OF ERIC NEFF IN SUPPORT OF THE UNITED STATES' MOTION TO COMPEL (DOC. 2) AND IN OPPOSITION TO MOTIONS TO DISMISS BY DEF. HANZAS (DOC. 37), INTERVENOR-DEF. VERMONT ALLIANCE FOR RETIRED AMERICANS ET AL. (DOC. 39), AND INTERVENOR-DEF. VERMONT PUBLIC INTEREST RESEARCH GROUP (DOC. 44)**

## **DECLARATION**

I, Eric Neff, declare, pursuant to 28 U.S.C. § 1746, that:

1. I am currently Acting Chief to the Voting Section within the Civil Rights Division of the United States Department of Justice. I am fully and personally familiar with the facts stated herein. I make this declaration in support of the United States' Motion to Compel the production of election records pursuant to the Civil Rights Act codified at 52 U.S.C. §§ 20701, *et seq*. (Doc. 2) and in opposition to Defendants' Motions to Dismiss (Docs. 37, 39 and 44), and to supplement the Declaration of Maureen Riordan dated December 1, 2025 (Doc. 2-1).

2. As stated in the correspondence dated September 8, 225 attached as Exhibit 1 to the Motion to Compel (Doc. 2-3) the United States has requested the federal election records that are the subject of this litigation for the limited purpose of evaluating Vermont's

compliance with the list maintenance provisions of the Help America Vote Act ("HAVA") and the National Voter Registration Act ("NVRA"), and, if appropriate, to bring an enforcement action.

3. HAVA requires that "an application for voter registration for an election for Federal office may not be accepted or processed by a State unless the application includes" the applicant's driver's license number or if that is unavailable, the last four digits of the Social Security number. 52 U.S.C. § 21083(a)(5)(A)(i). That information is necessary to identify duplicate registration records, registrants who have moved, registrants who have died, and those who are not eligible to vote in federal elections.

4. To ascertain whether a jurisdiction engages in practices that violate federal law (whether HAVA, the NVRA, the Voting Rights Act or any other one), the Attorney General needs to examine both applications to register to vote *and* the final voting rolls, including the electronic statewide voter registration list ("SVRL"), so as to assure herself that the applications are being properly processed and that reasonable and nondiscriminatory list maintenance efforts have been practiced.

5. Contrary to what Defendant-Intervenors contend through third-party hearsay, the records the United States is seeking to compel under the CRA are not intended "to create a nationwide voter list, an unprecedented scheme not authorized by any source of law." Vermont Alliance for Retired Americans, Richard Monterosso and Mary Andrews Resp. in Opp'n, Doc. 40 at 12. Rather, the records sought from Vermont are necessary to perform an individualized assessment of the State's efforts to comply with HAVA and the NVRA.

6. When the Civil Rights Division performs this individualized assessment, the State's SVRL is compartmentalized and maintained by the Civil Rights Division separately from the SVRL of any other State. The maintenance, use, and destruction of those records is in full compliance with the requirements in the CRA, Privacy Act, and all other federal laws governing the records.

7. The United States previously has pursued successful matters, including in litigation, to obtain statewide voter registration lists under Title III of the Civil Rights Act ("CRA").

8. For example, in two of those CRA matters against Georgia and Texas, the United States obtained the SVRLs, including drivers' license numbers and last four digits of the registrant's social security number, to evaluate compliance with the NVRA, including that Act's list maintenance requirements.

9. The Texas matter was resolved by a Memorandum of Understanding ("MOU") dated May 13, 2008, which required Texas to produce its SVRL to the United States. A true and accurate copy of the Texas MOU is attached as Exhibit 1.

10. A true and accurate copy of the Complaint filed in *United States v. Georgia*, Case No. 1:06-cv-02442-CC (N.D. Ga. filed Oct. 12, 2006), is attached as Exhibit 2.

11. On October 27, 2006, the Court entered a Consent Decree in *Georgia* requiring the state to produce its SVRL to the United States. A true and accurate copy of the *Georgia* Consent Decree is attached as Exhibit 3.

12. Recent enforcement efforts by the Attorney General demonstrate the need for federal scrutiny, as Congress contemplated in authorizing the Attorney General to bring enforcement actions under HAVA and the NVRA.

13. In 2025, North Carolina election officials admitted that the state "maintained and used a HAVA List that includes records that do not comply with the requirements for Federal elections under Section 303(a)(5)." *United States v. N. Carolina Bd. of Elections*, Case No. 5:25-cv-00283-M-RJ Consent J. & Order at 4 (E.D.N.C. Sept. 8, 2025). Specifically, the State's HAVA List included over one hundred thousand active voter records that were missing one of the identification numbers required by HAVA: the registrant's driver's license number, the last four numbers of the registrant's social security number, or a unique identifying number if the registrant had neither a driver's license nor a social security number. A true and accurate copy of the *North Carolina* Consent Judgment and Order is attached as Exhibit 4.

14. As a result of the Attorney General's enforcement action, North Carolina has reduced the number of voter records missing an identification number under HAVA from 103,329 to 70,709. *See N. Carolina Bd. of Elections*, Defs.' 2d Status R. at 2 (E.D.N.C. Jan. 30, 2026). A true and accurate copy of the Second Status Report from the *North Carolina* litigation is attached as Exhibit 5.

15. As stated in Maureen Riordan's Declaration, the United States reached out to Vermont to address any reasonable privacy concerns without impeding the Attorney General's authority to enforce federal law.

16. To that end, the United States has offered various states an MOU memorializing these requirements. As of February 17, 2026, nineteen states either have provided their SVRL or indicated they will be doing so including: thirteen states that have provided their SVRLs without any MOU; two states that have agreed to provide their SVRL under the terms of the MOU; and three states that are likely to provide the SVRLs soon.

17. An Initial Privacy Assessment (IPA) Determination was issued on October 12, 2012, showing that no Privacy Impact Assessment is required for the Justice Consolidated Office Network (JCON) system where personal identifying information associated with the United States' CRA demand is stored.

18. A true and accurate copy of cited excerpts from the report by the National Commission on Federal Election Reform (the Ford-Carter Commission), entitled "To Assure Pride and Confidence in the Electoral Process (Aug. 2001)," is attached as Exhibit 6.

19. A true and accurate copy of the Opinion issued in *United States v. Benson*, Case No. 1:25-cv-01148-HYJ-PJG (W.D. Mich. Feb. 10, 2026), is attached as Exhibit 7.

20. A true and accurate copy of the Order issued in *United States v. Oregon*, Case No. 6:25-cv-01666-MTK (D. Or. Feb. 5, 2026), is attached as Exhibit 8.

21. A true and accurate copy of the Order issued in *United States v. Weber*, Case No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Jan. 15, 2026), is attached as Exhibit 9.

I declare under the penalty of perjury that the above statements are true and correct. Executed on February 17, 2026.

Dated: February 17, 2026, at Washington, D.C.

/s/*Eric Neff*

Eric Neff