# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                       Plaintiff,<br><br>      v.<br><br>SARAH COPELAND HANZAS, in her official capacity as Secretary of State of the State of Vermont,<br><br>                       Defendant. | Case No. 2:25-cv-00903 |

## **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

The United States bases its opposition on a single, sweeping premise: that Title III of the Civil Rights Act of 1960 creates a one-of-a-kind investigative tool so unconstrained that courts cannot review it, states cannot question it, and no other law can limit it. None of those assertions is correct. Nor, in any event, does the United States' threadbare reference to other federal statutes justify the sweeping disclosure it seeks. Instead, Title III entitles DOJ only to in-person inspection of voter-generated registration materials, and requires DOJ to state a valid factual basis and civil rights-related purpose for its demand. DOJ's demand letter to Vermont fails on every count. The Court should dismiss the United States' Complaint for failure to state a claim.

## ARGUMENT

**I.    The Federal Rules of Civil Procedure Apply and the Court can and must examine the sufficiency of the United States' request.**

The United States again argues that, despite having filed a civil complaint, the Federal Rules of Civil Procedure do not apply and the Court therefore cannot consider Defendant's motions to dismiss. But no court has adopted such a sweeping interpretation of Title III.

The United States chiefly relies on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). This Court should not follow *Lynd*, whose reasoning has been abrogated by more than seventy years of

intervening case law. *See* Def.'s Opp. to Mot. to Compel at 4-5 (ECF No. 36). But even *Lynd*—which represented the high-water mark for the unbridled investigative authority the United States now claims—recognized that relief under Title III could issue only after a hearing at which the custodian can object to the propriety of DOJ's demand. 306 F.2d at 226. While *Lynd* construed § 20703 to prohibit courts from assessing whether the United States's stated basis provided a "factual foundation" that would support a civil rights investigation, nothing in *Lynd* suggested that a court must compel production when, as here, DOJ fails to state any factual basis at all. *Id.* In fact, *Lynd* acknowledged that whether a demand falls within § 20703's scope is "of course" open for the Court's determination. *Id.*

The United States misstates the holding in *United States v. Benson*, Case No. 1:25-cv-01148 (W.D. Mich. Feb. 10, 2026) regarding the process of enforcing or opposing a request for records under the Civil Rights Act (CRA). That court did construe the request "as a form of administrative subpoena." *Id.* at 14. But contrary to the United States' assertion—and consistent with the plain language of the federal rules and Supreme Court precedent—the *Benson* court nonetheless concluded that "the Federal Rules of Civil Procedure generally 'apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute." *Id.* (citing Fed. R. Civ. P. 81(a)(5)); *see also United States v. Powell*, 379 U.S. 48, 58 n.18 (1964) (concluding that in a proceeding under a statute requiring production without specifying the procedure to be followed, "the Federal Rules of Civil Procedure apply"). The court in *Benson* went on to explain that while some aspects of the civil rules, such as discovery, may be limited or not apply in a proceeding to enforce a subpoena, the subject of the subpoena nonetheless retains the ability to object to the subpoena and have a hearing. Here, because the United States' request is not justified by the statute on

which it purports to rely, the proper answer to the complaint, even if construed as a subpoena, is a motion to dismiss it.

Nothing in *Powell* directs a different result. The United States attempts to distinguish *Powell* by noting that while the statute at issue there forbid the government from subjecting individuals to "'unnecessary examination or investigations' . . . no similar language limits the Attorney General's authority to compel records under the CRA." Pl.'s Opp'n at 10 (ECF No. 58) (quoting *Powell*, 379 U.S. at 52–53). That is incorrect, and illustrates the fundamental flaw in the United States' argument: the CRA *does* limit DOJ's authority to compel documents by requiring that DOJ explain "the basis and the purpose" for its demand. 52 U.S.C. § 20703.

To the extent *Benson* offers some support to the United States' position here, it is an outlier. The two other cases to have addressed whether the Federal Rules of Civil Procedure apply to actions under Title III both flatly concluded that the Rules *do* govern. *See* Order at 13 (ECF No. 128), *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Jan. 15, 2026); Order at 14-15 (ECF No. 73), *United States v. Oregon*, No. 6:25-CV-01666 (D. Or. Feb. 5, 2026). This Court should do the same.

Finally, the United States' insistence that the Federal Rules of Civil Procedure do not apply to this case cannot be squared with the United States' own decision to file this case as a civil action. *See generally* Compl. (ECF No. 1). If the United States wanted to try to litigate this case as something other than a normal civil action subject to the FRCP, it should have filed a petition to enforce its investigative demand. *See, e.g.*, 31 U.S.C. § 3733(j)(1). Instead, the United States chose a different course here and must accept the consequences of its actions. *See Benson*, slip op. at 15 (applying Rule 12(b)(6) standard because United States brought "a traditional civil complaint, not a petition for summary enforcement").

