# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>SARAH COPELAND HANZAS, in her official capacity as Secretary of State of Vermont,<br><br>*Defendant,*<br><br><br>VERMONT ALLIANCE FOR RETIRED AMERICANS, RICHARD MONTEROSSO, and MARY ANDREWS,<br><br>*Intervenor-Defendants*,<br>and<br><br><br>VERMONT PUBLIC INTEREST RESEARCH GROUP,<br><br>*Intervenor-Defendant*. | Case No. 2:25-cv-00903 |

### REPLY MEMORANDUM OF INTERVENOR-DEFENDANTS VERMONT ALLIANCE FOR RETIRED AMERICANS, RICHARD MONTEROSSO, AND MARY ANDREWS IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.      The motion to dismiss is appropriate under the Federal Rules of Civil Procedure. ........... 2

    II.     The Court must review the lawfulness of DOJ's demand. ............................................... 2

    III.    DOJ is not entitled to the voter list because it failed to provide an adequate basis and purpose under the CRA. ................................................................................................ 4

          A.     DOJ did not provide any statement of the basis for its demand. ............................ 4

          B.     DOJ did not provide a legally sufficient purpose for its demand. .......................... 5

    IV.    Title III does not prohibit redaction of sensitive voter information................................. 8

    V.     DOJ's failure to comply with the Privacy Act is further grounds for dismissal. .............. 10

CONCLUSION................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alabama ex rel. Gallion v. Rogers*,
　187 F. Supp. 848 (M.D. Ala. 1960) ................................................................................. 5

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
　570 U.S. 1 (2013) ............................................................................................................. 8

*Bostock v. Clayton Cnty.*,
　590 U.S. 644 (2020) ......................................................................................................... 6

*Burrus v. Vegliante*,
　336 F.3d 82 (2d Cir. 2003) .............................................................................................. 4

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
　854 F.3d 683 (D.C. Cir. 2017) ........................................................................................ 3

*CFPB v. Source for Pub. Data, L.P.*,
　903 F.3d 456 (5th Cir. 2018) .......................................................................................... 3

*Coalition for Open Democracy v. Scanlan*,
　No. 1:24-CV-00312-SE-TSM, 2025 WL 1503937 (D.N.H. May 27, 2025) ....................... 9

*In re Coleman*,
　208 F. Supp. 199 (S.D. Miss. 1962) ................................................................................ 5

*Jones v. Bock*,
　549 U.S. 199 (2007) ....................................................................................................... 10

*Kennedy v. Lynd*,
　306 F.2d 222 (5th Cir. 1962) ................................................................................... 2–4, 8

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Nickels*,
　150 F.4th 1260 (9th Cir. 2025) ....................................................................................... 4

*Pub. Int. Legal Found., Inc. v. Bellows*,
　92 F.4th 36 (1st Cir. 2024) .............................................................................................. 9

*Smith v. City of Jackson*,
　544 U.S. 228 (2005) ......................................................................................................... 9

*United States v. Al Kassar*,
　660 F.3d 108 (2d Cir. 2011) ............................................................................................ 6

*United States v. Benson*,
 --- F. Supp. 3d ----, No. 1:25-CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10,
 2026) .................................................................................................................... 1–3

*United States v. Mo. Pac. R.,*
 *R. Co.*, 278 U.S. 269 (1929) ................................................................................... 6

*United States v. Oregon*,
 No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) .................................. *passim*

*United States v. Powell*,
 379 U.S. 48 (1964) ................................................................................................ 1–3

*United States v. Weber*,
 --- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15,
 2026) .................................................................................................................. *passim*

*Whitman v. Am. Trucking Ass'ns*,
 531 U.S. 457 (2001) ................................................................................................ 6

**Statutes**

1 V.S.A. § 317(c)(31) .......................................................................................................... 8

17 V.S.A. § 2154(b) ............................................................................................................ 8

26 U.S.C. § 7604(a) ............................................................................................................ 2

