UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2026 SEP 17 AM 8: 19
CLERK
BY ______ KP
DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>SARAH COPELAND HANZAS,<br>in her official capacity as Secretary<br>of State of Vermont,<br>Defendant. | ) | Case No. 2:25-cv-00903 |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**
(Doc. 2, Doc. 37, Doc. 39, Doc. 44)

Plaintiff United States of America ("the United States"), by and through the Attorney General, filed a Motion to Compel the Production of Records against Defendant Sarah Copeland Hanzas ("the Secretary") in her official capacity as the Secretary of State of Vermont. (Doc. 2.) In its Motion, which closely mirrors its Complaint (Doc. 1), the United States seeks an electronic copy of Vermont's Statewide Voter Registration List ("SVRL") to ensure Vermont's compliance with the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501 *et seq.*, and the Help America Vote Act ("HAVA"), 52 U.S.C. §§ 20901 *et seq*. (Doc. 2.) The United States bases its authority to demand these documents on Title III of the Civil Rights Act, 52 U.S.C. §§ 20701 *et seq*. (Doc. 2.)

The Secretary filed a Motion to Dismiss the United States' Complaint for failure to state a claim upon which relief can be granted, arguing in part that Title III of the Civil Rights Act does not provide a legal basis for the United States' request. (Doc. 37.) Intervenor-Defendants Vermont Alliance for Retired Americans, Richard Monterosso, and Mary Andrews also filed a Motion to Dismiss, (Doc. 39), as did Intervenor-Defendant Vermont Public Interest Research Group, (Doc.

44.) Intervenor-Defendants and the Secretary (referred to collectively as "Defendants") make similar arguments regarding the deficiencies in the United States' arguments under Title III of the Civil Rights Act. (Docs. 39, 44.)

For the reasons stated below, the United States' Motion to Compel the Production of Records is DENIED and the Defendants' Motions to Dismiss are GRANTED.*

**Facts**

On September 8, 2025, the Civil Rights Division of the United States Department of Justice sent the Secretary a letter asking for a copy of Vermont's complete SVRL, including registrants' drivers' license numbers or the last four digits of registrants' Social Security numbers. (Doc. 2-3 at 2.) In the letter, the United States explained that the request was to "ascertain Vermont's compliance with the list maintenance requirements of the NVRA and HAVA." *(Id.* at 3.)

Under the NVRA, each state is required to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters…" due to death or change in residence. (Doc. 1 at 4, quoting 52 U.S.C. § 20507(a)(4)(A), (B).) The NVRA also requires each state to designate a chief state election official. (*Id.*, quoting 52 U.S.C. § 20509.) The Secretary is the chief election official of Vermont. (*Id.*)

The HAVA requires states to maintain "a single, uniform, official, centralized, interactive computerized statewide voter registration list[.]" (Doc. 1 at 4, quoting 52 U.S.C. § 21083(a)(1)(A).) This list must include "the name and registration information of every legally registered voter in the State," and "assign[] a unique identifier to each legally registered voter in the State[.]" (*Id.*, quoting 52 U.S.C. § 21083(a)(1)(A).)

* Because the court finds dismissal is appropriate based on Defendants' arguments regarding Title III of the Civil Rights Act, the court does not address the remaining arguments raised by Defendants.

On September 22, 2025, the Secretary responded to the Attorney General's letter, refusing to provide Vermont's entire SVRL due to "the lack of clarity of the basis of the request, the intended purpose(s) for utilization of Vermonters data, and the failure to provide assurances to maintain the privacy of Vermonters sensitive data...." (Doc. 2-4 at 5.) As a result of the Secretary's denial, the United States commenced this proceeding to "investigat[e]... Vermont's compliance with Federal election laws, particularly the NVRA and HAVA." (Doc. 1 at 3.) The United States argues the Attorney General has the "sweeping power" to obtain certain records related to voting in federal elections under Title III of the Civil Rights Act. (*Id.* at 1–2.) On the same day that the United States filed its Complaint, it filed a Motion to Compel the Production of Records, requesting access to an electronic copy of Vermont's entire SVRL. (Doc. 2.)

There are two relevant provisions from Title III of the Civil Rights Act cited in the United States' Complaint and Motion to Compel. The first is Section 20701, which requires election officials to "retain and preserve, for a period of twenty-two months from the date of any [federal election] ... all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election...." 52 U.S.C. § 20701. The United States contends that Vermont's SVRL is a Section 20701 document. (Doc. 2 at 2.) The second relevant provision is Section 20703, which states "[a]ny record or paper required by section 20701... to be retained and preserved shall, upon demand in writing by the Attorney General... be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The United States argues that its September 8, 2025 letter qualifies as a written demand with a "statement of the basis and the purpose therefor." (Doc. 1 at 7, quoting 52 U.S.C. § 20703.)