3

## II. Title III of the Civil Rights Act does not support the United States' request.

**1.** The United States does not dispute that it is entitled only to in-person "inspection, reproduction, and copying" of the relevant files at Defendant's "principal office." *See* Def.'s Mot. to Dismiss at 5 (ECF No. 37). For that reason alone, the United States' request to receive Vermont's voting records via electronic file transfer was facially insufficient and this complaint should be dismissed.

**2.** The United States still fails to identify a factual basis for its request. All three courts to address DOJ's recent Title III record requests have construed § 20703 to require that DOJ state "a factual basis for investigating a violation of a federal statute." *Oregon*, slip op. at 17. *See also Weber*, slip op. at 16 (finding that "DOJ failed to provide an explanation for why it believed the NVRA was violated in its letter to the Secretary."); *Benson*, slip op. at 16 (finding sufficient basis where demand letter "pointed to several purported anomalies with Michigan's voter registration data" and "indicated that DOJ had received a complaint regarding Michigan's compliance with" HAVA).[1] Nothing in the United States' initial demand letter, complaint, or response to Defendant's motion to dismiss contains any factual allegations to explain its demand for Vermont's voting records. Mot. to Compel Ex. 1 (ECF No. 2).

Instead, the United States principally argues that Defendant cannot challenge the United States' statement of basis and purpose. Pl.'s Opp'n at 16. But even a summary proceeding to enforce a subpoena affords a responding party the opportunity to be heard. *See, e.g., Powell*, 379 U.S. at 58 n.18. The United States contends that this Court's only role under § 20703 is to

---

[1] Defendant disagrees with the *Benson* court's determination that that the factual allegations there amounted to a sufficient basis for a record demand under § 20703. But this Court need not address that issue, because DOJ's letter to Defendant lacks any factual allegations whatsoever. *See* Mot. to Compel Ex. 1.

4

rubber-stamp DOJ's demand for production. Such a rule, though, would be repugnant to the Constitution's separation of powers and guarantee of due process.

**3.** The United States has not stated a legally sufficient purpose for its request. The United States concedes that the purpose of its demand was to investigate Vermont's HAVA and NVRA compliance, not the State's compliance with any civil rights laws. *See* Pl.'s Opp'n at 12-16. But the only legally relevant purpose under Title III is one that relates to protecting individuals' right to vote. Two of three courts to have addressed this issue in the past few months reached precisely this conclusion. *Oregon*, slip op. at 20 (requiring "purpose of investigating violations of individuals' voting rights"); *Weber*, slip op. at 14 (concluding that investigating "compliance with NVRA" is "outside of the scope of what Congress intended Title III to be used for"). *But see Benson*, slip op. at 17-18 (determining that investigating NVRA and HAVA compliance was lawful purpose for Title III record demand).

That construction of Title III is not new. *See Lynd*, 306 F.2d at 228 (Title III authorizes DOJ to inspect state voter records "in fulfillment of the duties imposed upon [DOJ] by the Civil Rights Act of 1957 and 1960"). Indeed, despite some broad language in past judicial decisions construing Title III, all the previous Title III cases that the United States cites here involved investigations into alleged racial discrimination by state election officials. *See, e.g. Coleman v. Campbell*, 208 F.Supp. 199, 200 (S.D. Miss. 1962).

To be sure, nothing in Section 20703's text expressly imposes that limitation. But courts "do not interpret words in a vacuum." *Learning Res., Inc. v. Trump*, No. 24-1287, 2026 WL 477534, at *35 (U.S. Feb. 20, 2026) (Barrett, J., concurring). When text alone points to a potentially absurd result, courts look to a statute's context and to "common sense" to "ascertain a text's most natural meaning." *Id.* (citation modified). Here, Title III's enactment as part of a civil

5

rights bill makes clear that Congress intended to grant DOJ the authority to investigate suspected civil rights violations. *See* Def.'s Mot. to Dismiss at 9. Ignoring that statutory context, the United States claims a "sweeping" authority to demand complete unredacted state voting records for any reason it likes, without the guardrail of judicial review. *Biden v. Nebraska*, 600 U.S. 477, 496 (2023). But that "view, if credited, would represent a transformative expansion of" DOJ's investigatory authority. *Learning Res., Inc.,* 2026 WL 477534, at *8 (lead opinion of Roberts, J.) (citation modified). Context, case law, and common sense all point to the same conclusion: Title III authorizes DOJ to compel production of voting records only in connection with civil rights investigations.

4. Title III authorizes DOJ to review and copy voter-generated application and registration materials, not the unredacted current statewide voter list. *See* Def.'s Mot. to Dismiss at 11. Title III requires election officials or custodians to retain and preserve for twenty-two months after an election only those materials that "*come into* [the state's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election" 52 U.S.C. § 20701 (emphasis added). That is, Title III applies only to materials that "people submit to the State as part of the voter registration process, not a document like the voter registration list that is created by state officials." *Benson*, slip op. at 19. Because the United States' demand does not request records that come into the Secretary's possession but instead the statewide voter list that the Secretary maintains, § 20701 does not apply.