5 U.S.C. § 552a(a) ............................................................................................................ 10

52 U.S.C § 20703 ............................................................................................................ 1–4

52 U.S.C. § 20705 .............................................................................................................. 2

**Other Authorities**

Protective Order & Schedule A, *Coal. for Open Democracy v. Formella*,
 No. 1:24-CV-00312-SE-TSM (D.N.H. June 18, 2025), ECF Nos. 87 & 87-1 ................... 9

H.R. Rep. No. 86-956 (1959) ............................................................................................. 5

# INTRODUCTION

The Department of Justice ("DOJ") has filed dozens of lawsuits like this one seeking to compel the production of States' complete voter lists. Every federal court to reach a decision in these cases has dismissed them. *See United States v. Weber*, --- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, --- F. Supp. 3d ----, No. 1:25-CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026). This Court should do the same.

DOJ's procedural argument that the motions to dismiss are improper is irreconcilable with Supreme Court precedent construing a statute with identical operative text. *See United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). DOJ's merits argument is equally unfounded. DOJ did not satisfy the core requirement that it provide "the basis and the purpose" for its demand. 52 U.S.C § 20703. DOJ does not identify *any* "basis" for the demand aside from the Civil Rights Act of 1960 ("CRA") itself, along with "referenc[es]" to the NVRA and HAVA. DOJ argues that it may demand records "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." ECF No. 58 ("DOJ Opp.") at 7 n.3 (quoting *United States v. Bisceglia*, 420 U.S. 141, 148 (1975)). But by requiring that "the basis and the purpose" be included in any CRA demand for records, the CRA demands more. And DOJ's stated "purpose"—to investigate compliance with the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA")—is not a valid purpose under the CRA, which is concerned with the constitutional right to vote, not election administration rules.

Moreover, Vermont law prohibits the disclosure of the sensitive information DOJ seeks, and while DOJ suggests that the CRA preempts Vermont law, it conducts no preemption analysis. And DOJ never explains how any notice of use it has issued could encompass Vermont's entire statewide voter list, as the Privacy Act requires. The complaint should be dismissed.

# ARGUMENT

**I.     The motion to dismiss is appropriate under the Federal Rules of Civil Procedure.**

DOJ's lead argument—that a motion to dismiss is procedurally improper in a Title III proceeding—is foreclosed by Supreme Court precedent and has been recently rejected by two federal courts. *See Weber*, 2026 WL 118807, at *8 (holding that DOJ's parallel lawsuit in California was governed by Federal Rules before evaluating and granting motions to dismiss); *Oregon*, 2026 WL 318402, at *8 ("[T]he Court applies the Federal Rules of Civil Procedure as in any other case."). In advancing this argument, DOJ relies on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), and a handful of other out-of-circuit civil-rights-era cases from the early 1960s. *See* DOJ Opp. at 7–9. But as both *Weber* and *Oregon* recently held, those cases are irreconcilable with the Supreme Court's subsequent decision in *Powell*. *See* ECF No. 40 ("MTC Opp.") at 4–5.

In arguing otherwise, DOJ points to its third loss on these issues, in Michigan. *See Benson*, 2026 WL 362789, at *2. But *Benson*, too, granted Rule 12(b)(6) motions—so it cannot have held such motions improper. *See id.* at *2, 11. DOJ also protests that *Powell* involved a different statute and that "Congress has indicated that the Federal Rules of Civil Procedure are inapplicable" to the CRA. DOJ Opp. at 8. But the CRA contains no such indication—it simply requires "appropriate process." 52 U.S.C. § 20705. *Powell* involved a statute with that same phrase—"appropriate process," 26 U.S.C. § 7604(a)—and held that it "contain[ed] no provision specifying the procedure to be followed in invoking the court's jurisdiction, [so] the Federal Rules of Civil Procedure apply." 379 U.S. at 58 n.18. The same must be true for the CRA's identical text.