## **Legal Standard**

### I. Standard of Review for a Title III Request for Records

The United States argues that the Federal Rules of Civil Procedure do not apply to this action. (Doc. 2-2 at 6–7.) The United States bases its argument on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). (*Id.* at 8–9.) In *Lynd*, the Fifth Circuit held that, when the Attorney General makes a request to "obtain 'inspection, reproduction, and copying' of voter records" under Title III, it triggers a "special statutory proceeding in which the courts play a limited, albeit vital, role." 306 F.2d at 225 (internal citations omitted). In this limited proceeding, "[a]ll that is required is a simple statement by the Attorney General" that, following a Section 20703 demand for Section 20701 documents, "the person against whom an order for production is sought… has failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (quoting 52 U.S.C. § 20703). The United States argues that it has satisfied those requirements and, as a result, the court must issue an order to compel the production of Vermont's SVRL. (Doc. 2-2 at 6.)

As many other district courts across the country have held, this argument fails. Initially, there is no textual support in the statute for this special statutory proceeding. The United States relies solely on the *Lynd* decision to make its argument. *See, e.g., United States v. Oregon*, 828 F. Supp. 3d 1092, 1103 (D. Or. 2026) ("There is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III…."); *United States v. Bd. Of Elections of N.Y.*, No. 1:25-CV-1338, 2026 WL 1999921, at *6 (N.D.N.Y. July 10, 2026) ("[T]he text of Title III does not expressly provide for the type of proceeding proposed by Plaintiff.").

Title III makes no mention of a special proceeding, merely stating that district courts "shall have jurisdiction by appropriate process to compel the production of" a record or paper demanded pursuant to Section 20703. 52 U.S.C. § 20705. There is no definition of "appropriate process" in

the statute. The Supreme Court has held, when interpreting a similar statute, that, where a statute "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply…." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). Based on this binding precedent, the "special statutory proceeding" contemplated by *Lynd* does not apply in this case, and the Federal Rules of Civil Procedure will govern.

Additionally, even if special statutory proceedings were appropriate in this case, the Attorney General specifically chose to pursue this case as a civil action by filing a complaint. "*Lynd* appears to contemplate an application directly to the court for the records[,]" for special statutory proceedings to commence. *United States v. Oregon*, 828 F. Supp. 3d at 1102 n.1 (citing *Lynd*, 306 F.2d at 225 ("*[T]he filing of the application* by the Attorney General is not the commencement of an ordinary, traditional civil action with all of its trappings.") (emphasis added)). Because the Attorney General decided to commence the election records request through traditional litigation, it cannot change its request now and act as if it were an application subject to a limited proceeding. *See United States v. Weber*, 816 F. Supp.3d 1168, 1182 (C.D. Cal. 2026).

## II. Standard of Review for a 12(b)(6) Motion to Dismiss

The Federal Rules of Civil Procedure apply in this case. When presented with a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts all factual allegations included in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

A plausible claim includes factual allegations that permit the court "to infer more than the

mere possibility of misconduct[.]" *Iqbal,* 556 U.S. at 679. A plaintiff is required to allege enough facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly,* 550 U.S. at 570. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).

**Analysis**

Plaintiff maintains that Title III of the Civil Rights Act provides it with the requisite authority to demand an electronic copy of Vermont's SVRL. (Doc. 1 at 1–2.) Defendants have challenged the applicability of Title III of the Civil Rights Act to this action. (*See, e.g.*, Doc. 37 at 4.) Although Plaintiff and Defendants raise a number of arguments, including those related to state and federal privacy law, the court focuses on the threshold question of whether Title III of the Civil Rights Act applies and then turns its attention to whether the requirements of Title III have been met.

Plaintiff and Defendants' arguments regarding Title III of the Civil Rights Act boil down to differences in statutory interpretation. Determining the applicability of Title III of the Civil Rights Act to this action requires a close examination of the language in the statute. "Statutory interpretation… begins with the text[.]" *Ross v. Blake*, 578 U.S. 632, 638 (2016). Unless there is language to the contrary, "statutory terms are generally interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 369 (2013) (internal citations omitted). Importantly, however, courts must "interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history, and purpose." *Abramski v. United States*, 573 U.S. 169, 179 (2014) (internal quotation marks omitted). Additionally, a statute must be "construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant…." *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal citations omitted).