This textual limitation on DOJ's authority also makes sense given the history and purpose of Title III and of the CRA more broadly. Congress enacted the CRA to combat racial discrimination in voting rights, and it enacted Title III to give DOJ greater investigatory authority in the face of uncooperative state and local election officials. *See* Def.'s Opp. to Mot. to Compel

6

at 8-9; *Weber*, slip op. at 14 ("The purpose of Title III is to detect voting-related racial discrimination."). Accordingly, Congress instructed state and local elections officials to preserve, and authorized DOJ to demand, voter registration materials so DOJ could determine whether states were unlawfully rejecting voters' applications based on race. *See Benson*, slip op. at 20. Nor is it surprising that Congress declined to extend the law's scope to include state-generated election records like Vermont's voter registration list. Because all the voters on that list have, by definition, *not* been denied the right to vote, a state's own voter database offers no insight into whether the state has deprived citizens of their civil rights.

### III. Title III of the CRA does not preempt Vermont privacy law.

The United States fails to engage with Defendant's argument that Title III does not preempt Vermont privacy law, so appears to concede that issue. *See generally* Pl.'s Opp'n. To the extent the United States obliquely acknowledges the issue, it simply asserts that requiring DOJ to comply with Vermont privacy law would "eviscerate Title III" by making it harder for DOJ to "investigate and enforce list maintenance requirements under HAVA and the NVRA." Pl.'s Opp'n at 27. But that argument misses the point, because Title III does not authorize DOJ to investigate HAVA or NVRA compliance. *See* Def.'s Mot. to Dismiss at 8-9; *Weber*, slip op. at 14; *Oregon*, slip op. at 20. In any event, neither HAVA nor the NVRA requires states to disclose the unredacted voter lists the United States requests here, so do not give rise to any conflict that would preempt Vermont privacy law. *See* Def.'s Mot. to Dismiss at 8 (explaining that the NVRA does not prohibit appropriate redaction and HAVA contains no disclosure provision at all); *Weber*, slip op. at 22, 27 (holding neither HAVA nor the NVRA preempt California privacy law).

Finally, the flat assertion that state law frustrates a federal law's purpose cannot alone establish preemption. Rather, a party asserting preemption must show textual evidence that

7

Congress intended to preempt the state law at issue. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013). The United States makes no such showing.

IV. **The United States still has not demonstrated compliance with federal privacy statutes.**

The only court to have addressed the United States's compliance with the federal Privacy Act and the E-Government Act in requesting unredacted statewide voter databases, the Central District of California, concluded that the request failed to comply with either act for substantially the same reasons presented in Defendant's motion to dismiss. *See Weber*, slip op. at 27-31. This Court should do the same.

Indeed, the United States does not argue here that its request to Vermont complied with the Privacy Act. Instead, the United States briefly alludes to the fact that DOJ has a privacy policy and has issued several public notices explaining how it uses individual information obtained in investigations and enforcement actions. Pl.'s Opp'n at 29. But those notices inform the public how DOJ uses information from the small slice of individuals who have been targeted by or implicated in DOJ investigations. Here, by contrast, DOJ seeks individual information about every voter in Vermont and twenty-eight other states. "If millions of Americans' private information is to be collected by the federal government, they deserve the ability to comment and voice their concerns before this collection occurs." *Weber*, slip op. at 29 (citing 5 U.S.C. § 552a(e)(4)(D)). Such a broad collection of sensitive individuals data requires a SORN under the Privacy Act.

Similarly, the plain text of the E-Government Act requires a "privacy impact assessment prior to "a new collection of information" that "includes any information in an identifiable form permitting the physical or online contacting of a specific individual." Pub. L. No. 107-347, § 208(b)(1), 116 Stat. 2899. DOJ's attempted collection of Vermont's statewide voter database

involves precisely that type of personal information. The United States does not have such a collection of unredacted information and is not entitled to obtain such a collection of information through either the NVRA or HAVA. Thus, regardless of the United States' purpose in collecting this information, federal law requires DOJ to conduct a PIA before collecting it. The United States offers no indication that it completed such an assessment here, so its request violated the E-Government Act. *See Weber*, slip op. at 31 ("Since the DOJ does not cite to an applicable PIA, it has failed its requirements under the E-Government Act.").

## CONCLUSION

The Court should dismiss the Complaint for failure to state a claim.

DATED March 3, 2026

Respectfully submitted,

STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

By: /s/ Ryan P. Kane
RYAN P. KANE
*Deputy Solicitor General*
SAMUEL B. STRATTON
*Assistant Attorney General*
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-3186
ryan.kane@vermont.gov
sam.stratton@vermont.gov