**II.    The Court must review the lawfulness of DOJ's demand.**

DOJ is also wrong to argue that this Court cannot conduct meaningful judicial review of its demand. The CRA is unequivocal: any demand by DOJ under the CRA "*shall* contain a statement of *the basis and the purpose* therefor." 52 U.S.C. § 20703 (emphasis added). When the

2

government attempts to compel the production of records, courts routinely review the lawfulness of the government's demand. *See, e.g.*, *Powell*, 379 U.S. at 57 (holding that the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose"); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand). Judicial review does not require "specific[] authoriz[ation]" by statute, as DOJ claims. DOJ Opp. at 10. It flows instead from the fact that "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Powell*, 379 U.S. at 58. Contrary to DOJ's argument, *see* DOJ Opp. at 7–8, this holding extends to investigative tools of all types, not just IRS demands. *See, e.g.*, *Source for Pub. Data, L.P.*, 903 F.3d at 458–60 (CFPB civil investigative demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.* ("*ACICS*"), 854 F.3d 683, 690 (D.C. Cir. 2017) (same).

Moreover, the text of the CRA *does* impose limitations, including the express requirement that the demand state "the basis and the purpose" for the government's request. 52 U.S.C. § 20703. Even *Lynd* agreed that a court must decide "whether the written demand has been made" according to "§ [20703]." 306 F.2d at 226. Doing so requires a meaningful review of DOJ's demand to determine whether it satisfies the CRA. *See, e.g.*, *ACICS*, 854 F.3d at 690 (declining to enforce civil investigative demand where agency failed to comply with statutory requirements). Courts have done so in all recent challenges to DOJ's parallel demands of other states. *See Weber*, 2026 WL 118807, at *8–10; *Oregon*, 2026 WL 318402, at *7–10. That includes *Benson*: even *Benson*'s conception of a "limited" role for courts in reviewing CRA demands ended with the dismissal of DOJ's complaint as unlawful. 2026 WL 362789, at *9.

### III. DOJ is not entitled to the voter list because it failed to provide an adequate basis and purpose under the CRA.

#### A. DOJ did not provide any statement of the basis for its demand.

DOJ's demand for Vermont's statewide voter registration list did not provide "the basis *and* the purpose for" its demand, as the CRA requires. 52 U.S.C. § 20703 (emphasis added). Rather, DOJ failed to include *any* statement of "the basis" for its demand in its September 8, 2025 letter to the Secretary. In its opposition, DOJ puzzlingly asserts first that "the basis for the demand was Title III of the Civil Rights Act of 1960 (CRA)," DOJ Opp. at 5, but later that "[f]or the basis, the letter began by referencing the NVRA and HAVA," *id.* at 17. Neither suffices. The CRA is the *authority* under which the request was purportedly made, not the factual *basis* for the request. *See, e.g.*, *Basis*, *Black's Law Dictionary* (4th ed. 1968) (including definitions for "basis" such as the "groundwork," "support," or "foundation" of something). The CRA cannot be the "basis" for a CRA demand, or else the requirement to provide the "basis" would be superfluous. *See Burrus v. Vegliante*, 336 F.3d 82, 91 (2d Cir. 2003) ("Where possible we avoid construing a statute so as to render a provision mere surplusage."). Nor can a mere *reference* to the CRA, the NVRA, or HAVA suffice. *Contra* DOJ Opp. at 17. Such a rule would drain Title III's "basis" requirement of any practical meaning, making it an unacceptable construction of the statute. *See Pac. Coast Fed'n of Fishermen's Ass'ns v. Nickels*, 150 F.4th 1260, 1273 (9th Cir. 2025) (courts "cannot adopt a statutory reading [that] will sap the interpreted provision of all practical significance"), *cert. pending sub nom. Cal. Sportfishing Prot. All. v. Nickels*, No. 25-989 (U.S. Feb. 17, 2026); *see also Oregon*, 2026 WL 318402, at *9 ("Reading 'basis' in the way Plaintiff suggests collapses its meaning with that of 'purpose.'").