It is worth noting that the United States has made similar requests for electronic copies of SVRLs across the country, in nearly every state. The United States has sued the states that refused to provide their SVRLs, and, thus far, many district courts have dismissed these lawsuits. *See, e.g., United States v. Benson*, 819 F. Supp. 3d 753, 770 (W.D. Mich. 2026), *aff'd*, 179 F.4th 470 (6th Cir. 2026); *United States v. Oregon*, 828 F. Supp. 3d at 1108–1109; *United States v. Bellows*, 834 F. Supp. 3d 113, 128 (D. Me. 2026); *Bd. Of Elections of N.Y.*, 2026 WL 1999921, at *14; *United States v. Thomas*, No. 3:26-CV-21, 2026 WL 2070437 at *7 (D. Conn. July 17, 2026). Consistent with several other courts, this court holds that Title III of the Civil Rights Act does not apply to the Attorney General's request and that, even if it did, the United States' written demand is insufficient under Title III.

## I. Inapplicability of Title III to the United States' Action

### *A. An SVRL is Not a Section 20701 Document*

The United States contends that Vermont's SVRL came into the State's possession and thus is a Section 20701 document that the Attorney General can demand under Section 20703. (Doc. 1 at 8; Doc. 71 at 43–44, 43:24–44:8.) Defendants, on the other hand, argue that Vermont's SVRL is not a Section 20701 document because it is *created* by the State of Vermont. (Doc. 71 at 12, 12:8–12:11.) Additionally, Defendants argue that, because Vermont's SVRL must be constantly updated, it is not the type of static document contemplated by Title III of the Civil Rights Act. (Doc. 71 at 29, 29:4–29:11.)

While the State of Vermont possesses the SVRL, municipal clerks and boards of civil authority are charged with maintaining the SVRL to ensure compliance with state law and HAVA. (Doc. 2-4 at 3.) Municipal clerks strike the names of deceased voters and voters who have moved. (*Id.*) Boards of civil authority challenge and remove the names of voters who may be deceased,

may have moved, or may have registered to vote elsewhere. (*Id.*) The Secretary describes this list as "dynamic" because "people move and die every day." (*Id.*)

Vermont's SVRL cannot be considered a Section 20701 document under the plain language of Title III of the Civil Rights Act. The statute only contemplates documents that "come into [the] possession" of the officer of election. 52 U.S.C. § 20701. As many other courts have held, SVRLs do not "come into the possession" of the officer of election in the ordinary sense of the phrase, as state election officials create SVRLs. *See, e.g., Benson*, 819 F. Supp. 3d at 768 ("The phrase 'come into [their] possession' naturally refers to a process by which someone *acquires* an item from an external source." (internal citations omitted)); *Bellows*, 834 F. Supp. 3d at 123 n.10 ("Coming into possession of something most naturally implies receipt from an external source. Congress could have required the retention and production of all election-related records and papers 'in the possession of' the state election official but did not."); *Bd. Of Elections of N.Y.*, 2026 WL 1999921 at *9 ("[A] voter registration list is not a § 20701 document because it is created by state officials and, therefore, 'does not come into [their] possession.'") (internal citations omitted)). Such is the case in Vermont, where state officials are charged with updating and maintaining the SVRL to constantly create new versions of the SVRL based on their findings. Vermont's SVRL therefore cannot be said to "come into the possession" of the Secretary, as it is created and maintained by the State rather than being received by the State from an outside source.

Vermont's SVRL is also not the type of static document that the statute contemplates. Section 20702 of Title III of the Civil Rights Act criminalizes the "alter[ation]" of any Section 20701 record by "any person" including the officer of election or custodian of the records. 52 U.S.C. § 20702. The Vermont SVRL is required by law to constantly be updated. (Doc. 71 at 29, 29:10–29:11.) As many other courts have held, this makes it impossible for an SVRL to be

considered a Section 20701 document, as SVRLs are subject to continuous alteration. For the statute to be construed in a manner to give effect to all of its provisions, *Corley v. United States*, 556 U.S. at 314, an SVRL cannot be considered a Section 20701 document.