Even the civil-rights-era cases that DOJ relies on show that DOJ has historically understood this requirement to call for an accounting of the factual basis for its investigation. *See, e.g.*, *Lynd*,

4

306 F.2d at 229 n.6 ("This demand is *based upon* information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.") (emphasis added); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (similar); *see also Oregon*, 2026 WL 318402, at *9 ("The Court understands 'basis' to mean a factual basis for investigating a violation of a federal statute.").

DOJ also asserts that the factual support for its purported basis cannot be challenged, *see* DOJ Opp. at 19, but factual support is not the issue. DOJ's demand failed to provide *any basis at all* and therefore undeniably failed to specify "the basis . . . for" its demand. That by itself is sufficient to require dismissal. *See, e.g.*, *Source for Pub. Data*, 903 F.3d at 460 (declining to enforce civil investigative demand because "[an agency] must comply with statutory requirements, and here it did not"); *Weber*, 2026 WL 118807, at *9 (holding that DOJ failed to "establish[] the basis for its request" because it failed to explain why it believed California violated the NVRA or why the voter registration list was necessary for its investigation); *Oregon*, 2026 WL 318402, at *9 (similar). Indeed, even DOJ concedes that the CRA allows the Court to review whether the Attorney General made "a written demand . . . stating the basis and purpose." DOJ Opp. at 3. Here, the Attorney General made no such demand. Accordingly, the CRA claim fails.

**B.     DOJ did not provide a legally sufficient purpose for its demand.**

DOJ's demand also fails to satisfy Title III's separate "purpose" requirement, an independent basis for dismissal. Congress enacted Title III "to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also* H.R. Rep. No. 86-956, at 7 (1959) (explaining Congress enacted Title III to aid DOJ "during any investigation it may conduct on complaints of a denial to vote"). But DOJ is not seeking Vermont's voter list

5

because it suspects specific violations of federal law or infringement of the right to vote. Rather, DOJ's opposition confirms that DOJ seeks the list to assess Vermont's compliance with the administrative requirements of the NVRA and HAVA. *See* DOJ Opp. at 16–17. As explained, this is not a sufficient purpose under Title III. *See* ECF No. 39-1 ("MTD") at 7–10. DOJ contends that CRA investigations cannot be limited to those based on violations of the right to vote. DOJ Opp. at 12–13. But DOJ's argument ignores that, when construing the "purpose" requirement, courts "read statutes as a whole." *United States v. Al Kassar*, 660 F.3d 108, 124 (2d Cir. 2011). DOJ also ignores the well-established principle that courts must "account for both the specific context in which . . . language is used and the broader context of the statute as a whole." MTD at 9 (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014)) (citation modified).

Here, the term "purpose" must be read in the context of the CRA—a law designed to enhance DOJ's enforcement powers for the protection of *civil rights* provided by the Civil Rights Act of 1957. *See id.* at 9–10; *see also Bostock v. Clayton Cnty.*, 590 U.S. 644, 655 (2020) (interpreting Title VII of the Civil Rights Act of 1964 by "orient[ing] ourselves to the time of the statute's adoption"); *United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929) ("the reasons for and the significant circumstances leading up to the enactment may be noticed in confirmation of the meaning conveyed by the words used"). To do otherwise would be to assume Congress intended for DOJ to be able to demand state election records for the purpose of investigating compliance with *any* federal statute, even if those statutes dealt with subjects as far afield from the CRA as antitrust, bankruptcy, or admiralty law. Had Congress intended such a sweeping result, it surely would have said so explicitly. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

As Alliance Intervenors have noted, DOJ has not cited any case in which a court granted a

6

demand made under the CRA for the purpose of assessing States' NVRA or HAVA compliance. *See* MTD at 11. DOJ now contends that it "has pursued successful matters" to obtain voter lists under the CRA for this purpose. DOJ Opp. at 24, 25 n.10. But, in the first matter it cites, Georgia entered a consent decree with DOJ immediately after DOJ sued to "resolv[e] this matter without the need for litigation," and in the second, Texas chose to enter a Memorandum of Understanding with DOJ without any litigation. *See id.*, Exs. 1–3. In neither of the instances was the applicability of the CRA contested or resolved by a court.