Reading Section 20701 to include the SVRL would lead to an absurd result where, to comply with federal election law, state election officials would have to break another federal law. *See, e.g., Thomas*, 2026 WL 2070437 at *6 ("Unavoidably and of necessity, in order to maintain an accurate SVRL as required under the NVRA and HAVA, the SVRL is constantly being 'altered' as information is updated. . . ."); *Bd. Of Elections of N.Y.*, 2026 WL 1999921, at *9 ("[I]nterpreting § 20701 to include [SVRLs] would not be harmonious with an adjacent provision… and would place Title III in conflict with the NVRA and the HAVA."); *Benson*, 179 F.4th at 480 ("[C]onstruing § 20701 in a manner that subjects the qualified voter file to Title III would place Title III on a collision course with the NVRA and HAVA. . . . We should not adopt a reading that would place election officials in violation of one federal law for trying to comply with others."). For these reasons, Vermont's SVRL cannot be considered a Section 20701 document, and thus the United States cannot request the SVRL pursuant to Title III of the Civil Rights Act.

### *B. A Demand for an Electronic Copy of Vermont's Entire SVRL Goes Outside the Bounds of Section 20703*

Under Section 20703 of Title III of the Civil Rights Act, the custodian of Section 20701 documents must make such documents "available for inspection, reproduction, and copying at the principal office of such custodian. . . ." 52 U.S.C. § 20703. In this case, however, the United States is not asking to inspect the records at the Secretary's principal office. Rather, the United States is requesting an electronic copy of Vermont's SVRL. (Doc. 1 at 8.) As the Secretary argues in her Motion to Dismiss, this request is "flatly inconsistent with Title III's text." (Doc. 37 at 5.) Because

Plaintiff's request goes beyond what the statute contemplated in its plain language, the demand for an electronic copy of Vermont's entire SVRL must be denied.

## II. The United States' Demand Falls Short of Title III's Requirements

Even if Title III of the Civil Rights Act applied to the United States' demand, the Attorney General's letter fails to comply with Section 20703 of the statute. Under Section 20703, the Attorney General's demand for Section 20701 records must contain "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The Attorney General's demand letter simply states "[t]he purpose of this request is to ascertain Vermont's compliance with the list maintenance requirements of the NVRA and HAVA[,]" without identifying a "basis." (Doc. 2-3 at 3.) Indeed, the United States has provided no factual basis for its demand, as it has not alleged that Vermont is out of compliance with any federal election law. (Doc. 37 at 6.)

Additionally, the request for the SVRL for the purpose of determining compliance with federal election law falls outside of the ambit of the statute. Title III of the Civil Rights Act of 1960 was enacted to address rampant voter suppression of Black Americans during the Jim Crow era. *Benson*, 179 F.4th at 474 ("Congress enacted Title III of the Civil Rights Act of 1960 to help end voting discrimination. Title III… gave teeth to prior civil-rights legislation by empowering the U.S. Attorney General to obtain certain state voting records so that he could investigate potential violations and enforce federal election law."); *Weber*, 816 F. Supp. 3d at 1175 (Explaining that Title III of the Civil Rights Act was passed as a result of state officials destroying voting records or refusing to turn over voting records "[t]o hide their complicity in voter suppression," which was "thwarting efforts by the federal government to investigate whether there was a pattern and practice of disenfranchising Black Americans.")

The text of a statute cannot be construed in a vacuum, *Abramski*, 573 U.S. at 179, and the history and context of Title III of the Civil Rights Act demonstrates that the purpose of the statute is much narrower than the United States reads it to be. Both the basis and the purpose of the Attorney General's demand, therefore, would have to be related to racial discrimination. (Doc. 71 at 9, 9:8–9:20.) As other courts have held, the United States' purpose of ensuring compliance with federal election law is insufficient based on the intent of Title III of the Civil Rights Act. *See, e.g.*, *United States v. Oregon*, 828 F. Supp. 3d at 1103 ("Plaintiff identifies no authority supporting its argument that 'basis' means merely identifying any federal statute, regardless of its relation to civil rights violations, that Plaintiff believes may have been violated. Such a reading would give Plaintiff virtually limitless access to records required to be maintained under Title III."). Therefore, even if Title III applied in this case, the United States' request falls outside of the scope of the statute.

## Conclusion

Title III of the Civil Rights Act is inapplicable to the Attorney General's request for an electronic copy of Vermont's entire SVRL. Even if the statute were applicable to this case, the Attorney General's request fails to comply with Title III. As a result, the United States' Motion to Compel the Production of Records is DENIED. Because the United States has failed to state a claim upon which relief can be granted, Defendants' Motions to Dismiss are GRANTED.

DATED at Rutland, in the District of Vermont, this 17th day of September 2026.

Mary Kay Lanthier
United States District Judge