Even if assessing NVRA or HAVA compliance were a valid purpose, Vermont's full and unredacted voter list is neither helpful nor necessary for this purpose because it cannot tell DOJ anything about the list maintenance *procedures* Vermont undertook. *See* MTD at 13. DOJ's only answer is to repeatedly insist it needs the data "so as to assure [itself] . . . that reasonable list maintenance efforts have been practiced." DOJ Opp. at 25. But this just begs the question about the relationship between a static snapshot of the voter list and Vermont's procedural obligations under the NVRA and HAVA, further undermining DOJ's claim. *See Weber*, 2026 WL 118807, at *9 ("[E]ven if compliance with the NVRA was a valid purpose, the DOJ states no reason why an unredacted version of California's voter list is necessary under the NVRA[.]").

Finally, DOJ's claim must also be dismissed because, whatever the propriety of its stated purpose, there is ample evidence that it was not its true purpose. *See* MTD at 13–14. As noted, the 1960s-era cases that DOJ relies on all involved situations where Title III was unquestionably being used for its stated purpose—investigating the potential denial of voting rights—so there was no need for any such inquiry. *See* MTD at 11 n.11. Here, the context is very different. And courts need not accept "contrived" rationales, particularly when DOJ's public statements have repeatedly made clear that its purposes go "beyond [its] purported compliance check with the NVRA and into

7

the territory of comprehensive data collection." *Weber*, 2026 WL 118807, at *10 (citing *Dep't of Commerce v. New York*, 588 U.S. 752, 756 (2019)); *see also Oregon*, 2026 WL 318402, at *11.

**IV.    Title III does not prohibit redaction of sensitive voter information.**

DOJ's complaint must also be dismissed because Vermont is entitled to redact sensitive personal information from any production of the statewide voter list, including if produced in response to a demand under the CRA. *See* MTD at 14–17. DOJ does not contest that Vermont law protects such information. *See generally* DOJ Opp.; *see also* 17 V.S.A. § 2154(b)(1); 1 V.S.A. § 317(c)(31); 17 V.S.A. § 2154(b)(2)(C). The only question is whether the CRA preempts these laws and demands the production of sensitive information to begin with. It does not.

*First*, the chief case on which DOJ relies itself makes clear that Title III is intended to reach only "*public* records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231 (emphasis added); *see also* MTD at 15–16. DOJ fails to address or acknowledge this. *See* DOJ Opp. at 25–28.

*Second*, Title III does not preempt Vermont's privacy laws protecting the information at issue. *See* MTD at 14–18. DOJ suggests in one sentence that the CRA preempts such laws—but it fails to make any argument to this effect or to conduct any preemption analysis. *See* DOJ Opp. at 4. Congress may preempt state law, but that power extends only "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013). Where Congress has not spoken on an issue, state law controls. *See id.* And the federal laws regulating voter registration sit "atop state voter-registration systems"—they do not displace them. *Id.* at 5. Nothing in Title III specifically addresses state-law confidentiality protections for especially sensitive data, and *Lynd* shows that it was understood from the start as reaching "public records" rather than "confidential, private papers and effects." 306 F.2d at 231. Indeed, the private information sought here was not even required to be provided on registration forms until well after the enactment of Title III, which

means Congress could not have intended it to require disclosure of that information. *See* MTD at 15–16. And as Alliance Intervenors have explained, even the NVRA—one of the underlying laws that DOJ is supposedly enforcing through this demand—allows states to redact sensitive voter information before permitting the inspection of voter files. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

*Third*, the judicial consensus that redaction is permitted under the NVRA should carry over to the CRA. *See* MTD at 14–15. The NVRA and the CRA address closely related subjects and Congress used markedly similar language in crafting them. *See, e.g.*, *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."). Numerous courts have held that the NVRA does not prohibit States from redacting precisely the information that DOJ demands here. *See, e.g.*, MTD at 14–15 (collecting cases); *Weber*, 2026 WL 118807, at *12–13 (noting that DOJ conceded that States are entitled to redact sensitive voter information under the NVRA in briefs as recently as 2023); *Oregon*, 2026 WL 318402, at *12 (finding redaction "appropriate and permissible"). It would make little sense to conclude that the CRA demands that Vermont produce sensitive information for the purpose of allowing DOJ to assess the State's NVRA compliance when the NVRA itself does not require such a production. DOJ has no answer to this, and this, too, is an independent basis for dismissal.[1]

---

[1] There is no merit to DOJ's contention that it should be handed the sensitive information it seeks because "private parties have been granted access to even more detailed voter data." DOJ Opp. at 28. To the contrary, in the case DOJ cites, *Coalition for Open Democracy v. Scanlan*, No. 1:24-CV-00312-SE-TSM, 2025 WL 1503937 (D.N.H. May 27, 2025), the court excluded social security numbers and other confidential information, and entered a protective order strictly limiting who can view the limited information produced, how they can view it, and for what purposes. *See*

9

## V.  DOJ's failure to comply with the Privacy Act is further grounds for dismissal.

Finally, DOJ's claim must be dismissed because DOJ has not complied with the Privacy Act. *See* MTD at 18–22. DOJ contends that because the Privacy Act regulates only federal agencies, it "does not restrict the ability of state actors to share information with federal agencies." DOJ Opp. at 31. But this ignores the central point: the Privacy Act imposes a statutory prerequisite that DOJ has not satisfied. *See* 5 U.S.C. § 552a(a)(3) (defining "maintain" to include "maintain, collect, use, or disseminate"). That the Privacy Act does not regulate state entities is irrelevant, because it bars *DOJ* from obtaining relief. *See Weber*, 2026 WL 118807, at *17–18 (granting motion to dismiss and holding DOJ's request for California's voter list violated Privacy Act).

DOJ next insists that it is not required to plead compliance with the Privacy Act, DOJ Opp. at 29, but that too is beside the point. It is well established that a motion to dismiss may be granted when the "allegations in the complaint suffice to establish" "the basis for dismissal." *Jones v. Bock*, 549 U.S. 199, 215 (2007). As DOJ does not contest, it was required to publish a System of Records Notice ("SORN") that would apply to Vermont's statewide voter list before it could collect that information. *See* MTD at 19–20. Instead, it cites to a table of every SORN ever issued by DOJ. *See* DOJ Opp. at 29 (citing 82 Fed. Reg. 24147 (May 25, 2017)). DOJ makes no effort to explain how any SORN could be read to encompass Vermont's statewide voter registration list or how it has fulfilled the procedural safeguards of the Privacy Act. Because of this failure, the Privacy Act prohibits DOJ from obtaining—and then collecting, maintaining, and using—Vermont's statewide voter registration list and thus from prevailing on its claim.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion to dismiss.

---

Protective Order & Schedule A, *Coal. for Open Democracy v. Formella*, No. 1:24-CV-00312-SE-TSM (D.N.H. June 18, 2025), ECF Nos. 87 & 87-1.

Dated: March 3, 2026                               Respectfully submitted,

                                                                                                       */s/ Joshua C. Abbuhl*
                                                                                                       Marc E. Elias*
David R. Fox *
Joshua C. Abbuhl
Julianna D. Astarita*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 987-5288
F: (202) 968-4498
eliasm@elias.law
dfox@elias.law
jabbuhl@elias.law
jastarita@elias.law

*Admitted *pro hac vice*
*Counsel for Intervenor-Defendants*